B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Pender Capital Asset Based Lending Fund I, LP | DEFENDANTS<br>Larry Reynolds and B. Neal Ainsworth, as<br>Trustee of the Poyner Wilkins Generational Trust |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Eric M. English, Porter Hedges LLP<br>1000 Main Street, 36th Floor, Houston, TX 77002<br>(713) 226-6000 | **ATTORNEYS** (If Known)<br>Glenn R. Snyder, Law Offices of Glenn R. Snyder<br>627 Mercury Ave., Suite 103 Duncanville, TX 75137<br>(972) 594-1133 |
| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Removal of claims for breach of contract and requests for injunctive relief restricting Plaintiff's right to foreclose on Mansfield Boat and RV Storage, LLC's real property. 28 U.S.C. § 1452, Bankruptcy Rule 9027, and Local Bankruptcy Rule 9027-1.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☒ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  0 |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Mansfield Boat and RV Storage, LLC | BANKRUPTCY CASE NO.<br>18-33926 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Dallas | NAME OF JUDGE<br>Hale |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>N/A | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Eric M. English | | |
| DATE<br>March 4, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Eric M. English | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**PORTER HEDGES LLP**
Eric M. English
State Bar No. 24062714
Genevieve M. Graham
State Bar No. 24085340
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
eenglish@porterhedges.com
ggraham@porterhedges.com

**SMYSER KAPLAN & VESELKA, L.L.P.**
Garland D. Murphy IV
State Bar No. 24058010
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 221-2300
(713) 221-2320
lmurphy@skv.com

**ATTORNEYS FOR PENDER CAPITAL
ASSET BASED LENDING FUND I, LP**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **MANSFIELD BOAT AND RV STORAGE, LLC,** | § | **CASE NO. 18-33926** |
| | § | |
| | § | |
| Debtor. | § | **Chapter 11** |

| | | |
|---|---|---|
| **PENDER CAPITAL ASSET BASED LENDING FUND I, LP** | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **ADV. PRO. 19-_____** |
| **LARRY REYNOLDS and B. NEAL AINSWORTH, AS TRUSTEE OF THE POYNER WILKINS GENERATIONAL TRUST** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |
| v. | § | |
| | § | |
| **NEIL BLEDLOCK[1]** | § | |
| | § | |

---

[1] Listed as Neil Bledlock, the correct spelling is Neil "Beldock."

**Third Party Defendant.** §

## NOTICE OF REMOVAL

Pender Capital Asset Based Lending Fund I, LP ("Plaintiff") hereby files this Notice of Removal of the state court action styled *Pender Capital Asset Based Lending Fund I, LP v. Larry Reynolds and B. Neal Ainsworth, as Trustee of the Poyner Wilkins Generational Trust*, Case No. 048-305488-19 in the 48th Judicial District Court in Tarrant County, Texas (the "State Court Action").

1.      This Notice of Removal is filed pursuant to 28 U.S.C. § 1452, Bankruptcy Rule 9027, and Local Bankruptcy Rule 9027-1. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

2.      The removed action includes requests for injunctive relief restricting the Plaintiff's right to foreclose on property owned by the Debtor, Mansfield Boat and RV Storage, LLC. The Debtor's sworn schedules state that the Debtor owns the property that is subject to the request for injunctive relief and is property of the estate. This Court has jurisdiction pursuant to 11 U.S.C. § 541 and 28 U.S.C. § 1334(e).

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (O). The Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

4.      All pleadings, process, orders, and other filings in the State Court Action are attached hereto as required by Bankruptcy Rule 9027(a) and Bankruptcy Local Rule 9027-1(c).

5.      In accordance with Bankruptcy Rule 9027(c), the Defendant will promptly file a notice of the filing of this Notice of Removal in the State Court Action.

6.     In accordance with Local Rule 9027-1(c), the names and addresses of the parties

and counsel in the State Court Action are as follows:

| | |
|---|---|
| **Attorneys for Plaintiff**<br><br>**PENDER CAPITAL ASSET BASED LENDING FUND I, LP** | Eric M. English<br>State Bar No. 24062714<br>Genevieve M. Graham<br>State Bar No. 24085340<br>Porter Hedges LLP<br>1000 Main Street, 36th Floor<br>Houston, Texas 77002<br>(713) 226-6000<br>eenglish@porterhedges.com<br>ggraham@porterhedges.com<br><br>and<br><br>Garland D. Murphy IV<br>State Bar No. 24058010<br>Smyser Kaplan & Veselka, L.L.P.<br>700 Louisiana Street, Suite 2300<br>Houston, Texas 77002<br>(713) 221-2300<br>(713) 221-2320<br>lmurphy@skv.com |
| **Attorneys for Defendants**<br><br>**LARRY REYNOLDS, B. NEAL AINSWORTH, as Trustee of the Poyner Wilkins Generational Trust** | Law Offices of Glenn R. Snyder<br>Glenn R. Snyder<br>Texas Bar No. 18813900<br>627 Mercury Avenue, Suite 103<br>Duncanville, Texas 75137<br>Ph. 972-594-1133; Fax. 972-570-4498<br>Email: SnyderGlenn@SBCGlobal.net |
| *Pro Se* | Neil Beldock<br> c/o Pender Capital<br> 3232 McKinney Ave, Suite 855<br>Dallas, TX 75204<br> (214) 988-9914<br>neil@pendercapital.com |

Dated: March 4, 2019            Respectfully submitted,

By: /s/ *Eric M. English*
Eric M. English
State Bar No. 24062714
Genevieve M. Graham
State Bar No. 24085340
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
eenglish@porterhedges.com
ggraham@porterhedges.com

and

Garland D. Murphy IV
State Bar No. 24058010
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 221-2300
(713) 221-2320
lmurphy@skv.com

**ATTORNEYS FOR PENDER CAPITAL ASSET
BASED LENDING FUND I, LP**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 4, 2019, a true and correct copy of the foregoing Notice of Removal was served via CM/ECF and/or electronically to the parties listed below.

Law Offices of Glenn R. Snyder
Glenn R. Snyder
Texas Bar No. 18813900
627 Mercury Avenue, Suite 103
Duncanville, Texas 75137
Ph. 972-594-1133; Fax. 972-570-4498
Email: SnyderGlenn@SBCGlobal.net

Neil Beldock
 c/o Pender Capital
 3232 McKinney Ave, Suite 855
Dallas, TX 75204
 (214) 988-9914

neil@pendercapital.com

*/s/ Eric M. English*
Eric M. English



**Tarrant County District Clerk Online**
Thomas A. Wilder, District Clerk

| Civil - Case and Transaction Information | **3/4/19 12:07 PM** |
|---|---|

| Cause Number: | 048-305488-19 | Date Filed: 01-11-2019 |
|---|---|---|

PENDER CAPITAL ASSET BASED LENDING FUND I, LP | VS | LARRY REYNOLDS, ET AL

Cause of Action: CONTRACT, OTHER DEBT/CONTRACT

Case Status: PENDING

| File Mark | Description | | | Assessed Fee | Credit/Paid Fee |
|---|---|---|---|---|---|
| 01-11-2019 | ORIG PET | N | I | 289.00 | |
| 01-11-2019 | COURT COST (PAID) trans #1 | Y | | | 289.00 |
| 01-11-2019 | SVC REQ FORM-SENT TO DP | I | | | 0.00 |
| 01-11-2019 | CIT-ISSUED ON LARRY REYNOLDS-On 01/16/2019 | N | I Svc | 8.00 | |
| 01-11-2019 | CIT-ISSUED ON B NEAL AINSWORTH-On 01/16/2019 | N | I Svc | 8.00 | |
| 01-11-2019 | COURT COST (PAID) trans #5 | Y | | | 8.00 |
| 01-11-2019 | COURT COST (PAID) trans #4 | Y | | | 8.00 |
| 01-22-2019 | CIT RET OF SVC-B NEAL AINSWORTH-SOS-EXEC 1-22-19 | I | | | 0.00 |
| 01-22-2019 | CIT Tr# 5 RET EXEC(B NEAL AINSWORTH) On 01/22/2019 | I | | | 0.00 |
| 02-28-2019 | DEFNS' ORIG ANS | I | | | 0.00 |
| 03-04-2019 | DEFN'S 1ST AMD ORIG ANS & CNTRCLAIM & APPL/TRO & TEMP INJ | N | I | 80.00 | |
| 03-04-2019 | COURT COST (PAID) trans #11 | Y | | | 80.00 |

**District Clerk's Office**

Tom Vandergriff Civil Courts Building

100 N. Calhoun St., 2nd Floor, Fort Worth, Texas 76196, Contact Us

Please send questions and comments regarding the District Clerk web site to District Clerk Webmaster

FILED
TARRANT COUNTY
1/11/2019 11:14 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. **048-305488-19** _____

| | | |
|---|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP, | § § § | IN THE DISTRICT COURT OF |
|     Plaintiff | § | |
| | § | TARRANT COUNTY, TEXAS |
| v. | § § | |
| LARRY REYNOLDS and B. NEAL AINSWORTH, as TRUSTEE OF THE POYNER WILKINS GENERATIONAL TRUST, | § § § § § | |
|     Defendants. | § | ____ JUDICIAL DISTRICT |

## ORIGINAL PETITION

Plaintiff Pender Capital Asset Based Lending Fund I, LP ("Pender Capital") loaned Defendant Mansfield Boat and RV Storage, L.L.C. ("Mansfield") $6.7 million secured by real property used as storage facilities in Tarrant County. Mansfield signed a Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing, a Promissory Note and other agreements spelling out Mansfield's obligations and Pender Capital's rights. Larry Reynolds and the Poyner Wilkins Generational Trust (the "Trust") guaranteed the debt in full. On December 1, 2018, the debt matured under the terms of the loan documents, but Mansfield, Reynolds, and the Trust have all failed to pay the debt, which now exceeds $7.4 million. Pender Capital files this suit because of the breach of guaranty by Reynolds and the Trust.

## I.     PARTIES

1.     Plaintiff Pender Capital Asset Based Lending Fund I, LP is a foreign limited partnership doing business in Texas.

2.     Defendant Larry Reynolds is a Texas resident who can be served with process at 305 Smith Street, Mansfield, Texas 76063.

3.        Defendant B. Neal Ainsworth is Trustee of the Poyner Wilkins Generational Trust.  The Trust was created in the State of Texas and is required to be administered in the State of Texas.   The Trustee Ainsworth is a non-resident of Texas and does business in Texas. Ainsworth may be served with process by serving the Texas Secretary of State pursuant to Texas Civil Practice & Remedies Code § 17.044.   Ainsworth's home office is at 2521 E. Mountain Village Pkwy., Suite 225, Wasilla, Alaska 99654.

## II.        DISCOVERY

4.        Discovery in this case is governed by Level 3 under Rule 190 of the Texas Rules of Civil Procedure.

## III.        JURISDICTION

5.        This Court has subject matter jurisdiction over this dispute because the amount in controversy exceeds the minimum jurisdictional limits. This Court has personal jurisdiction over Defendants because they consented to jurisdiction in Tarrant County by the terms of the guaranty at issue.

## IV.        DAMAGES

6.        Pender Capital seeks monetary damages within the jurisdictional limits of this Court. Pender Capital seeks monetary relief of $1,000,000 or more.

## V.        FACTS

7.        Defendant Mansfield Boat and RV Storage, L.L.C. operates a storage business in Mansfield, Texas.   In November 2017, Mansfield obtained a $6.7 million loan from Pender Capital secured by the real property on which the storage businesses are located.

8.        Larry Reynolds signed a Guaranty of the full amount of the indebtedness under the loan.  He signed in both his individual capacity and as the Trustee for the Poyner Wilkins Generational Trust.

9.      In 2018, Mansfield signed a Promissory Note Modification Agreement increasing the principal amount of the debt to more than $6.9 million.  Reynolds again signed as guarantor on his behalf and as trustee of the Trust.  When Mansfield failed to make a required payment in July 2018, the principal amount of the loan increased to almost $7.2 million.

10.     Under the terms of the loan guaranteed by Reynolds and the Trust, the full amount of Mansfield's indebtedness matured on December 1, 2018.  Mansfield failed to pay the debt.  Reynolds and the Trust, aware of Mansfield's failure to pay, did not satisfy their own obligations to pay Mansfield's debt.

11.     With principal, interest, attorney's fees, and expenses, the total debt now exceeds $7.4 million, and the debt remains due, owing, and unpaid.

## VI.     CAUSES OF ACTION

### A.      Breach of Contract

12.     Pender Capital has an enforceable agreement with Reynolds and the Trust. Reynolds and the Trust both signed a binding guaranty of Mansfield's debt.

13.     Pender Capital performed by providing a loan to Mansfield based on the guaranty signed by Reynolds and the Trust.

14.     Reynolds and the Trust have breached the contract with Pender Capital.

15.     Pender Capital has suffered and is continuing to suffer damages caused by Reynolds and the Trust's breaches.

## VII.    ATTORNEYS' FEES

16.     Pender Capital is entitled to all attorneys' fees and out-of-pocket expenses incurred in enforcing its rights under the guaranty.

## VIII.   RULE 54 STATEMENT ON CONDITIONS PRECEDENT

17.     All conditions precedent have occurred, have been performed, or have been waived.

## PRAYER FOR RELIEF

Pender Capital therefore requests that the Court issue citation for Reynolds and Ainsworth, as Trustee of the Trust, to appear and answer, and that Pender Capital be awarded a judgment against Reynolds and the Trust for the following relief:

a.      Actual damages;

b.      Prejudment interest at the rate specified in the loan documents;

c.      All litigation expenses;

d.      Attorneys' fees;

e.      Costs; and

f.      All other relief, whether at law or in equity, to which Pender Capital is entitled;

SMYSER KAPLAN & VESELKA, L.L.P.

By:   */s/ Land Murphy*
Garland "Land" Murphy
State Bar No. 24058010
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
lmurphy@skv.com

ATTORNEY FOR PLAINTIFF PENDER
CAPITAL ASSET BASED LENDING FUND I, LP

## CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY):* _____ COURT *(FOR CLERK USE ONLY):* _____

STYLED PENDER CAPITAL ASSET BASED LENDING FUND I, LP VS. LARRY REYNOLDS AND B. NEAL AINSWORTH, AS TRUSTEE OF THE POYNER WILKINS GENERATIONAL TRUST

(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| Name:<br>Land Murphy | Email:<br>lmurphy@skv.com | Plaintiff(s)/Petitioner(s):<br><br>Pender Capital Asset Based Lending Fund I, LP | ☒Attorney for Plaintiff/Petitioner<br>☐*Pro Se* Plaintiff/Petitioner<br>☐Title IV-D Agency<br>☐Other: _____ |
| Address:<br>Smyser Kaplan & Veselka<br>700 Louisiana St #2300 | Telephone:<br>(713) 221-2346<br>Fax:<br>(713) 221-2320 | ——<br>——<br>Defendant(s)/Respondent(s):<br><br>Larry Reynold and B. Neal Ainsworth, as Trustee of the Poyner Wilkins Generational Trust | Additional Parties in Child Support Case:<br><br>Custodial Parent:<br><br>Non-Custodial Parent:<br><br>Presumed Father: |
| City/State/Zip:<br>Houston, Texas 77002 | State Bar No:<br>24058010 | | |
| Signature: | | [Attach additional page as necessary to list all parties] | |

2. Indicate case type, or identify the most important issue in the case *(select only 1):*

| Civil | | | Family Law | |
|---|---|---|---|---|
| | | | | **Post-judgment Actions (non-Title IV-D)** |
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | ☐Enforcement |
| *Debt/Contract* | ☐Assault/Battery | ☐Eminent Domain/ | ☐Annulment | ☐Modification—Custody |
| ☐Consumer/DTPA | ☐Construction | Condemnation | ☐Declare Marriage Void | ☐Modification—Other |
| ☒Debt/Contract | ☐Defamation | ☐Partition | *Divorce* | **Title IV-D** |
| ☐Fraud/Misrepresentation | *Malpractice* | ☐Quiet Title | ☐With Children | ☐Enforcement/Modification |
| ☐Other Debt/Contract: | ☐Accounting | ☐Trespass to Try Title | ☐No Children | ☐Paternity |
| | ☐Legal | ☐Other Property: | | ☐Reciprocals (UIFSA) |
| *Foreclosure* | ☐Medical | —— | | ☐Support Order |
| ☐Home Equity—Expedited | ☐Other Professional | | | |
| ☐Other Foreclosure | Liability: | | | |
| ☐Franchise | ☐Motor Vehicle Accident | **Related to Criminal Matters** | | **Parent-Child Relationship** |
| ☐Insurance | ☐Premises | | **Other Family Law** | ☐Adoption/Adoption with |
| ☐Landlord/Tenant | *Product Liability* | ☐Expunction | ☐Enforce Foreign | Termination |
| ☐Non-Competition | ☐Asbestos/Silica | ☐Judgment Nisi | Judgment | ☐Child Protection |
| ☐Partnership | ☐Other Product Liability | ☐Non-Disclosure | ☐Habeas Corpus | ☐Child Support |
| ☐Other Contract: | List Product: | ☐Seizure/Forfeiture | ☐Name Change | ☐Custody or Visitation |
| | | ☐Writ of Habeas Corpus— | ☐Protective Order | ☐Gestational Parenting |
| —— | | Pre-indictment | ☐Removal of Disabilities | ☐Grandparent Access |
| | ☐Other Injury or Damage: | ☐Other: _____ | of Minority | ☐Paternity/Parentage |
| | —— | | ☐Other: _____ | ☐Termination of Parental |
| | | | | Rights |
| **Employment** | **Other Civil** | | | ☐Other Parent-Child: |
| ☐Discrimination | ☐Administrative Appeal | ☐Lawyer Discipline | | —— |
| ☐Retaliation | ☐Antitrust/Unfair | ☐Perpetuate Testimony | | |
| ☐Termination | Competition | ☐Securities/Stock | | |
| ☐Workers' Compensation | ☐Code Violations | ☐Tortious Interference | | |
| ☐Other Employment: | ☐Foreign Judgment | ☐Other: _____ | | |
| —— | ☐Intellectual Property | | | |

| Tax | Probate & Mental Health | |
|---|---|---|
| ☐Tax Appraisal | *Probate/Wills/Intestate Administration* | ☐Guardianship—Adult |
| ☐Tax Delinquency | ☐Dependent Administration | ☐Guardianship—Minor |
| ☐Other Tax | ☐Independent Administration | ☐Mental Health |
| | ☐Other Estate Proceedings | ☐Other: _____ |

3. Indicate procedure or remedy, if applicable *(may select more than 1):*

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court | ☐ Declaratory Judgment | ☐ Prejudgment Remedy |
| ☐ Arbitration-related | ☐ Garnishment | ☐ Protective Order |
| ☐ Attachment | ☐ Interpleader | ☐ Receiver |
| ☐ Bill of Review | ☐ License | ☐ Sequestration |
| ☐ Certiorari | ☐ Mandamus | ☐ Temporary Restraining Order/Injunction |
| ☐ Class Action | ☐ Post-judgment | ☐ Turnover |

**4. Indicate damages sought (*do not select if it is a family law case*):**

☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100, 000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☒ Over $1,000,000

Rev 2/13

# THOMAS A. WILDER, DISTRICT CLERK
## TARRANT COUNTY SERVICE REQUEST FORM

**Cause No:**_____

**Style of Case:** Pender Capital Asset Based Lending Fund 1, LP vs Larry Reynolds and B. Neal Ainsworth as trustee of the Poyner Wilkins Generational Trust

Please reference the District Clerk web page, **www.tarrantcounty.com/DistrictClerk/Forms** for the following forms: Abstracts, Executions, Subpoenas.

**Choose the type of service documents for issuance and select the type and quantity of issuance(s) needed. *For electronic service, service document will be e-mailed to you for you to attach documents and have party served.**

[ ] **Check box if you would like the District Clerk's Office to make copies for your service. (add $.50 per page per pleading for copies for service)**

Title of Pleading to be Served: Original Petition

Date Pleading Filed: Jan. 11, 2019

Return to (e-Service ONLY): mary Adams at madams@sku.com
**(Name and e-mail address)**

| Quantity | Type of Service | TC Constable | Alternative Service (Private Process or Out of County) | Certified Mail | *Electronic Service |
|---|---|---|---|---|---|
| | Citation by Publication | | | | |
| | Citation by Posting | | | | |
| 2 | Citation | | | | via email |
| | TRO | | | | |
| | Show Cause | | | | |
| | Capias | | | | |
| | Arrest Warrant | | | | |
| | Protective Order | | | | |
| | Writ of Habeas | | | | |
| | Writ of Attachment | | | | |
| | Bench Warrant | | | | |
| | Writ of Garnishment | | | | |
| | Writ of Permanent Injunction | | | | |
| | Writ of Temporary Injunction | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Name of Party to be served:_____ Service Type:_____
Address for Service:_____ Party Type:_____

Name of Party to be served:_____ Service Type:_____
Address for Service:_____ Party Type:_____

**Attach additional pages if there are more parties to be served.**

**PERSON REQUESTING SERVICE:**
NAME: Mary Adams on behalf of Land murphy
MAILING ADDRESS: 700 Louisiana St # 2300 Houston TX 77002
PHONE NO: 713 221 2328    FAX NO.: 713 221
EMAIL ADDRESS: madams@sku.com

Revised 06/04/2018

# THE STATE OF TEXAS
## DISTRICT COURT, TARRANT COUNTY

*CITATION*                    *Cause No. 048-305488-19*

PENDER CAPITAL ASSET BASED LENDING FUND I, LP
VS.
LARRY REYNOLDS, ET AL

To and through the Secretary Of State, Statutory Documents Section, PO Box 12079, Austin TX 78711-2079
TO: B NEAL AINSWORTH

2521 E MOUNTAIN VILLAGE PKWY STE 225 WASILLA, AK 99654-

SERVICE OF PROCESS MAY BE HAD UPON DEFENDANT BY DELIVERING TO THE SECRETARY OF STATE, OF THE STATE OF TEXAS, DUPLICATE
COPIES OF THIS CITATION TOGETHER WITH DUPLICATE COPIES OF THE PLAINTIFF'S PETITION ATTACHED HERETO.
You said DEFENDANTS are hereby commanded to appear by filing a written answer to the ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 48th District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFF being

PENDER CAPITAL ASSET BASED LENDING FUND I LP

Filed in said Court on January 11th, 2019 Against
LARRY REYNOLDS, B NEAL AINSWORTH

For suit, said suit being numbered 048-305488-19 the nature of which demand is as shown on said
ORIGINAL PETITION  a copy of which accompanies this citation.

## GARLAND "LAND" MURPHY
Attorney for PENDER CAPITAL ASSET BASED LENDING FUND I LP Phone No. (7
Address        700 LOUISIANA STE 2300 HOUSTON, TX 77002

_____Thomas A. Wilder_____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal
of said Court, at office in the City of Fort Worth, this the 16th day of January, 2019.

By *Lisa Letbetter*
LISA LETBETTER

A CERTIFIED COPY
ATTEST: 01/16/2019
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Lisa Letbetter

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.
Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN  *04830548819000005*

Received this Citation on the _____ day of _____, _____ at _____ o'clock ___M; and executed at
_____ within the county of _____, State of _____ at _____ o'clock ___M
on the _____ day of _____, _____ by delivering to the within named (Def.): _____
defendant(s), a true copy of this Citation together with the accompanying copy of ORIGINAL PETITION
, having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff: _____
County of _____ State of_____ By _____ Deputy
Fees $_____
State of _____ County of _____ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said _____ before me this _____ day of _____, ____
to certify which witness my hand and seal of office
(Seal)                    _____
County of _____, State of _____

*CITATION*

Cause No. 048-305488-19

PENDER CAPITAL ASSET BASED
LENDING FUND I, LP

VS.

LARRY REYNOLDS, ET AL

ISSUED

This 16th day of January, 2019

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By        LISA LETBETTER Deputy

GARLAND "LAND" MURPHY
Attorney for: PENDER CAPITAL ASSET BASED LENDING FUND I LP
Phone No. (713)221-2300
ADDRESS: 700 LOUISIANA STE 2300

HOUSTON, TX 77002

*CIVIL LAW*



*04830548819000005*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
**ORIGINAL**



A CERTIFIED COPY
ATTEST: 01/16/2019
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Lisa Letbetter

## THE STATE OF TEXAS
## DISTRICT COURT, TARRANT COUNTY

*CITATION*        *Cause No. 048-305488-19*

PENDER CAPITAL ASSET BASED LENDING FUND I, LP
VS.
LARRY REYNOLDS, ET AL

### TO: LARRY REYNOLDS

305 SMITH ST MANSFIELD, TX 76063-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 48th District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFF being

PENDER CAPITAL ASSET BASED LENDING FUND I LP

Filed in said Court on January 11th, 2019 Against
LARRY REYNOLDS, B NEAL AINSWORTH

For suit, said suit being numbered 048-305488-19 the nature of which demand is as shown on said
ORIGINAL PETITION  a copy of which accompanies this citation.

### GARLAND "LAND" MURPHY
Attorney for PENDER CAPITAL ASSET BASED LENDING FUND I LP Phone No. (7
Address     700 LOUISIANA STE 2300 HOUSTON, TX 77002

_____ Thomas A. Wilder _____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal
of said Court, at office in the City of Fort Worth, this the 16th day of January, 2019.

By _____
LISA LETBETTER

A CERTIFIED COPY
ATTEST: 01/16/2019
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Lisa Letbetter

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.
Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

---

### OFFICER'S RETURN  *04830548819000004*

Received this Citation on the _____ day of _____, _____ at _____ o'clock ___M; and executed at
_____ within the county of _____, State of _____ at _____ o'clock ___M
on the _____ day of _____, _____ by delivering to the within named (Def.): _____
defendant(s), a true copy of this Citation together with the accompanying copy of ORIGINAL PETITION
, having first endorsed on same the date of delivery.

    Authorized Person/Constable/Sheriff: _____
    County of _____ State of_____ By _____ Deputy
Fees $_____
State of _____ County of _____ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said _____ before me this _____ day of _____, ____
to certify which witness my hand and seal of office
(Seal)        _____
    County of _____, State of _____

*CITATION*

Cause No. 048-305488-19

PENDER CAPITAL ASSET BASED
LENDING FUND I, LP

VS.

LARRY REYNOLDS, ET AL

ISSUED

This 16th day of January, 2019

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By        LISA LETBETTER Deputy

GARLAND "LAND" MURPHY
Attorney for: PENDER CAPITAL ASSET BASED LENDING FUND I LP
Phone No. (713)221-2300
ADDRESS: 700 LOUISIANA STE 2300

HOUSTON, TX 77002

*CIVIL LAW*



*04830548819000004*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
**ORIGINAL**



A CERTIFIED COPY
ATTEST: 01/16/2019
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Lisa Letbetter

048-305488-19

FILED
TARRANT COUNTY
1/22/2019 11:01 AM
THOMAS A. WILDER
DISTRICT CLERK

## CAUSE NO. 048-305488-19

| | | |
|---|---|---|
| THE PENDER CAPITAL ASSET BASED LENDING FUND I LP, | § § | |
| **PLAINTIFF** | § | IN THE 48TH DISTRICT COURT |
| | § | |
| VS. | § | TARRANT COUNTY, TX |
| | § | |
| LARRY REYNOLDS, | § | |
| **DEFENDANT** | § | |

### RETURN OF SERVICE

**ON Tuesday, January 22, 2019 AT 06:48 AM**
CITATION, ORIGINAL PETITION for service on B Neal Ainsworth c/o Texas SOS came to hand.

**ON Tuesday, January 22, 2019 AT 10:11 AM, I, Alan Williams, PERSONALLY DELIVERED THE ABOVE-NAMED DOCUMENTS TO:** B NEAL AINSWORTH C/O TEXAS SOS, 1019 BRAZOS STREET, AUSTIN, TRAVIS COUNTY, TX, 78701.

My name is Alan Williams. My address is 1201 Louisiana, Suite 370, Houston, Texas 77002, USA. I am a private process server certified by the Texas Judicial Branch Certification Commission (PSC 12124, expires Wednesday, July 31, 2019). My date of birth is April 30, 1994. I am in all ways competent to make this statement, and this statement is based on personal knowledge. I am not a party to this case, and have no interest in its outcome. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Travis County, Texas on Tuesday, January 22, 2019

/S/ ALAN WILLIAMS

121403

DocID: P259429_2

## CAUSE NO. 048-305488-19

| | | |
|---|---|---|
| THE PENDER CAPITAL ASSET BASED | § | |
| LENDING FUND I LP, | § | |
| **PLAINTIFF** | § | IN THE  48TH DISTRICT COURT |
| | § | |
| VS. | § | TARRANT COUNTY, TX |
| | § | |
| LARRY REYNOLDS, | § | |
| **DEFENDANT** | § | |

### DECLARATION OF Carol Tharp OF DUE DILIGENCE

**On January 22, 2019 at 06:47 AM**

CITATION, ORIGINAL PETITION for service on Larry Reynolds came to hand.

**On January 22, 2019 at 03:20 PM**, at 305 SMITH STREET, MANSFIELD, TARRANT COUNTY, TX 76063 Went to stated address and spoke with Mike Martinez, General Manager for C & S Storage, who stated Larry Reynolds was the owner and he was out of town in Alaska. He did not know when Reynolds would be back, but he texted Reynolds' mother and there was no response. Left card, no return call.
**On January 24, 2019 at 04:50 PM**, at 305 SMITH STREET, MANSFIELD, TARRANT COUNTY, TX 76063 Went to stated address and spoke with Mike Martinez, General Manager, who stated Larry Reynolds was not there and he did not know when Reynolds would be there. Left card, no return call.
**On January 25, 2019 at 11:45 AM**, at 305 SMITH STREET, MANSFIELD, TARRANT COUNTY, TX 76063 Went to stated address and spoke with Mike Martinez, who stated Larry Reynolds was not there, and had not been there during the past four days. He did not know when Reynolds would be here and stated he was in Alaska. Martinez would not provide a cell number for Reynolds. Left card, no return call.
**On January 26, 2019 at 10:25 AM**, at 305 SMITH STREET, MANSFIELD, TARRANT COUNTY, TX 76063 Went to stated address and spoke with Mike Martinez, General Manager, who stated Larry Reynolds was not there, he did not know when he would be back, and he said he did not have a cell or contact number for Reynolds. No return calls.

My name is Carol Tharp. My address is 1201 Louisiana, Suite 370, Houston, Texas 77002, USA. I am a private process server authorized by and through the Supreme Court of Texas (PSC 1222, expires Thursday, April 30, 2020). My date of birth is July 24, 1946. I am in all ways competent to make this declaration, which is based on personal knowledge. I am not a party to this case, and have no interest in its outcome. I declare under penalty of perjury that the foregoing is true and correct. This declaration is made in conformity with Texas Civil Practice and Remedies Code § 132.001.

Executed in Tarrant County, Texas on Saturday, January 26, 2019

/S/ CAROL THARP

# The State of Texas

*Received 2/1/19 mary adams*



Service of Process
P.O. Box 12079
Austin, Texas 78711-2079

Phone: 512-463-5560
Fax: 512-463-0873
Dial 7-1-1 For Relay Services
www.sos.state.tx.us

## Secretary of State

January 30, 2019

> 2019-300725-1
>
> **Include reference number in all correspondence**

Land Murphy
Smyser Kaplan & Veslka LLP
700 Louisiana Street
Suite 2300
Houston, TX 77002

RE:   Pender Capital Asset Based Lending Fund I, LP vs. Larry Reynolds, et al
       48th Judicial District Court Of Tarrant County, Texas
       Cause No. 04830548819

Dear Sir/Madam

Please find enclosed your Certificate(s) of Service for the case styled above.

If this office may be of further assistance to you, please do not hesitate to contact us.

Sincerely,

Service of Process
Government Filings
512-463-1662



**DOCKETED**

**02/01/2019**

MA



# The State of Texas
## Secretary of State

2019-300725-1

I, the undersigned, as Secretary of State of the State of Texas, DO HEREBY CERTIFY that according to the records of this office, a copy of the Citation and Original Petition in the cause styled:

Pender Capital Asset Based Lending Fund I, LP vs. Larry Reynolds, et al
48th Judicial District Court Of Tarrant County, Texas
Cause No: 04830548819

was received by this office on January 22, 2019, and that a copy was forwarded on January 23, 2019, by CERTIFIED MAIL, return receipt requested to:

B Neal Ainsworth
2521 E Mountain Village Pkwy
Ste. 225
Wasilla, AK 99654

The RETURN RECEIPT was received in this office dated January 29, 2019, bearing signature.



Date issued: January 30, 2019

**David Whitley**
**Secretary of State**
GF/vm

048-305488-19

FILED
TARRANT COUNTY
2/28/2019 12:35 PM
THOMAS A. WILDER
DISTRICT CLERK

## CAUSE NO. 048-305488-19

| | |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP<br>Plaintiff | IN THE DISTRICT COURT |
| vs | 48 JUDICIAL DISTRICT |
| LARRY REYNOLDS and B. NEAL AINSWORTH, as Trustee of the Poyner Wilkins Generational Trust | TARRANT COUNTY, TEXAS |

## DEFENDANTS' ORIGINAL ANSWER

Defendants, LARRY REYNOLDS and B. NEAL AINSWORTH, as Trustee of the Poyner Wilkins Generational Trust, files this, Defendants' Original Answer, and would show the Court as follows:

A.      General Denial.   Each Defendant, denies the allegations in Plaintiff's Original Petition and demands strict proof of each claim by Plaintiff, in accordance with law.

PRAYER.     Defendants each pray that Plaintiff's claims and causes of actions be in all things denied, and that Defendant recover cost and be granted all relief to which they may be shown to be entitled in law or in equity.

Respectfully Submitted
Law Offices of Glenn R. Snyder
627 Mercury Avenue, Suite 103
Duncanville, Texas 75137
Ph. 972-594-1133; Fax. 972-570-4498

By:/s/Glenn R. Snyder
Glenn R. Snyder
Texas Bar No. 18813900
Email: SnyderGlenn@SBCGlobal.net
Attorney for Defendants

CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing was served upon the below designated, pursuant to the Texas Rules of Civil Procedure, as follows:

| | | |
|---|---|---|
| \_\_ | Certified Mail, Return Receipt | Garland "Land" Murphy |
| \_\_ | Requested, Postage Prepaid | 700 Louisiana Street, Suite 2300 |
| \_\_ | Receipted Personal Delivery | Houston, Texas   77002 |
| \_\_ | Fax, prior to 5:00 p.m. | Fax: 713-221-2320 |
| xxx | Eservice through qualified E-filing provider | Email: lmurphy@skv.com |
| \_\_ | Email | |

Dated:\_\_February 28, 2019

By:  /s/Glenn R. Snyder
Attorney for Defendants

## CAUSE NO. 048-305488-19

| | |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP,<br>Mansfield | IN THE DISTRICT COURT |
| vs | 48TH JUDICIAL DISTRICT |
| LARRY REYNOLDS and B. NEAL AINSWORTH, AS TRUSTEE OF THE POYNER WILKINS GENERATIONAL TRUST,<br>Defendants | |
| vs | |
| NEIL BLEDLOCK<br>Third Party Defendant | TARRANT COUNTY, TEXAS |

### DEFENDANT'S FIRST AMENDED ORIGINAL ANSWER AND COUNTERCLAIM AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

NOW COMES LARRY REYNOLDS AND B. NEAL AINSWORTH AS TRUSTEE OF THE POYNER WILKINS GENERATIONAL TRUST, Counter-Mansfield and Defendants herein complaining of Plaintiff PENDER CAPITAL ASSET BASED LENDING FUND I, LP and seeking a temporary restraining order and temporary injunction and in support of their claims would show the Court as follows:

1.   *Parties*.

    a.   PENDER CAPITAL ASSET BASED LENDING FUND I, LP, ("Pender") is a

          foreign limited partnership doing business in Texas.

    b.   Defendant Counter- Plaintiff Larry Reynolds (Reynolds) is a Texas resident and

          has made his appearance before the Court.

**AMENDED ANSWER AND COUNTER PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION   Page 1**

c.  Defendant Counter-Plaintiff B. Neal Ainsworth ("Ainsworth") is the Trustee of the Poyner Wilkins Generational Trust (the "Trust") and has made his appearance before the Court. The Trust is the owner of Mansfield Boat and RV Storage, LLC.

d.  Third-Party Defendant Neil Beldock ("Beldock") is an individual and the substitute trustee on the Notice of foreclosure sale, residing in the State of Texas who may be served with process at 3232 McKinney Avenue, Suite 855, Dallas, Texas 75023. The last three numbers of Defendant Beldock's drivers license and social security number are unknown.

2.  *Defendant's First Amended Original Answer*.

a.  General Denial.  Each Defendant, denies the allegations in Mansfield's Original Petition and demands strict proof of each claim by Mansfield, in accordance with law.

b.  Mansfield Boat and RV Storage, LLC is not a Defendant in this case as alleged by Pender in "V 7." of its Original Petition.

c.  Mansfield was not "required to make a payment in July of 2018.  Rather, if payment was not made then the principal amount of the note increased by the amount of the unmade payment.

d.  Defendant Counter-Plaintiffs deny that Pender is due any attorney fees, and that any attorney fees claimed by Pender are not reasonable and are not necessary.

3.  *Jurisdiction and Venue and Standing*.

3.1.  Jurisdiction.  Jurisdiction in proper in the State of Texas and this Court in that:

(a)  this action involves an interest in and title to real property located in Tarrant

County, Texas; (b) the monetary sums involved are within the jurisdiction of this Court; and ( c ) the acts and omissions giving rise to this cause of action arose within the State of Texas.

3.2. Venue. Venue is proper in this county, in that: (a) this action involves in interest in and title to real property located in Tarrant County, Texas; (b) a substantial portion of the acts and omission giving rise to Mansfield's causes of actions occurred in Tarrant County, Texas; ( c ) are based, in whole or in part on a contract entered into in Tarrant County, Texas.

3.3 Standing. Reynolds and Ainsworth as Trustee have standing to bring their Counterclaim because both are guarantor's of Mansfield's debt to Pender. Ainsworth is the legal owner of the property because as Trustee he has legal title to the property and a fiduciary relationship to all beneficiaries of the Trust. Reynolds is an owner of the property became he has the control of Mansfield and is a member of the LLC. Reynolds and Ainsworth as Trustee have the right to manage the property and have an ownership interest in the property. See *Metropolitan Life Insurance Company v. La Mansion Hotels and Resorts, Ltd.,* 762 S. W. 646 (Tex. App.--Corpus Christi, 1998 *Reh. Denied).*

## 4. INCORPORATED UNSWORN DECLARATIONS

**4.1** The Unsworn Declarations pursuant to Tex. Civ. Prac Rem Code Chapt. 132 of Larry Reynolds, B. Neal Ainsworth, and Patrick Williams are incorporated herein as if set forth fully herein verbatim.

## 5. UNDERLYING FACTS.

5.1.    Mansfield and Pender entered into a loan agreement and note which were secured by a deed of trust in the real property described in Exhibit "A", to the Unsworn Declaration of Larry Reynolds.

5.2.    A dispute arose under the loan, note and deed of trust, including a request for a judicial foreclosure in an action filed by Mansfield in the 48th District Court of Tarrant County, Texas in Cause Number 048-299273-18, styled Pender Asset Based Lending Fund I, LP v. Mansfield Boat and RV Storage LLC, v Janice Ruth Reynolds, Intervenor v. Anna M Virene Third Party Defendant, Judge David L. Evans presiding, referred to herein as the Original Action. The Court is requested to take judicial notice of its file and the court Reporter's record in Cause No. 048-299273-18,

5.3.    Mansfield and Pender into a Confidential Full and Final Compromise Settlement Agreement on or about July 13, 2018, (Settlement Agreement). This Court approved the Settlement Agreement. The Settlement agreement is attached to the Unsworn Declaration of Larry Reynolds as Exhibit "C." The terms of the Settlement Agreement included:

   (a)    Provisions requiring Mansfield to make payment of funds to Pender to be held in escrow for payment of taxes and insurance on the subject property.

   (b)    A modification of the original note, entitled "Promissory Note Modification Agreement, which provided new and additional terms to the original note.

   ( c )    The requirement for a Deposit Account Control Agreement.

   (d)    A Cash Management Agreement.

5.4.  Pursuant to the terms of the Settlement Agreement the Original Action was dismissed by order of the 48th District Court on July 13, 2018.

5.5.  At closing of the original loan, prior to the execution and approval of the Settlement Agreement the following sums made part of the loan cost and fees and included in total loan amount.

(a)  $15,000.00 was included as a fee to Pender which Pender claimed was a due diligence fee which was included in the total amount of the loan made by Mansfield.

(1)  However, Mansfield had previously paid the $15,000.00 due diligence fee to Pender.

(2)  Mansfield  has never received the return of the $15,000.00 double payment against the sum due and owing by Mansfield, nor has the sum credited against the amounts claimed by Pender to be due and owing.

(b)  $7,500.00 as a fee for a lockbox.

(1)  However, the lockbox was never set up or established.

(2)  The lockbox was never set up or established.

(3)  Mansfield  has never received the $7,500.00 sum, nor has the sum been credited against the amounts claimed by Pender to be due and owing.

5.6.  Mansfield made its monthly payments as required on the modified note through and including the payments for September 2018.  The amounts of the payments

did not include interest adjustments for the sum of $255,000.00 added to the principal balance of the modified note.

5.7    Although Pender had received escrow funds for payment of certain charges under the Original Loan, as modified, Pender failed to make certain payments, which Mansfield was therefore required to make, as follows:

(a)    $15,463.00 for property insurance on the two properties securing the loan.

(b)    $4,775.40 for liability insurance on the two properties securing the loan.

( c )    $10,229.75 for shortages in property tax payments on the properties.

5.8.    A failure of the Mansfield to pay taxes or to maintain insurance would constitute a breach under the agreements of the parties.  However, Pender had a duty to use the funds paid into escrow to make such payments, and failed to do make such payments, instead keeping all or part of the funds paid to Defendant for such payments.

5.9.    Further, Pender invoiced the Mansfield for amounts in excess of what was due and owing in the amount of $2,688.23 for the August 2018 payment and $2,688.23 for the September 2018. Payment.  Mansfield paid such overcharges.

5.10.    Pender was notified of such failures, but Pender failed to cure the failures or to properly credit Mansfield's debts and obligations, despite such funds being held in trust for those purposes.

5.11.    For payments made after the September 2018 Payment:

(a)    For the note due for October 2017, Mansfield made offsets for the for part of the funds not credited by Pender and made payment in the amount of $33,155.39, which is the amount of payment prior to interest adjustment,

less part of the sums paid by Mansfield for funds held in escrow by

Pender, but not used to pay the charges for which the escrow funds were

to be used.

(b)     For the note payment due in November 2018, Mansfield made a payment

of $46,500.00, which is amount of payment prior to interest adjustment,

less part of the sums paid by Mansfield for funds held in escrow by

Pender, but not used to pay the charges for which the escrow funds were

to be used.

5.12.   Following the entry into the Settlement Agreement through the filing of this

pleading, Mansfield has attempted to obtain loans from other lenders in an

attempt to pay off the interim loan represented by the Loan Agreement, Note and

modified notes

5.13   In order to obtain the new loans, Mansfield required Pender to provide accurate

payoff amounts from Pender. Despite requests and demand from the Mansfield,

Defendant Pender either failed to timely provide payoff amounts, to provide payoff

amounts which accurately reflected the balance due on the loan.  See the Unsworn

Declaration  of Larry Reynolds and the Unsworn Declaration  of B. Neal Ainsworth.

Their refusal to provide a payoff continues.  See the Unsworn Declaration of Patrick

Williams attached hereto. But for Pender's unreasonable and bad faith refusal to

provide this information in a timely fashion Pender would have been paid in full.

5.14.   As a direct result of Pender's failure to properly apply escrow funds and to

provide a true and accurate payoff, Mansfield has been unable to secure the

loans needed to payoff the accurate outstanding balances due and owing to Pender under the terms of the Settlement Agreement and related documents.

5.15. Pender has also declared the Promissory Note that is the subject of the Settlement Agreement in default, despite having received greater funds than entitled under the settlement agreement.  Defendant Counter-Plaintiff does not contend that the Promissory has not matured and that the full amount due, whatever that my be determined to be, is due and owing.

5.16. On or about November 5, 2018 Pender sent notice of acceleration of the Promissory Note that is subject to the Settlement Agreement demanding full payment of the putative outstanding balance on the loan, in the amount of $7,348,775.75, without giving credit for the sums paid by Mansfield or which Pender previously received, wrongfully declaring a default.  A true and correct copy of the Notice is attached to the Unsworn Declaration of Larry Reynolds as Exhibit "B".

5.17. On or about November 7, 2018, Defendant Beldock, acting in the capacity of Substitute Trustee under the Deed of Trust securing the loan, mailed a Notice Trustee's Foreclosure Sale on the real property securing the loan to occur on December 4, 2018.  The Trustee's sale set out an incorrect balance due on the loan, and failed to give the required credits for fund ,(as previously set forth), improperly held by Pender.   A true and correct copy of the Notice of Substitute Trustee's Foreclosure Sale is attached to the Unsworn Declaration of Larry Reynolds as Exhibit "C".

5.18.   On or about November 7, 2018, Pender mailed a Notice of Disposition of
Collateral to Mansfield, stating Mansfield's intent to sell or transfer certain
personal property described therein on December 4, 2018 at the Tarrant County
Courthouse.  A true and correct copy of the Notice attached to the Unsworn
declartion of Larry Reynolds as Exhibit "D".

5.19   On or about February 7, 2019, Defendant Beldock, acting in the capacity of
Substitute Trustee under the Deed of Trust securing the loan, mailed a Notice
Trustee's Foreclosure Sale on the real property securing the loan to occur on
March 5, 2019.  The Trustee's sale set out an incorrect balance due on the loan,
and failed to give the required credits for fund ,(as previously set forth),
improperly held by Pender.   A true and correct copy of the Notice of Substitute
Trustee's Foreclosure Sale is attached to the Unsworn Declaration of Larry
Reynolds as Exhibit "C".

5.20   On or about February 7, 20198, Pender mailed a Notice of Disposition of
Collateral to Mansfield, stating Mansfield's intent to sell or transfer certain
personal property described therein on March 5, 2019 at the Tarrant County
Courthouse.  A true and correct copy of the Notice attached to the Unsworn
Declaration of Larry Reynolds as Exhibit "D".

## 6.   REQUEST FOR DECLARATORY JUDGEMENT.

6.1.   Defendant Counter-Plaintiffs have an interest in real property whose rights and
legal relationship are effected by the contracts and written instruments described
above herein.  Pursuant to TEX. CIV. PRAC. & REM. CODE, CH 37,Defendant
Counter-Plaintiffs seek: (a) a determination of Defendant Counter-Plaintiff's

Mansfield's rights in the real property; (b) a determination of Mansfield's rights under Settlement Agreement, notes and other agreements and instruments which are the subject of the Settlement Agreement; ( c ) a determination of the amount due under the Loan Agreement and Modified Note; and (d) a payoff amount for the purposes of finalizing a loan with potential lenders.

6.2.    Mansfield further sought seeks reasonable and necessary attorneys' fees for bringing this declaratory judgement action, including

## 7.    BREACH OF CONTRACT

7.1.    Under the terms of the Settlement Agreement and underlying notes and loan documents, Mansfield was required to pay sums to Pender, which were to be paid by Pender for insurance coverage and taxes on the property securing the debt of the Mansfield to Pender.

7.2.    Failure of the Mansfield to pay taxes, maintain insurance or have tax liens placed upon the premises would have constituted a condition of default by Mansfield.

7.3.    Pender's failure to use funds placed in escrow for the funds intended purposes created a breach which Mansfield, through no fault of Mansfield, which Mansfield was required to cure in order to avoid a condition of default on the loan. The default would have been caused by the lender, Pender's, own breach of contract and its duties to Mansfield and Defendant Counter-Plaintiffs.

7.4.    As a result of Pender's wrongful action, Mansfield has been required to make payments which Pender had a duty to pay from funds held in escrow by Defendant Pender.   As a result of Defendant Pender' s wrongful conduct and failure to credit Mansfield for sums paid to third parties by Mansfield, Mansfield's

did not have available funds to pay the amounts alleged due and owing by to

Pender.  If Pender had used the escrowed funds for the intended purpose or

credited such amounts paid by Mansfield against the sums alleged due and

owing by Pender, Mansfield would have had sufficient funds to pay the actual

amounts due, after the credit to which Mansfield was entitled was applied.

7.5.   Based on information and belief, such action by Pender was knowing and

intentional or in the alternative, willful and reckless.

8**.**     **Request for Temporary Restraining Order and injunctive Relief.**

Based on the foregoing Defendants Counter-Plaintiffs requests that the following

temporary Restraining Order be granted:

Pender and Bledlock, their agents, substitute trustee under the Deed of Trust,

servants and employees be restrained from directly or indirectly selling or attempting to sell,

foreclosing or attempting to foreclose, posting or attempting to post notice of sale to the

property described in the attached Exhibits to the Unsworn Declaration of Larry J. Reynolds.

Defendants Counter-Plaintiffs request that the Court find that it is essential that

Pender, and Bledlock of Trust, their agents, servants and employees be, without prior notice,

immediately  and temporarily restrained from directly or indirectly selling attempting to sell,

foreclosing or attempting to foreclose, posting or attempting to post notice of sale to the

property described in the Unsworn Declaration of Larry J. Reynolds. Because the harm to

Defendants Counter-Plaintiffs is imminent and because the threatened foreclosure is

scheduled to occur between 10 a.m. and three hours thereafter on March 5, 2019. This

imminent harm will cause Defendant Cross-Plaintiffs  irreparable injury in that Defendant

Cross-Plaintiffs will lose all right title and interest in the unique real property threatened to be foreclosed.

In order to preserve the status quo during the pendency of this action, Defendant Cross-Plaintiffs  request Pender and Bledlock their agents, servants and employees be temporarily enjoined from directly or indirectly selling or attempting to sell, foreclosing or attempting to foreclose, posting or attempting to post notice to sell to the real property described in the attached to the Unsworn declaration of Larry J. Reynolds.

On final trial on the merits, that the Court permanently enjoin Pender and Bledlock directly or indirectly selling or attempting to sell, foreclosing or attempting to foreclose, posting or attempting to post notice to sell to the real property described in the  to the Unsworn Declaration of Larry J. Reynolds.

Defendants Cross-Plaintiffs are willing to post a reasonable temporary restraining order bond and requests the Court to set such bond.  However, there is no risk to Pender of Bledlock in this case because the value of the real property in question far exceeds the amount owed by Mansfield. In light of these facts, any bond set by the court should be nominal.

Defendant Counter-Plaintiffs will suffer immediate and irreparable injury, loss or damages if Pender and Defendant Neil Beldock, are not restrained and enjoined until such time as a hearing may be had on Mansfield's Request for Temporary Injunction from:

(a)     Selling,  transferring or making any disposition of the real property described in Exhibit "A" to the Unsworn Declaration of Larry Reynolds

(b)     Selling,  transferring or making any disposition of Mansfield's

personal property as described in the notice attached to the

Unsworn Declaration of Larry Reynolds as Exhibit "D" until further

order of this Court.

9.2.    Defendant Counter-Plaintiffs will suffer immediate and irreparable injury,

loss or damages if the requested injunction is not granted in that:

(a)     Defendant Counter-Plaintiffs interest in the unique real property and

improvements thereon will be wrongfully transferred and Defendant

Counter-Plaintiffs interest in such property and improvements will be

clouded.

(b)     Defendant Counter-Plaintiffs interest in the personal property

collateral will be wrongfully transferred and Defendant Counter-

Plaintiffs and interest in such property will be clouded.  In addition,

such collateral is reasonably necessary for Mansfield to operate

Mansfield's business and Mansfield's business operations will be

irreparably injured by the loss of use and access to such equipment.

( c )   Mansfield cannot be adequately compensated with monetary

damages.  The injury to Defendant Counter-Plaintiffs if Pender continues

the conduct which Defendant Counter-Plaintiffs request be enjoined as

described above would outweigh any injury the restraining order might

cause Pender and the issuance of an injunction will not disseve the public

interest.

**10.        CONDITIONS PRECEDENT.**

10.1      All conditions precedent to Defendant Counter-Plaintiffs right for the requested relief have occurred.

10.2.     Defendants Counter-Plaintiffs are prepared to post any reasonable bond the Court may require.

**PRAYER.**    Defendant Counter-Plaintiffs pray:

1.      The Court grant without hearing the Temporary Restraining Order prayed for.

2.      The Court set a time and hearing on Defendant Counter-Plaintiff's Application for  temporary injunction.

3.      After notice and hearing the Court issue a temporary injunction:

(a)      Enjoining Pender and Beldock, their officers, agents, servants, and employees from directly or indirectly foreclosing, posting for foreclosure or otherwise transferring an interest in the Real Property described in Exhibit "A", to the Unsworn Declaration of Larry Reynolds.

(b)      Enjoining Pender and Beldock, their officers, agents, servants, and employees from directly or indirectly foreclosing, posting for foreclosure or otherwise transferring an interest in Personal Property described in  "D", to the Unsworn Declaration of Larry Reynolds.

5.      After notice and hearing the Court enter a declaratory judgment determining what amount, if any, is owed by Mansfield, and Defendant

Counter-Plaintiffs under the Settlement Agreement and the related documents and instruments.

6. Enter a judgment awarding Defendant Counter-Plaintiff's damages against Pender within the jurisdictional limits of the Court.

7. Awarding Defendant Counter-Plaintiffs reasonable and necessary attorneys' fees through obtaining final judgment in this matter and awarding Defendant Counter- Plaintiffs a conditional award of attorneys' fees in the event of each unsuccessful attacks upon a judgment in any trial court; for each Petition for Review in the Texas Supreme Court; or unsuccessful attack in the Supreme Court if a Petition for Review is granted.

Respectfully Submitted

The Law Offices of Glenn R. Snyder
627 Mercury Avenue
Duncanville, Texas 75137
Ph. 972-594-1133; Fax. 972-570-4498

By:/s/Glenn R. Snyder
Glenn R. Snyder
State Bar No. 18814900
Email. SnyderGlenn@SBCGlobal.net

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.30

Garland "Land" Murphy, Counsel for PENDER CAPITAL ASSET BASED LENDING FUND I, LP, and NEIL BELDOCK, the parties against whom ex parte relief is sought have been notified of the foregoing application and stated that they wish to be heard.

Dated:    March 4, 2019          /s/ Glenn R. Snyder

                                        Glenn R. Snyder
                                        Attorney for Larry Reynolds and
                                        B. Neal Ainsworth

CAUSE NO. 048-305488-19

| | |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP<br>Plaintiff | IN THE DISTRICT COURT |
| vs | 48 JUDICIAL DISTRICT |
| LARRY REYNOLDS and B. NEAL AINSWORTH, as Trustee of the Poyner Wilkins Generational Trust | TARRANT COUNTY, TEXAS |

B NEAL AINSWORTH'S UNSWORN DECLARATION
PURSUANT TEX. CIV. PROC & REM. CODE §132.001

My names is B. Neal Answorth. I am also known as Beeman Ainsworth. In my capacity as the Trustee of the Poyner Wilkins Generational Trust, I am one of the Defendants in the above styled and numbered cause of action.

1.      On November 2, 2018, I became Trustee of the Poyner Wilkins Generational Trust. In that capacity I am the custodian of the records for both the Poyner Wilkins Generational Trust and Mansfield Boat and RV Storage, LLC. The exhibits attached to this declaration as Exhibits. These records are the original or exact duplicates of the original records of the Mansfield Boat and RV Storage, LLC. It is the regular practice of Mansfield Boat and RV Storage, LLC to make this type of record at or near the time of each act, event, condition, condition, opinion, or diagnosis set forth in the record. It is the regular practice of Mansfield Boat and RV Storage, LLC for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them. It is the regular practice of my Mansfield Boat and RV Storage, LLC to keep this type of record in the course of regularly conducted business activity. It is the regular practice of the Mansfield Boat and RV Storage, LLC activity to make the records. The business records are attached to the Unsworn Declaration of Larry Reynolds as Exhibits "A - F". I have reviewed the exhibits and they are true and correct copies. References to exhibits in this declaration are references to the exhibits attached to the Declaration of Larry Reynolds.

2.      The Poyner Wilkins Generational Trust is the sole owner and member of the entity know as Mansfield Boat and RV Storage, LLC. Mansfield Boat and RV Storage, LLC is the maker of the Note which is the subject the Guaranty Agreements which are the subject of Pender Capital Asset Based Lending Fund

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001      Page 1**

I, LP's claims against Larry Reynolds and me, in my capacity as the Trustee for the Poyner Wilkins Generational Trust.

3.  Mansfield Boat and RV Storage, LLC and Pender Capital Asset Based Lending Fund I, LP entered into a loan agreement and note secured a deed of trust in the real property described in the Deed of Trust attached to the Declaration of Larry Reynolds as Exhibit "A." The Note attached to the Declaration of Larry Reynolds as Exhibit "B" attached to this declaration.

4.  A dispute arose under the loan, note and deed of trust, including a request for a judicial foreclosure in an action filed by Pender Capital Asset Based Lending Fund I, LP filed Mansfield Boat and RV Storage, LLC in the 48th District Court of Tarrant County, Texas in Cause Number 048-299273-18, styled Pender Capital Assets Based Lending Fund I, LP v. Mansfield Boat and RV Storage LLC, v Janice Ruth Reynolds, Intervenor v. Anna M Virene, Judge David L. Evans presiding, referred to herein as the Original Action.

5.  Mansfield Boat and RV Storage, LLC, entered into a Confidential Full and Final Compromise Settlement Agreement on or about July 13, 2018, (Settlement Agreement), with Pender Capital Asset Based Lending Fund I, LP. The terms of the Settlement Agreement included:

    (a)  Provisions requiring Mansfield Boat and RV Storage, LLC to make payment of funds to Pender Capital Asset Based Lending Fund I, LP to be held in escrow for payment of taxes and insurance on the subject property.

    (b)  A modification of the original note, entitled "Promissory Note Modification Agreement, which provided new and additional terms to the original note.

    (c)  The requirement for a Deposit Account Control Agreement.

    (d)  A Cash Management Agreement.

    A true and correct copy of the Settlement Agreement is attached to the Declaration of Larry Reynolds as Exhibit "C."

6.  Pursuant to the terms of the Settlement Agreement the Original Action was dismissed by order of the 48th District Court on July 13, 2018.

7.  At closing of the original loan, the following sums made part of the loan cost and fees and included in total loan amount.

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001        Page 2**
C:\Work\Independent Cases\Y2019-0001 Pender Capital v Larry Reynolds et al\Forms and Doc Prep\Affidavits\UnSworn Declaration of Neal Answorth, Trustee.wpd

(a) $15,000.00 was included as a fee to Pender Capital Asset Based Lending Fund I, LP which Pender Capital Asset Based Lending Fund I, LP claimed was a "due diligence fee" which was included in the total amount of the loan made by Mansfield Boat and RV Storage, LLC.

    (1) However, Mansfield Boat and RV Storage, LLC had previously paid the $15,000.00 due diligence fee to Pender Capital Asset Based Lending Fund I, LP.

    (2) Mansfield Boat and RV Storage, LLC has never received the return of the $15,000.00 double payment against the sum due and owing by Mansfield Boat and RV Storage, LLC, nor has the sum credited against the amounts claimed by Pender Capital Asset Based Lending Fund I, LP to be due and owing.

(b) $7,500.00 as a fee for a lockbox.

    (1) However, the lockbox was never set up or established.

    (2) Pender Capital Asset Based Lending Fund I, LP has received credit for the fees paid for the lockbox, although the lockbox was never set up or established. It still have not been established.

8. Mansfield Boat and RV Storage, LLC made its monthly payments as required on the modified note through and including the payments for September 2018. The amounts of the payments did not include interest adjustments for the sum of $255,000.00 added to the principal balance of the modified note.

9. Although Pender Capital Asset Based Lending Fund I, LP had received escrow funds for payment of certain charges under the Original Loan, as modified, Pender Capital Asset Based Lending Fund I, LP failed to make certain payments, which Mansfield Boat and RV Storage, LLC was required to make, as follows:

(a) $15,463.00 for property insurance on the two properties securing the loan.

(b) $4,775.40 for liability insurance on the two properties securing the loan.

(c) $10,229.75 for shortages in property tax payments on the properties.

10. A failure of the Mansfield Boat and RV Storage, LLC to pay taxes or to maintain insurance would constitute a breach under the agreements of the parties. However, Defendant had a duty to use the funds paid into escrow to make such

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001      Page 3**
C:\Work\Independent Cases\Y2019-0001 Pender Capital v Larry Reynolds et al\Forms and Doc Prep\Affidavits\UnSworn Declaration of Neal Answorth, Trustee.wpd

payments, and failed to do make such payments, instead keeping all or part of the funds paid to Defendant for such payments.

11.  Further, Pender Capital Asset Based Lending Fund I, LP invoiced the Mansfield Boat and RV Storage, LLC for amounts in excess of what was due in owing in the amount of $2,688.23 for the August 2018 payment and $2,688.23 for the September 2018. Payment. However, Mansfield Boat and RV Storage, LLC paid such overcharges.

12.  Pender Capital Asset Based Lending Fund I, LP was notified of such failures, but Pender Capital Asset Based Lending Fund I, LP failed to cure the failures or to correct properly credit Mansfield Boat and RV Storage, LLC's debts and obligations, despite such funds being held in trust for those purposes.

13.  For payments made after the September 2018 Payment:

   (a)  For the note due for October 2017, Mansfield Boat and RV Storage, LLC made offsets for the part of the funds not credited by Pender Capital Asset Based Lending Fund I, LP and made payment in the amount of $33,155.39, which is the amount of payment prior to interest adjustment, less part of the sums paid by Mansfield Boat and RV Storage, LLC for funds held in escrow by Pender Capital Asset Based Lending Fund I, LP, but not used to pay the charges for which the escrow funds were to be used.

   (b)  For the note payment due in November 2018, Mansfield Boat and RV Storage, LLC made a payment of $46,500.00, which is the amount of payment prior to interest adjustment, less part of the sums paid by Mansfield Boat and RV Storage, LLC for funds held in escrow by Pender Capital Asset Based Lending Fund I, LP, but not used to pay the charges for which the escrow funds were to be used

14.  Following the entry into the Settlement Agreement through the date of the filing of this pleading, Mansfield Boat and RV Storage, LLC has attempted to obtain loans from other lenders in an attempt to pay off the interim loan represented by the Loan Agreement, Note and Modified Note.

15.  In order to obtain the new loans, Mansfield Boat and RV Storage, LLC required Pender Capital Asset Based Lending Fund I, LP to provide accurate payoff amounts from Pender Capital Asset Based Lending Fund I, LP. Despite requests and demand from the Mansfield Boat and RV Storage, LLC, Pender Capital Asset Based Lending Fund I, LP either failed to timely provide payoff amounts, to provide payoff amounts which accurately reflected the balance due on the

loan.  Because of such conduct, Mansfield Boat and RV Storage, LLC has been unable to obtain and close the loan or loans necessary to pay the balance of the sums due to Defendant.

16.   As a direct result of Pender Capital Asset Based Lending Fund I, LP's failure to properly apply escrow funds and to provide a true and accurate payoff, Mansfield Boat and RV Storage, LLC has been unable to secure the loans needed as it requires a statement of the payoff of the outstanding balances due and owing to Pender Capital Asset Based Lending Fund I, LP under the terms of the Settlement Agreement and related documents. The information is required for lenders.

17.   Pender Capital Asset Based Lending Fund I, LP has also declared the Promissory Note that is the subject of the Settlement Agreement in default, despite having received greater funds than entitled under the settlement agreement.

18.   On or about November 5, 2018 Pender Capital Asset Based Lending Fund I, LP sent notice of acceleration of the Promissory Note that is subject to the Settlement Agreement demanding full payment of the putative outstanding balance on the loan, in the amount of $7,348,775.75, without giving credit for the sums paid by Mansfield Boat and RV Storage, LLC or which Pender Capital Asset Based Lending Fund I, LP had previously received, wrongfully declaring a default.

19.   On or about November 7, 2018, Neil Beldock, acting in the capacity of Substitute Trustee under the Deed of Trust securing the loan, mailed a Notice Trustee's Foreclosure Sale on the real property securing the loan to occur on December 4, 2018.  The Trustee's sale set out an incorrect balance due on the loan, and failed to give the required credits for funds, (as previously set forth), improperly held by Pender Capital Asset Based Lending Fund I, LP.

20.   On or about November 7, 2018, Pender Capital Asset Based Lending Fund I, LP mailed a Notice of Disposition of Collateral to Mansfield Boat and RV Storage, LLC, stating Mansfield Boat and RV Storage, LLC's intent to sell or transfer certain personal property described therein on December 4, 2018 at the Tarrant County Courthouse.

21.   Mansfield Boat and RV Storage, LLC. filed for protection under the United States Bankruptcy Code in Case No. 18-33926, pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Pender Capital Asset Based Lending Fund I, LP's  filed a Motion to Lift Stay so as to be able to foreclose on the property which is the collateral under the Deed of Trust

and for personal property under a Notice of Disposition of Collateral.

22.     On February 4, 2019, the Bankruptcy Court issued an order modifying the stay which provided that the Automatic Stay under 11 U.S.C. §362(a) which provided that (1) Pender Capital Asset Based Lending Fund I, LP's could post the property for foreclosure for in March of 2019 for foreclosure in April of 2019, provided that if Mansfield Boat and RV Storage, LLC did not file and serve a "term sheet" from a reputable lender for refinancing the debt by 5:00 p.m. Monday, February 4, 2019, then the stay would be immediately lifted.

23.     The order provided that it would take effect upon its entry, pursuant to Bankruptcy Rule 4001 (a) (3).   The Bankruptcy order was entered one day later on February 5, 2019 at 4:28 p.m.  A true and correct copy of the order, as entered on February 5, 2019 is attached as Exhibit "D."

24.     In order to obtain a "term sheet," it was necessary for the prospective lender to receive a payout amount from Pender Capital Asset Based Lending Fund I, LP.

25.     Despite periodic requests Pender Capital Asset Based Lending Fund I, LP. failed to provide the necessary payoff information to Patrick Williams so that an accurate term sheet could be prepared.  A term sheet was prepared on February 7, 2019 was prepared based on an assumption by Mansfield as to the payoff amount.  The term sheet is attached as Exhibit "G"

26.     Pender Capital Asset Based Lending Fund I, LP. Has never provided a payoff figure to the broker, Patrick Williams to present to the prospective lender, Thomas USAF Group.

27.     Such action by Pender made it impossible for me, Neal Ainsworth or Mansfield Boat and RV Storage, LLC. to timely comply with the Bankruptcy Court's order entered February 5, 2019, which required compliance the day before the order was entered.

28.     On February 7, 2019, Neil Beldock, as substitute Trustee, served a Notice of Substitute Trustee's Foreclosure sale and a Notice of Disposition of Collateral on each of Mansfield Boat and RV Storage, LLC; B. Neal Ainsworth, Trustee of the Poyner Wilkins Generational Trust; me, Larry Reynolds; and Mansfield Boat and RV Storage, LLC, c/o Glenn R. Snyder, as evidenced by the Notices attached hereto as Exhibits "E" and "F," respectively.  Such actions are set to take place on March 5, 2019, at 10:00 a.m. or within three hours thereafter.

29.     Because of the above described acts and omissions of Pender Capital Asset Based Lending Fund I, LP's, neither I, Neal Ainsworth, nor Mansfield Boat and

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001       Page 6**

RV Storage, LLC. were able to comply with the Order of the Court entered on February 5, 2019. As a result, of such wrongful action, Larry Renolds, the Poyner Family Generational Trust, as represented by me, and Mansfield Boat and RV Storage, LLC, will be irreparably harmed through the loss of the property which is the subject of the foreclosure of the real property and the sale of the personal property.

My name is B. Neal Ainsworth My date of birth is January 25, 1955. My address is 2521 Mtn Village Dr. B223, Wasilla Alaska 99654. I am a resident of the State of Alaska. I declare under penalty of perjury that the forgoing statements are true and correct and within my personal knowledge.

Executed in _Wasilla Alaska_ on the

_3RD_ day of _MARCH_, 20 _19_.

_(signature)_

Declarant (Signature)

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001          Page 7**
C:\Work\Independent Cases\Y2019-0001 Pender Capital v Larry Reynolds et al\Forms and Doc Prep\Affidavits\UnSworn Declaration of Neal Answorth, Trustee.wpd

# Exhibit A

# PROMISSORY NOTE
## (Texas)

US $6,700,000.00                                                        November 22, 2017

FOR VALUE RECEIVED, the undersigned, MANSFIELD BOAT AND RV STORAGE L.L.C., a Texas limited liability company (together with such party's or parties' successors and assigns, "Borrower"), jointly and severally (if more than one) promises to pay to the order of PENDER CAPITAL ASSET BASED LENDING FUND I, LP, a Delaware limited partnership, the principal sum of SIX MILLION SEVEN HUNDRED THOUSAND AND 00/100 DOLLARS (US $6,700,000.00), with interest on the unpaid principal balance, as hereinafter provided.

1.       **Defined Terms.**

(a)      In addition to defined terms found elsewhere in this Note, as used in this Note, the following definitions shall apply:

**Business Day:** Any day other than a Saturday, a Sunday or any other day on which Lender or the national banking associations are not open for business.

**Default Rate:** An annual interest rate equal to eight percentage points (8%) above the Fixed Interest Rate. However, at no time will the Default Rate exceed the Maximum Interest Rate.

**Disbursement Date:** The date of the initial disbursement of Loan proceeds hereunder.

**First Payment Due Date:** January 1, 2018.

**Fixed Interest Rate:** The annual interest rate of 11.99 percent (11.99%).

**Indebtedness:** The principal of, interest on, or any other amounts due at any time under, this Note, the Mortgage or any other Loan Document, including prepayment premiums, late charges, default interest, and advances to protect the security of the Mortgage under Section 12 of the Mortgage or any other applicable provision of the Mortgage or any other Loan Document or as permitted by law.

**Lender:** The holder(s) from time to time of this Note.

**Loan:** The loan evidenced by this Note.

**Maturity Date:** The earlier of (i) December 1, 2018, and (ii) the date on which the unpaid principal balance of this Note becomes due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document. The Maturity Date of this Note is subject to extension up to December 1, 2019 upon the terms and conditions set forth in Section 3(f).

**Maximum Interest Rate:** The rate of interest that results in the maximum amount of interest allowed by applicable law.

**Mortgage:** That certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of the date of this Note, executed by Borrower to or for the benefit of Lender and securing this Note, which Mortgage encumbers certain real property commonly known as 1945 Farm Road 157 and 305 Smith St., Mansfield, TX 76063.

**Payment Due Date:** The First Payment Due Date and any subsequent date on which a monthly installment of interest or principal and interest is due and payable pursuant to Section 3.

**Prepayment Premium End Date:** The date that is six (6) months after the Disbursement Date.

**Prepayment Premium Period:**  The period during which, if a prepayment of principal occurs, a prepayment premium will be payable by Borrower to Lender.  The Prepayment Premium Period is the period from the Disbursement Date to and excluding the Prepayment Premium End Date.

**Property Jurisdiction:**  The jurisdiction in which the Land is located.

(b)      "Event of Default" and other capitalized terms used but not defined in this Note shall have the meanings given to such terms in the Mortgage.

2.      **Address for Payment.**  All payments due under this Note shall be payable at PENDER CAPITAL, 11766 Wilshire Blvd, Suite 460, Los Angeles, CA 90025, Attn: Loan Servicing, or such other place as may be designated by written notice to Borrower from or on behalf of Lender.

3.      **Payments.**

(a)      Interest will accrue on the outstanding principal balance of this Note at the Fixed Interest Rate, subject to the provisions of Section 8.

(b)      Interest under this Note shall be computed on the basis of a 360-day year consisting of twelve 30-day months.  Each monthly payment will first be applied to pay in full interest due, and the balance of the monthly payment paid by Borrower will be credited to principal.

(c)      Unless disbursement of principal is made by Lender to Borrower on the first day of a calendar month, interest for the period beginning on the Disbursement Date and ending on and including the last day of such calendar month shall be payable by Borrower on or before the Disbursement Date.  If the Disbursement Date is on the first day of a calendar month, then no payment will be due from Borrower until the First Payment Due Date.  The Payment Due Date for the first monthly installment payment under Section 3(d) of interest only or principal and interest, as applicable, will be the First Payment Due Date set forth in Section 1(a).  Except as provided in this Section 3(c) and in Section 10, accrued interest will be payable in arrears.

(d)      Beginning on the First Payment Due Date, and continuing until and including the monthly installment due on the Maturity Date, accrued interest only shall be payable by Borrower in consecutive monthly installments due and payable on the first day of each calendar month.  The amount of the monthly installment of interest only payable pursuant to this Section 3(d) on a Payment Due Date shall be SIXTY-SIX THOUSAND NINE HUNDRED FORTY-FOUR AND 17/100 DOLLARS (US $66,944.17) (assuming no principal reduction payments have been made and no other changes to the outstanding principal balance have occurred).  The amount of the monthly interest only payment shall be adjusted in the event any principal reduction payments or other changes to the outstanding principal balance are made during the term of the Loan.

(e)      All remaining indebtedness, including all principal and interest, shall be due and payable by Borrower on the Maturity Date.  All payments under this Note shall be made in immediately available U.S. funds.  Any regularly scheduled monthly installment of interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due.  Any accrued interest remaining past due for thirty (30) days or more, at Lender's discretion, may be added to and become part of the unpaid principal balance of this Note and any reference to "accrued interest" shall refer to accrued interest which has not become part of the unpaid principal balance.  Any amount added to principal pursuant to the Loan Documents shall bear interest at the applicable rate or rates specified in this Note and shall be payable with such interest upon demand by Lender and absent such demand, as provided in this Note for the payment of interest or principal and interest.  In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in Borrower's designated account to cover any preauthorized monthly debit from Borrower's checking account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of $1,000.00 (but not more than the maximum amount allowed by law) for each such event.

(f)      Borrower shall have two (2) options to extend the Maturity Date (each, an "Extension Option") for six (6) months each (each, an "Extension Period") to June 1, 2019 and December 1, 2019, respectively.  Each Extension Option is exercisable upon the following terms and conditions:

(i) No Event of Default shall exist and no monthly payment due under this Note since the initial funding of the Loan shall have been received by Lender more than thirty (30) days after the Payment Due Date.

(ii) Borrower must exercise such Extension Option by written notice to Lender at least sixty (60) days prior to the then-current Maturity Date, accompanied by a non-refundable cash extension fee in the amount of two percent (2%) of the outstanding principal balance of this Note, plus a $5,000.00 document processing fee, on the date of Borrower's notice of exercise of such Extension Option.

(iii) [Intentionally Omitted]

(iv) The Fixed Interest Rate shall remain unchanged during each Extension Period.

(v) Borrower shall continue making monthly interest only payments on the first day of each calendar month during each Extension Period.

4. **Application of Payments.** If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, Lender may apply the amount received to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Borrower agrees that neither Lender's acceptance of a payment from Borrower in an amount that is less than all amounts then due and payable nor Lender's application of such payment shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction.

5. **Security.** The Indebtedness is secured by, among other things, the Mortgage and reference is made to the Mortgage for other rights of Lender as to collateral for the Indebtedness.

6. **Acceleration.** If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, the prepayment premium payable under Section 10, and all other amounts payable under this Note and any other Loan Document, shall at once become due and payable, at the option of Lender, without any prior notice to Borrower (except if notice is required by applicable law, then after such notice). Lender may exercise this option to accelerate regardless of any prior forbearance. For purposes of exercising such option, Lender shall calculate the prepayment premium as if prepayment occurred on the date of acceleration.

7. **Late Charge.**

(a) If any installment of interest or principal and interest or other amount payable under this Note, the Mortgage or any other Loan Document is not received in full by Lender within ten (10) days after the installment or other amount is due (unless applicable law requires a longer period of time before a late charge may be imposed, in which event such longer period shall be substituted), Borrower shall pay to Lender, immediately and without demand by Lender, a late charge equal to ten percent (10%) of such installment or other amount due (unless applicable law requires a lesser amount be charged, in which event such lesser amount shall be substituted).

(b) Borrower acknowledges that its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charge payable pursuant to this Section 7 represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by reason of such late payment. The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to Section 8.

8. **Default Rate.**

(a) So long as (i) any monthly installment under this Note remains past due for thirty (30) days or more or (ii) any other Event of Default has occurred and is continuing, then notwithstanding anything in Section 3 to the contrary, interest under this Note shall accrue on the unpaid principal balance from the Payment Due Date of the first such unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at the Default Rate.

(b)     From and after the Maturity Date, the unpaid principal balance and all accrued interest shall continue to bear interest at the Default Rate until and including the date on which the entire principal balance is paid in full.

(c)     Borrower acknowledges that (i) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (ii) during the time that any monthly installment under this Note is delinquent for thirty (30) days or more, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (iii) it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent for thirty (30) days or more or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan. During any period that the Default Rate is in effect the additional interest accruing over and above the rate provided for in Section 1(a) shall be immediately due and payable in addition to the regularly scheduled interest or principal and interest payments.

9.      **Full Recourse Personal Liability.**  Borrower shall have full recourse personal liability under this Note, the Mortgage and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under this Note, the Mortgage and all other Loan Documents.

10.     **Voluntary and Involuntary Prepayments.**

(a)     Any receipt by Lender of principal due under this Note prior to the Maturity Date, other than principal required to be paid in monthly installments pursuant to Section 3, constitutes a prepayment of principal under this Note. Without limiting the foregoing, any application by Lender, prior to the Maturity Date, of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note constitutes a prepayment under this Note.

(b)     Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Payment Due Date so long as Borrower designates the date for such prepayment in a notice from Borrower to Lender given at least thirty (30) days prior to the date of such prepayment. If a Payment Due Date (as defined in Section 1(a)) falls on a day which is not a Business Day, then with respect to payments made under this Section 10 only, the term "Payment Due Date" shall mean the Business Day immediately preceding the scheduled Payment Due Date.

(c)     Notwithstanding Section 10(b), Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Business Day other than a Payment Due Date if Borrower provides Lender with the notice set forth in Section 10(b) and meets the other requirements set forth in this Section 10(c). Borrower acknowledges that Lender has agreed that Borrower may prepay principal on a Business Day other than a Payment Due Date only because Lender shall deem any prepayment received by Lender on any day other than a Payment Due Date to have been received on the Payment Due Date immediately following such prepayment and Borrower shall be responsible for all interest that would have been due if the prepayment had actually been made on the Payment Due Date immediately following such prepayment.

(d)     Borrower may voluntarily prepay less than all of the unpaid principal balance of this Note (a "Partial Prepayment") at any time. Upon delivery of the Partial Prepayment, a prepayment premium calculated pursuant to Section 10(e), based on the amount being prepaid, shall be due and payable to Lender upon demand. In order to voluntarily prepay all or any part of the principal of this Note, Borrower must also pay to Lender, together with the amount of principal being prepaid, (i) all accrued and unpaid interest due under this Note, plus (ii) all other sums due to Lender at the time of such prepayment, plus (iii) any prepayment premium calculated pursuant to Section 10(e), to the extent such prepayment premium does not exceed the Maximum Interest Rate.

(e)     Except as provided in Section 10(f), a prepayment premium shall be due and payable by Borrower in connection with any prepayment of principal under this Note during the Prepayment Premium Period. The prepayment premium shall be in an amount equal to the interest that would have accrued on the principal amount being prepaid (but for such prepayment) from and after the date of such prepayment through the balance of the Prepayment Premium Period.

(f)     Notwithstanding any other provision of this Section 10, no prepayment premium shall be payable with respect to (i) any prepayment made after the expiration of the Prepayment Premium Period or (ii) any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Mortgage.

(g)     Unless Lender agrees otherwise in writing, a permitted or required prepayment of less than the unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments.

(h)     Borrower recognizes that any prepayment of any of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from an Event of Default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth in this Note represents a reasonable estimate of the damages Lender will incur because of a prepayment. Borrower further acknowledges that any prepayment premium provisions of this Note are a material part of the consideration for the Loan, and that the terms of this Note are in other respects more favorable to Borrower as a result of Borrower's voluntary agreement to the prepayment premium provisions.

11.     **Costs and Expenses.** To the fullest extent allowed by applicable law, Borrower shall pay: (a) all expenses and costs, including Attorneys' Fees and Costs incurred by Lender or any Loan Servicer as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents (whether or not any lawsuit or other proceeding is instituted), including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding; and (b) all expenses and costs, including Attorneys' Fees and Costs, incurred by Lender or any Loan Servicer in connection with the servicing of the Loan, including without limitation responding to requests from Borrower, and expenses and costs incurred in connection with potential defaults or other legal questions regarding the Loan.

12.     **Forbearance.** Any forbearance by Lender in exercising any right or remedy under this Note, the Mortgage, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of that or any other right or remedy. The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment. Enforcement by Lender of any security for Borrower's obligations under this Note shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right or remedy available to Lender.

13.     **Waivers.** Borrower and all endorsers and guarantors of this Note and all other third party obligors waive presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting the indebtedness.

14.     **Loan Charges.** Borrower and Lender intend at all times to comply with the law of the State of Texas governing the Maximum Interest Rate or the maximum amount of interest payable on or in connection with this Note and the indebtedness (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount payable under this Note or under any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Indebtedness, or as a result of acceleration of the maturity of this Note, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by any applicable law, then Borrower and Lender expressly intend that all excess amounts collected by Lender shall be applied to reduce the unpaid principal balance of this Note (or, if this Note has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of this Note, the Mortgage and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under this Note or any other Loan Document reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under this Note or any other Loan Document. The right to accelerate the Maturity Date of this Note does not include the right to accelerate any interest, which has not otherwise accrued on the date of such acceleration, and Lender does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness shall, to the extent permitted by any applicable law, be amortized, prorated, allocated and spread throughout the full term of the Indebtedness until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the applicable usury ceiling. Notwithstanding any provision contained in this Note, the Mortgage or any other Loan

Document that permits the compounding of interest, including any provision by which any accrued interest is added to the principal amount of this Note, the total amount of interest that Borrower is obligated to pay and Lender is entitled to receive with respect to the Indebtedness shall not exceed the amount calculated on a simple (i.e., non-compounded) interest basis at the maximum rate on principal amounts actually advanced to or for the account of Borrower, including all current and prior advances and any advances made pursuant to the Mortgage or other Loan Documents (such as for the payment of taxes, insurance premiums and similar expenses or costs).

15.　Purpose of Indebtedness. Borrower represents and warrants to Lender that the proceeds of this Note will be used solely for business, commercial investment, or similar purposes, and that no portion of it will be used for agricultural, personal, family, or household purposes.

16.　Counting of Days. Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days, not Business Days.

17.　Governing Law. This Note shall be governed by the laws of the Property Jurisdiction.

18.　Construction. The captions and headings of the Sections of this Note are for convenience only and shall be disregarded in construing this Note. Any reference in this Note to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Note or to a Section of this Note. All Exhibits attached to or referred to in this Note are incorporated by reference in this Note. Any reference in this Note to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Note includes the plural and use of the plural includes the singular. As used in this Note; the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." The use of one gender includes the other gender, as the context may require. Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document in this Note shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Note or any other Loan Document), and (b) any reference in this Note to any Person shall be construed to include such Person's successors and assigns.

19.　Notices; Written Modifications.

(a)　All notices, demands and other communications required or permitted to be given pursuant to this Note shall be given in accordance with Section 31 of the Mortgage.

(b)　Any modification or amendment to this Note shall be ineffective unless in writing signed by the party sought to be charged with such modification or amendment.

20.　Consent to Jurisdiction and Venue. Borrower agrees that any controversy arising under or in relation to this Note may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have non-exclusive jurisdiction over all controversies that shall arise under or in relation to this Note. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue or defense to venue to which it might be entitled by virtue of domicile, habitual residence, inconvenient forum or otherwise. However, nothing in this Note is intended to limit any right that Lender may have to bring any suit, action or proceeding relating to matters arising under this Note in any court of any other jurisdiction.

21.　Counterparts. This Note may be executed in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but one Note.

[The balance of this page is intentionally left blank.]

22. **Document Imaging.** Lender shall be entitled, in its sole discretion, to image or make copies of all or any selection of the agreements, instruments, documents, items and records governing, arising from or relating to any of Borrower's loans, including, without limitation, this Note and the other Loan Documents, and Lender may destroy or archive the paper originals. Borrower waives (i) any right to insist or require that Lender produce paper originals, (ii) agrees that such images shall be accorded the same force and effect as the paper originals, (iii) agrees that Lender is entitled to use such images in lieu of destroyed or archived originals for any purpose, including as admissible evidence in any demand, presentment or other proceedings, and (iv) further agrees that any executed facsimile (faxed), scanned, or other imaged copy of this Note or any other Loan Document shall be deemed to be of the same force and effect as the original manually executed document.

23. **WAIVER OF TRIAL BY JURY.** BORROWER AND LENDER EACH (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

IN WITNESS WHEREOF, and in consideration of Lender's agreement to lend Borrower the principal amount set forth above, Borrower has signed and delivered this Note under seal (where applicable) or has caused this Note to be signed and delivered by its duly authorized representative under seal (where applicable). Where applicable law so provides or allows, Borrower intends that this Note shall be deemed to be signed and delivered as a sealed instrument.

BORROWER:

MANSFIELD BOAT AND RV STORAGE L.L.C.,
a Texas limited liability company

By: _____
LARRY J. REYNOLDS, Member

(SEAL)

# Exhibit B

D217277234  12/1/2017 10:18 AM    PGS 31    Fee: $136.00    Submitter:  CSC ERECORDING SOLUTIONS

Electronically Recorded by Tarrant County Clerk in Official Public Records    *Mary Louise Garcia*  Mary Louise Garcia

*PREPARED BY, AND AFTER RECORDING
RETURN TO:*

PENDER CAPITAL
11766 Wilshire Blvd
Suite 460
Los Angeles, CA 90025
Attn: Cory Johnson

Tax Parcel Number(s):  07818130, 06498302, 06556590,
06676820, 07715293

*A 71 C
190151170U638*

Space Above for Recorder's Use

## DEED OF TRUST,
## ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

### (TEXAS)

A.        THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "Instrument") is dated as of November 22, 2017, and is given by MANSFIELD BOAT AND RV STORAGE L.L.C., a Texas limited liability company, whose address is 605 Rutgers Drive, Lancaster, TX 75134, as trustor ("Borrower"), to PAUL KELLOGG, ESQ., as trustee ("Trustee"), for the benefit of PENDER CAPITAL ASSET BASED LENDING FUND I, LP, a Delaware limited partnership, whose address is 11766 Wilshire Blvd, Suite 460, Los Angeles, CA 90025, Attn: Cory Johnson, as beneficiary ("Lender").  Borrower's organizational identification number is 0802222697.

B.        Borrower in consideration of the Indebtedness and the trust created by this Instrument, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the Mortgaged Property, including the Land located in Tarrant County, State of Texas and described in Exhibit "A" attached to this Instrument, to have and to hold the Mortgaged Property unto Trustee, Trustee's successor in trust and Trustee's assigns forever.

C.        TO SECURE TO LENDER the repayment of the Indebtedness evidenced by Borrower's Promissory Note payable to Lender, dated as of the date of this Instrument, and maturing on the earlier of (i) December 1, 2018, and (ii) the date on which the unpaid principal balance of the Note becomes due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document (the "Maturity Date"), in the principal amount of SIX MILLION SEVEN HUNDRED THOUSAND AND 00/100 DOLLARS (US $6,700,000.00), and all renewals, extensions and modifications of the Indebtedness, and the performance of the covenants and agreements of Borrower contained in the Loan Documents.  The Maturity Date of the Note is subject to extension up to December 1, 2019, upon the terms and conditions set forth in the Note.

D.        Borrower warrants and represents that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to grant, convey and assign the Mortgaged Property, and that the Mortgaged Property is

Texas Deed of Trust



TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS:
MARY LOUISE GARCIA, COUNTY CLERK

unencumbered, except as shown on the Schedule of Title Exceptions.  Borrower covenants that Borrower will warrant and defend generally the title to the Mortgaged Property against all claims and demands, subject to any easements and restrictions listed in the Schedule of Title Exceptions.

**Covenants.**  In consideration of the mutual promises set forth in this Instrument, Borrower and Lender covenant and agree as follows:

1.  DEFINITIONS.  The following terms, when used in this Instrument (including when used in the above recitals), shall have the following meanings:

(a)    "**Assignment**" means, collectively, the provisions of Sections 3 and 4 of this Instrument relating to the assignment of rents and leases affecting the Mortgaged Property.

(b)    "**Attorneys' Fees and Costs**" means (i) fees and out-of-pocket costs of Lender's and Loan Servicer's attorneys, as applicable (whether or not any lawsuit or other proceeding is instituted), including costs of Lender's and Loan Servicer's allocable costs of in-house counsel, support staff costs, costs of preparing for litigation, computerized research, telephone and facsimile transmission expenses, mileage, deposition costs, postage, duplicating, process service, videotaping and similar costs and expenses; (ii) costs and fees of expert witnesses, including appraisers; and (iii) investigatory fees.  As used in this Instrument and in the Note, "Attorneys' Fees and Costs" shall include those awarded by an appellate court.

(c)    "**Bankruptcy Code**" means the United States Bankruptcy Code, 11 U.S.C. Section 101 et seq., as amended from time to time.

(d)    "**Borrower**" means all Persons identified as "Borrower" in paragraph A of this Instrument, together with their successors and assigns.

(e)    "**Borrower Certificate**" means that certain Borrower Certificate dated the same date as this Instrument, executed by Borrower in favor of Lender.

(f)    "**Collateral Agreement**" means any separate agreement between Borrower and Lender for the purpose of establishing replacement reserves for the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account.

(g)    "**Controlling Entity**" means an entity which owns, directly or indirectly through one or more intermediaries, (A) a general partnership interest or a Controlling interest of the limited partnership interests in Borrower (if Borrower is a partnership or joint venture), (B) a manager's interest in Borrower or a Controlling interest of the ownership or membership interests in Borrower (if Borrower is a limited liability company), or (C) a Controlling interest of any class of voting stock of Borrower (if Borrower is a corporation).

(h)    "**Controlling Interest**" means (i) 51 percent or more of the ownership interests in an entity, or (ii) a percentage ownership interest in an entity of less than 51 percent, if the owner(s) of that interest actually direct(s) the business and affairs of the entity without the requirement of consent of any other party.

(i)    "**Environmental Indemnity**" means that certain Environmental Indemnity Agreement dated the same date as this Instrument, executed by Borrower, as Indemnitor, in favor of Lender, as Indemnitee.

(j)    "**Environmental Permit**" means any permit, license, or other authorization issued under any Hazardous Materials Law with respect to any activities or businesses conducted on or in relation to the Mortgaged Property.

(k)    "**Event of Default**" means the occurrence of any event listed in Section 22.

(l)    "**Fixtures**" means all property owned by Borrower which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

Texas Deed of Trust                                                                                                      Page 2



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

(m)     "**Governmental Authority**" means any board, commission, department or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property or over Borrower.

(n)     "**Guarantor**" means each guarantor identified in that certain Guaranty dated the same date as this Instrument, as well as any other or future guarantor of all or any portion of the Indebtedness.

(o)     "**Guaranty**" means that certain Guaranty dated the same date as this Instrument, and each and every other guaranty executed by any Guarantor in favor of Lender.

(p)     "**Hazardous Materials**" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead-based paint; asbestos or asbestos-containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Mortgaged Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" within the meaning of any Hazardous Materials Law.

(q)     "**Hazardous Materials Laws**" means all federal, state, and local laws, ordinances and regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future and including all amendments, that relate to Hazardous Materials or the protection of human health or the environment and apply to Borrower or to the Mortgaged Property. Hazardous Materials Laws include, but are not limited to, the Federal Water Pollution Control Act, 33 U.S.C. Section 1251 *et seq.*, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, *et seq.*, as amended by the Superfund Amendments Reauthorization Act of 1986, the Materials Transportation Act, 49 U.S.C. Section 1801 *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, *et seq.*, the Toxic Substance Control Act, 15 U.S.C. Section 2601, *et seq.*, the Clean Water Act, 33 U.S.C. Section 1251, *et seq.*, the Emergency Planning and Community Right-to-Know Act of 1986, as amended, the Solid Waste Disposal Act, as amended, the Clean Air Act, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101, and their state analogs.

(r)     "**Impositions**" and "**Imposition Deposits**" are defined in Section 7(a).

(s)     "**Improvements**" means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions.

(t)     "**Indebtedness**" means the principal of, interest on, and all other amounts due at any time under, the Note, this Instrument or any other Loan Document, including prepayment premiums, late charges, default interest, and advances to protect the security of this Instrument under Section 12 of this Instrument or any other applicable provision of this Instrument or any other Loan Document or as permitted by law.

(u)     "**Initial Owners**" means, with respect to Borrower or any other entity, the Person(s) that (i) on the date of the Note, or (ii) on the date of a Transfer to which Lender has consented, own in the aggregate 100% of the ownership interests in Borrower or that entity.

(v)     "**Land**" means the land described in Exhibit "A".

(w)     "**Leases**" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals.

(x)     "**Lender**" means the Person or Persons identified as "Lender" in paragraph A of this Instrument, or any subsequent holder of the Note.

(y)     "**Loan**" means the loan evidenced by the Note and secured by this Instrument.

(z)     "**Loan Documents**" means the Note, this Instrument, the Assignment, the Borrower Certificate, the Environmental Indemnity, all guaranties, all indemnity agreements, all Collateral Agreements, O&M Plans, and any other documents now or in the future executed by Borrower, any Guarantor or any other Person in connection with the Loan, as such documents may be amended from time to time.

(aa)    "**Loan Servicer**" means the Person or Persons that from time to time is designated by Lender to collect payments and deposits and receive notices under the Note, this Instrument and any other Loan Document, and otherwise to service the Loan for the benefit of Lender. Unless otherwise specified in Section 2 of the Note, or unless Borrower receives notice to the contrary, the Loan Servicer means the Person or Persons identified as "Lender" in paragraph A of this Instrument.

Texas Deed of Trust                                                                                                          Page 3

TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS:
MARY LOUISE GARCIA, COUNTY CLERK

(bb)    "**Mortgaged Property**" means all of Borrower's present and future right, title and interest in and to all of the following: (1) the Land; (2) the Improvements; (3) the Fixtures; (4) the Personalty; (5) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated; (6) all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirement; (7) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof; (8) all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations; (9) all proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; (10) all Rents and Leases; (11) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the Loan; (12) all funds on deposit pursuant to any separate agreement between Borrower and Lender (including, without limitation, all Imposition Deposits) for the purpose of establishing replacement reserves for the Mortgaged Property, to fund any water and sewer charges, premiums for fire or other hazard insurance, rent loss insurance or other insurance required by Lender, taxes, assessments, vault rentals, or other charges or expenses required by Lender to protect the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account; (13) all refunds or rebates of Impositions by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Instrument is dated); (14) all tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits; and (15) all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

(cc)    "**Mortgaged Property UCC Collateral**" means any of the Mortgaged Property which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code, whether such Mortgaged Property is owned now or acquired in the future, and all products and cash and non-cash proceeds thereof.

(dd)    "**Note**" means the Promissory Note described in paragraph C of this Instrument, including all schedules, riders, allonges and addenda, as such Promissory Note may be amended from time to time.

(ee)    "**O&M Plan**" shall have the meaning as defined in the Environmental Indemnity.

(ff)    "**Person**" means any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

(gg)    "**Personalty**" means all: (i) accounts (including deposit accounts); (ii) equipment and inventory owned by Borrower which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements, including furniture, furnishings, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software); (iii) other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements; (iv) any operating agreements relating to the Land or the Improvements; (v) any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements; (vi) all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land or the Improvements and including subsidy or similar payments received from any sources, including a Governmental Authority; and (vii) any rights of Borrower in or under letters of credit.

(hh)    "**Property Insurance**" is defined in Section 19.

Texas Deed of Trust

Page 4



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

(ii)    "**Property Jurisdiction**" is defined in Section 30(a).

(jj)    "**Rents**" means all rents, revenues and other income of the Land or the Improvements, including parking fees, laundry and vending machine income and fees and charges for other services provided at the Mortgaged Property, whether now due, past due, or to become due, and deposits forfeited by tenants.

(kk)    "**Schedule of Title Exceptions**" means title exceptions approved by Lender and shown in the schedule of exceptions to coverage in the title policy issued to Lender contemporaneously with the recordation of this instrument and insuring Lender's interest in the Mortgaged Property.

(ll)    "**Taxes**" means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a lien, on the Land or the Improvements.

(mm)    "**Texas Rents Act**" shall mean the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code, as amended.

(nn)    "**Transfer**" is defined in Section 21.

**2.    UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.**

(a)    This Instrument is also a security agreement under the Uniform Commercial Code for the Mortgaged Property UCC Collateral, and Borrower, as debtor, hereby grants to Lender, as secured party, a security interest in the Mortgaged Property UCC Collateral. Borrower hereby authorizes Lender to prepare and file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest and Borrower agrees, if Lender so requests, to execute and deliver to Lender such financing statements, continuation statements and amendments. Without limiting the generality of the foregoing, Borrower authorizes Lender to file any financing statement that describes the collateral as "all assets" of Borrower, or words to similar effect. Borrower shall pay all filing costs and all costs and expenses of any record searches for financing statements and/or amendments that Lender may require. Without the prior written consent of Lender, Borrower shall not create or permit to exist any other lien or security interest in any of the Mortgaged Property UCC Collateral. Unless Borrower gives notice to Lender within 30 days after the occurrence of any of the following, and executes and delivers to Lender modifications or supplements of this Instrument (and any financing statement which may be filed in connection with this Instrument) as Lender may require, Borrower shall not (i) change its name, identity, structure or jurisdiction of organization; (ii) change the location of its place of business (or chief executive office if more than one place of business); or (iii) add to or change any location at which any of the Mortgaged Property UCC Collateral is stored, held or located. If an Event of Default has occurred and is continuing, Lender shall have the remedies of a secured party under the Uniform Commercial Code, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the Mortgaged Property UCC Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies. This Instrument constitutes a financing statement with respect to any part of the Mortgaged Property that is or may become a Fixture, if permitted by applicable law.

**3.    ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**

(a)    As part of the consideration for the Indebtedness, Borrower collaterally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish an assignment to Lender of all Rents in order to provide additional security for the current and future payment and performance by Borrower of all Indebtedness secured hereby and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an assignment for additional security only. For purposes of giving effect to this collateral assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1. However, if this assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this instrument create and perfect a lien on Rents in favor of Lender, which lien shall be effective as of the date of this Instrument.

(b)    After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. However, until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and

Texas Deed of Trust                                                                      Page 5



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Instrument. From and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall, upon notice to Borrower in the manner prescribed by the Texas Rents Act, be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Borrower shall pay to Lender upon demand all Rents to which Lender is entitled. At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender, no tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant in the manner prescribed by the Texas Rents Act. Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents.

(c) Borrower represents and warrants to Lender that Borrower has not executed any prior assignment of Rents (other than an assignment of Rents securing indebtedness that will be paid off and discharged with the proceeds of the Loan), that Borrower has not performed, and Borrower covenants and agrees that it will not perform, any acts and has not executed, and shall not execute, any instrument which would prevent Lender from exercising its rights under this Section 3, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any Rents for more than two (2) months prior to the due dates of such Rents. Borrower shall not collect or accept payment of any Rents more than two (2) months prior to the due dates of such Rents.

(d) If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of this Instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable. Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. Lender or the receiver, as the case may be, shall be entitled to receive a reasonable fee for managing the Mortgaged Property. Immediately upon appointment of a receiver or immediately upon Lender's entering upon and taking possession and control of the Mortgaged Property, Borrower shall surrender possession of the Mortgaged Property to Lender or the receiver, as the case may be, and shall deliver to Lender or the receiver, as the case may be, all documents, records (including computer files and other records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents. In the event Lender takes possession and control of the Mortgaged Property, Lender may exclude Borrower and its representatives from the Mortgaged Property. Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 3 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

(e) If Lender enters the Mortgaged Property, Lender shall be liable to account only to Borrower and only for those Rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property, by reason of any act or omission of Lender under this Section 3, and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law.

Texas Deed of Trust



Page 6

 TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS; MARY LOUISE GARCIA, COUNTY CLERK

(f)      If the Rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an additional part of the Indebtedness es provided in Section 12.

(g)      Any entering upon and taking of control of the Mortgaged Property by Lender or the receiver, as the case may be, and any application of Rents as provided in this Instrument shall not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Instrument.

(h)      This Section 3 of this Instrument is subject to the Texas Rents Act and in the event of any conflict or inconsistency between the provisions of this Instrument and the provisions of the Texas Rents Act, the provisions of the Texas Rents Act shall control. Nothing in this Instrument is intended to or shall diminish or impair Lender's rights under the Texas Rents Act.

4.      ASSIGNMENT OF LEASES; LEASES AFFECTING THE MORTGAGED PROPERTY.

(a)      As part of the consideration for the Indebtedness, Borrower collaterally assigns and transfers to Lender all of Borrower's right, title and interest in, to and under the Leases, including Borrower's right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease. It is the intention of Borrower to establish an assignment to Lender of all of Borrower's right, title and interest in, to and under the Leases in order to provide additional security for the current and future payment and performance by Borrower of all Indebtedness secured hereby. Borrower and Lender intend this assignment of the Leases to be immediately effective and to constitute an assignment for additional security only. For purposes of giving effect to this collateral assignment of the Leases, and for no other purpose, the Leases shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1. However, if this assignment of the Leases is not enforceable by its terms under the laws of the Property Jurisdiction, then the Leases shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a lien on the Leases in favor of Lender, which lien shall be effective as of the date of this Instrument.

(b)      Until Lender gives notice to Borrower of Lender's exercise of its rights under this Section 4, Borrower shall have all rights, power and authority granted to Borrower under any Lease (except as otherwise limited by this Section 4 or any other provision of this Instrument), including the right, power and authority to modify the terms of any Lease or extend any Lease. In no event, however, shall Borrower have the right to terminate any lease or to modify the terms of any lease so as to decrease the rent or shorten the term of the lease without the prior written consent of Lender. Any purported termination or modification of any lease without Lender's prior written consent in violation of the preceding sentence shall constitute an Event of Default and shall be void and of no force or effect. Upon the occurrence of an Event of Default, the permission given to Borrower pursuant to the first sentence of this Section 4(b) to exercise rights, power and authority under Leases shall automatically terminate. Borrower shall comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits.

(c)      Borrower acknowledges and agrees that the exercise by Lender, either directly or by a receiver, of any of the rights conferred under this Section 4 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and the Improvements. The acceptance by Lender of the assignment of the Leases pursuant to Section 4(a) shall not at any time or in any event obligate Lender to take any action under this Instrument or to expend any money or to incur any expenses. Lender shall not be liable in any way for any injury or damage to person or property sustained by any Person in or about the Mortgaged Property. Prior to Lender's actual entry into and taking possession of the Mortgaged Property, Lender shall not (i) be obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease); (ii) be obligated to appear in or defend any action or proceeding relating to the Lease or the Mortgaged Property; or (iii) be responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property. The execution of this Instrument by Borrower shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking of possession.

(d)      Upon delivery of notice by Lender to Borrower of Lender's exercise of Lender's rights under this Section 4 at any time after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, Lender immediately shall have all rights, powers and authority granted to Borrower under any Lease, including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

Texas Deed of Trust                                                                                                           Page 7



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

(e)     Borrower shall, promptly upon Lender's request, deliver to Lender an executed copy of each Lease then in effect.

(f)     Borrower further covenants with Lender that (i) all Leases shall be written on a standard form of lease that has been or will be approved in writing in advance by Lender; (ii) upon request, Borrower shall furnish Lender with executed copies of all Leases and all amendments thereto; (iii) no material changes may be made to the Lender-approved standard lease without the prior written consent of Lender; (iv) all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates and shall be arm's-length transactions; (v) all Leases entered into after the closing of the Loan (other than month-to-month Leases) shall provide that (A) they are subordinate to this Instrument and any other Indebtedness now or hereafter secured by the Mortgaged Property, (B) lessees agree to attorn to Lender (such attornment to be effective upon Lender's acquisition of title to the Mortgaged Property), (C) lessees agree to execute such further evidences of attornment as Lender may from time to time request, (D) the attornment of lessees shall not be terminated by foreclosure, and (E) Lender may, at Lender's option, accept or reject such attornment; and (vi) Borrower shall not grant any purchase options without the prior written approval of Lender.

(g)     Borrower shall not receive or accept Rent under any Lease for more than two (2) months in advance.

(h)     This Section 4 of this Instrument is subject to the Texas Rents Act and in the event of any conflict or inconsistency between the provisions of this Instrument and the provisions of the Texas Rents Act, the provisions of the Texas Rents Act shall control. Nothing in this Instrument is intended to or shall diminish or impair Lender's rights under the Texas Rents Act.

5.      PAYMENT OF INDEBTEDNESS; PERFORMANCE UNDER LOAN DOCUMENTS; PREPAYMENT PREMIUM.  Borrower shall pay the Indebtedness when due in accordance with the terms of the Note and the other Loan Documents and shall perform, observe and comply with all other provisions of the Note and the other Loan Documents. Borrower shall pay a prepayment premium in connection with certain prepayments of the Indebtedness, including a payment made after Lender's exercise of any right of acceleration of the Indebtedness, as provided in the Note.

6.      FULL RECOURSE PERSONAL LIABILITY.  Borrower shall have full recourse personal liability under the Note, this Instrument and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under the Note, this Instrument and all other Loan Documents.

7.      DEPOSITS FOR TAXES, INSURANCE AND OTHER CHARGES.

(a)     Unless this requirement is waived in writing by Lender, or as otherwise provided in this Section, Borrower shall deposit with Lender on the day monthly installments of principal or interest, or both, are due under the Note (or on another day designated in writing by Lender), until the Indebtedness is paid in full, an additional amount estimated by Lender to be sufficient to accumulate with Lender the entire sum required to pay, when due, the items marked "COLLECT" below, plus, at Lender's discretion, a contingency reserve of up to one-sixth of such estimate. Lender will not initially require Borrower to make Imposition Deposits with respect to any items marked "DEFERRED" or "NOT APPLICABLE" below.

| | |
|---|---|
| [COLLECT] | Property insurance premiums or other insurance premiums required by Lender under Section 19 |
| [COLLECT] | Taxes |
| [DEFERRED] | water and sewer charges (that could become a lien on the Mortgaged Property) |
| [DEFERRED] | assessments or other charges (that could become a lien on the Mortgaged Property) |

The amounts deposited under the preceding sentence are collectively referred to in this Instrument as the "Imposition Deposits". The obligations of Borrower for which the Imposition Deposits are required are collectively referred to in this Instrument as "Impositions". The amount of the Imposition Deposits shall be sufficient to enable Lender to pay each Imposition before the last date upon which such payment may be made without any penalty or interest charge being added. Lender shall maintain records indicating how much of the monthly Imposition Deposits and how much of the aggregate Imposition Deposits held by Lender are held for the purpose of paying Taxes, insurance premiums and each other Imposition.

(b)     Imposition Deposits shall be held by Lender or in a bank, credit union or other financial institution designated by Lender. Lender shall apply the Imposition Deposits to pay Impositions so long as no Event of Default has occurred and is continuing. Unless applicable law requires, Lender shall not be required to pay Borrower any interest, earnings or profits on the Imposition Deposits. As additional security for all of Borrower's obligations under this Instrument and the other Loan Documents, Borrower hereby pledges and grants to Lender a security interest in the Imposition Deposits and all proceeds of, and all interest

Texas Deed of Trust

Page 8





TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS; MARY LOUISE GARCIA, COUNTY CLERK

and dividends on, the Imposition Deposits. Any amounts deposited with Lender under this Section 7 shall not be trust funds, nor shall they operate to reduce the Indebtedness, unless applied by Lender for that purpose under Section 7(e).

(c)      If Lender receives a bill or invoice for an Imposition, Lender shall pay the Imposition from the Imposition Deposits held by Lender. Lender shall have no obligation to pay any Imposition to the extent it exceeds Imposition Deposits then held by Lender. Lender may pay an Imposition according to any bill, statement or estimate from the appropriate public office or insurance company without inquiring into the accuracy of the bill, statement or estimate or into the validity of the Imposition.

(d)      If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition exceeds the amount reasonably deemed necessary by Lender, plus at Lender's discretion, a contingency reserve of up to one-sixth of such estimate, the excess shall be credited against future Installments of Imposition Deposits. If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition is less than the amount reasonably estimated by Lender to be necessary, plus, at Lender's discretion, a contingency reserve of up to one-sixth of such estimate, Borrower shall pay to Lender the amount of the deficiency within 15 days after notice from Lender.

(e)      If an Event of Default has occurred and is continuing, Lender may apply any Imposition Deposits, in any amounts and in any order as Lender determines, in Lender's discretion, to pay any Impositions or as a credit against the Indebtedness. Upon payment in full of the Indebtedness, Lender shall refund to Borrower any Imposition Deposits held by Lender.

(f)      If Lender does not collect an Imposition Deposit with respect to an Imposition either marked "DEFERRED" in Section 7(a) or pursuant to a separate written waiver by Lender, then at least thirty (30) days before the date each such Imposition is due, or on the date this Instrument requires each such Imposition to be paid, Borrower must provide Lender with proof of payment of each such Imposition for which Lender does not require collection of Imposition Deposits. Lender may revoke its deferral or waiver and require Borrower to deposit with Lender any or all of the Imposition Deposits listed in Section 7(a), regardless of whether any such Item is marked "DEFERRED" in such section, upon notice to Borrower, (i) if Borrower does not timely pay any of the Impositions as required by this Instrument, (ii) if Borrower fails to provide timely proof to Lender of such payment as required by this Instrument, or (iii) at any time from and after the occurrence of an Event of Default or any event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

(g)      In the event of a Transfer prohibited by or requiring Lender's approval under Section 21, Lender's waiver or deferral of the collection of any Imposition Deposit in this Section 7 may be modified or rendered void by Lender at Lender's sole option and discretion by notice to Borrower and the transferee(s) as a condition of Lender's approval of such Transfer.

8.       COLLATERAL AGREEMENTS. Borrower shall deposit with Lender such amounts as may be required by any Collateral Agreement and shall perform all other obligations of Borrower under each Collateral Agreement.

9.       APPLICATION OF PAYMENTS. If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Neither Lender's acceptance of an amount which is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Borrower's obligations under this Instrument and the Note shall remain unchanged.

10.      COMPLIANCE WITH LAWS AND ORGANIZATIONAL DOCUMENTS.

(a)      Borrower shall comply with all laws, ordinances, regulations and requirements of any Governmental Authority and all recorded lawful covenants and agreements relating to or affecting the Mortgaged Property, including all laws, ordinances, regulations, requirements and covenants pertaining to health and safety, construction of improvements on the Mortgaged Property, fair housing, zoning and land use, and Leases. Borrower also shall comply with all applicable laws that pertain to the maintenance and disposition of tenant security deposits.

(b)      Borrower shall at all times maintain records sufficient to demonstrate compliance with the provisions of this Section 10.

(c)      Borrower shall take appropriate measures to prevent, and shall not engage in or knowingly permit, any illegal activities at the Mortgaged Property that could endanger tenants or visitors, result in damage to the Mortgaged Property, result in forfeiture of the Mortgaged Property, or otherwise materially impair the lien created by this Instrument or Lender's interest in the Mortgaged Property. Borrower represents and warrants to Lender that no portion of the Mortgaged Property has been or will be purchased with the proceeds of any illegal activity.

Texas Deed of Trust

Page 9

TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

(d)     Borrower shall at all times comply with all laws, regulations and requirements of any Governmental Authority relating to Borrower's formation, continued existence and good standing in the Property Jurisdiction.

(e)     If Borrower is not a natural person: (A) Borrower, and any Sub-Entity, shall maintain its existence as long as any portion of the Indebtedness remains unpaid; and (B) Borrower shall give written notice to Lender within ten (10) days after any dissolution or event triggering dissolution of Borrower or any Sub-Entity (which shall constitute an Event of Default under clause (A) of this sentence). As used in this Section 10, "Sub-Entity" shall include any managing or controlling entities, including any of the following that is not a natural person: (i) any manager or member of a limited liability company and any Sub-Entity thereof, (ii) any general partner of a general or limited partnership or limited liability partnership and any Sub-Entity thereof. To the extent not in conflict with the provisions of this Instrument and the other Loan Documents, Borrower shall at all times comply with its organizational documents, including but not limited to its partnership agreement (if Borrower is a partnership), its by-laws (if Borrower is a corporation or housing cooperative corporation or association) or its operating agreement (if Borrower is a limited liability company, joint venture or tenancy-in-common). If Borrower is not a natural person, then: (A) Borrower shall at all times comply with all laws, regulations and requirements of any Governmental Authority relating to Borrower's formation, continued existence and good standing in the state or commonwealth of Borrower's formation; (B) if the state or commonwealth of Borrower's formation is not the Property Jurisdiction, Borrower shall register or qualify as a foreign entity in the Property Jurisdiction and maintain such registration or qualification in good standing; (C) Borrower shall promptly provide Lender with copies of any amendments or supplements to Borrower's and any Sub-Entity's organizational documents; and (D) within ten (10) days after request by Lender, Borrower shall furnish evidence satisfactory to Lender that Borrower and any Sub-Entity is/are in good standing in its/their state(s) or commonwealth(s) of organization, and, if different, the Property Jurisdiction.

11.     USE OF PROPERTY.  Unless required by applicable law, Borrower shall not (a) except for any change in use approved by Lender, allow changes in the use for which all or any part of the Mortgaged Property was being used at the time this Instrument was executed, (b) convert, in whole or in part, any non-residential income producing units to non-income producing units, (c) initiate or acquiesce in a change in the zoning classification of the Mortgaged Property, or (d) establish any condominium or cooperative regime with respect to the Mortgaged Property. Borrower acknowledges that Lender has not agreed to grant any partial releases or reconveyances of any portion of the Mortgaged Property, and that the release and reconveyance of the lien of this Instrument shall only be granted by Lender upon full repayment of the Indebtedness.

12.     PROTECTION OF LENDER'S SECURITY.

(a)     If Borrower fails to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Mortgaged Property, Lender's security or Lender's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws, fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Borrower and to protect Lender's interest, including (1) payment of fees and out of pocket expenses of attorneys, accountants, inspectors and consultants, (2) entry upon the Mortgaged Property to make repairs or secure the Mortgaged Property, (3) procurement of the insurance required by Section 19, (4) payment of amounts which Borrower has failed to pay under Sections 16 and 17, and (5) advances made by Lender to pay, satisfy or discharge any obligation of Borrower for the payment of money that is secured by a pre-existing mortgage, deed of trust or other lien encumbering the Mortgaged Property (a "Prior Lien").

(b)     Any amounts disbursed by Lender under this Section 12, or under any other provision of this Instrument that treats such disbursement as being made under this Section 12, shall be added to, and become part of, the principal component of the Indebtedness, shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the "Default Rate", as defined in the Note.

(c)     Nothing in this Section 12 shall require Lender to incur any expense or take any action.

13.     INSPECTION.  Lender, its agents, representatives, and designees may make or cause to be made entries upon and inspections of the Mortgaged Property (including environmental inspections and tests) during normal business hours, or at any other reasonable time. Borrower shall within five (5) days after written request by Lender provide the name, phone number, address and email address of a contact person for Borrower or for a property management company managing the Mortgaged Property to arrange such inspection. Such contact person shall meet Lender's inspector(s) at the Mortgaged Property at the time specified by Lender and shall provide Lender's inspector(s) with access to all areas of the Mortgaged Property as Lender's inspector's may require to complete such inspection. At any time when an Event of Default has occurred and is continuing, the cost of such inspections shall be paid by Borrower upon written demand by Lender and if not paid within

Texas Deed of Trust                                                                                                                    Page 10



TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS:
MARY LOUISE GARCIA, COUNTY CLERK

thirty (30) days after such written demand, and, until paid, shall be added to and constitute a part of the Indebtedness as provided in Section 12.

14.    **BOOKS AND RECORDS; FINANCIAL REPORTING.**

(a)    Borrower shall keep and maintain at all times at the Mortgaged Property or the management agent's offices, and upon Lender's request shall make available at the Mortgaged Property, complete and accurate books of account and records (including copies of supporting bills and invoices) adequate to reflect correctly the operation of the Mortgaged Property, and copies of all written contracts, Leases and other instruments which affect the Mortgaged Property. The books, records, contracts, Leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender.

(b)    Borrower and Guarantor shall furnish to Lender all of the following:

(1)    within one hundred twenty (120) days after the end of each fiscal year of Borrower, a statement of income and expenses for Borrower's operation of the Mortgaged Property for that fiscal year, a statement of changes in financial position of Borrower relating to the Mortgaged Property for that fiscal year and, when requested by Lender, a balance sheet showing all assets and liabilities of Borrower relating to the Mortgaged Property as of the end of that fiscal year;

(2)    within one hundred twenty (120) days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, a rent schedule for the Mortgaged Property showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable for the current month, the date through which rent has been paid, and any related information requested by Lender;

(3)    within one hundred twenty (120) days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, an accounting of all security deposits held pursuant to all Leases, including the name of the institution (if any) and the names and identification numbers of the accounts (if any) in which such security deposits are held and the name of the person to contact at such financial institution, along with any authority or release necessary for Lender to access information regarding such accounts;

(4)    within one hundred twenty (120) days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, a statement that identifies all owners of any interest in Borrower and any Controlling Entity and the interest held by each, if Borrower or a Controlling Entity is a corporation, all officers and directors of Borrower and the Controlling Entity, and if Borrower or a Controlling Entity is a limited liability company, all managers who are not members;

(5)    upon Lender's request, quarterly income and expense statements for the Mortgaged Property;

(6)    upon Lender's request at any time when an Event of Default has occurred and is continuing, monthly income and expense statements for the Mortgaged Property;

(7)    within ten (10) days after Lender's request, a current monthly property management report for the Mortgaged Property, showing the number of inquiries made and rental applications received from tenants or prospective tenants and deposits received from tenants and any other information requested by Lender;

(8)    within ten (10) days after Lender's request, a balance sheet, a statement of income and expenses for Borrower and each Guarantor and a statement of changes in financial position of Borrower and each Guarantor for Borrower's or such Guarantor's most recent fiscal year; and

(9)    within thirty (30) days after filing, copies of all federal and state income tax returns filed by Borrower and any Guarantor (or, if Borrower or any Guarantor is a "disregarded entity" for federal tax purposes, the federal and state returns filed by the owner of Borrower or such Guarantor).

(c)    Each of the statements, schedules, documents, items and reports required by Section 14(b) shall be certified to be complete and accurate by each individual Borrower, an individual (or individuals) having authority to bind each entity Borrower and (for guarantor information and documents) each Guarantor, and shall be in such form and contain such detail as Lender may reasonably require. Lender may, at Lender's discretion, require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender.

(d)    In the event Borrower or any Guarantor fails to deliver such statements, schedules, documents, items and reports within the time frames provided in Section 14(b) above, then such failure shall constitute an Event of Default and, in addition to any other remedies which may be available to Lender as a result of such Event of Default, Borrower shall pay a late

Texas Deed of Trust

TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS. MARY LOUISE GARCIA, COUNTY CLERK

charge equal to two percent (2%) of the monthly payment amount for each late submission of financial reports to compensate Lender or its servicer for the additional administrative expense caused by such failure or delay whether or not Borrower is entitled to any notice and opportunity to cure such failure prior to the exercise of any of the remedies. Such late charge shall be charged each month that any financial statements remain delinquent. The late charge shall be immediately payable from Borrower upon demand by Lender and, until paid, shall be added to and constitute a part of the indebtedness as provided in Section 12. In no event shall the financial statement late charge constitute a cure of Borrower's or any Guarantor's default in failing to provide financial statements, nor limit Lender's remedies as a result of such default. In addition to such financial statement late charge and any other remedies which may be available to Lender as a result of such Event of Default, Lender shall have the right: (1) to increase the interest rate under the Note to the Default Rate provided for in the Note as long as such financial statements remain delinquent, and (2) to have Borrower's or any Guarantor's books and records audited, at Borrower's expense, by independent certified public accountants selected by Lender in order to obtain such statements, schedules and reports, and all related costs and expenses of Lender shall become immediately due and payable and shall become an additional part of the indebtedness as provided in Section 12.

(e) If an Event of Default has occurred and is continuing, Borrower shall deliver to Lender upon written demand all books and records relating to the Mortgaged Property or its operation.

(f) Borrower authorizes Lender to obtain a credit report on Borrower at any time.

15. **TAXES; OPERATING EXPENSES.**

(a) Subject to the provisions of Section 15(c) and Section 15(d), Borrower shall pay, or cause to be paid, all Taxes when due and before the addition of any interest, fine, penalty or cost for nonpayment.

(b) Subject to the provisions of Section 15(c), Borrower shall pay the expenses of operating, managing, maintaining and repairing the Mortgaged Property (including insurance premiums, utilities, repairs and replacements) before the last date upon which each such payment may be made without any penalty or interest charge being added.

(c) As long as no Event of Default exists and Borrower has timely delivered to Lender any bills or premium notices that it has received, Borrower shall not be obligated to pay Taxes, insurance premiums or any other individual Imposition to the extent that sufficient Imposition Deposits are held by Lender for the purpose of paying that specific Imposition. If an Event of Default exists, Lender may exercise any rights Lender may have with respect to Imposition Deposits without regard to whether Impositions are then due and payable. Lender shall have no liability to Borrower for failing to pay any Impositions to the extent that any Event of Default has occurred and is continuing, insufficient Imposition Deposits are held by Lender at the time an Imposition becomes due and payable or Borrower has failed to provide Lender with bills and premium notices as provided above.

(d) Borrower, at its own expense, may contest by appropriate legal proceedings, conducted diligently and in good faith, the amount or validity of any Imposition other than insurance premiums, if (1) Borrower notifies Lender of the commencement or expected commencement of such proceedings, (2) the Mortgaged Property is not in danger of being sold or forfeited, (3) Borrower deposits with Lender reserves sufficient to pay the contested Imposition, if requested by Lender, and (4) Borrower furnishes whatever additional security is required in the proceedings or is reasonably requested by Lender, which may include the delivery to Lender of the reserves established by Borrower to pay the contested Imposition.

(e) Borrower shall promptly deliver to Lender a copy of all notices of, and invoices for, Impositions, and if Borrower pays any Imposition directly, Borrower shall promptly furnish to Lender receipts evidencing such payments in accordance with Section 7(f).

16. **LIENS; ENCUMBRANCES.** Borrower acknowledges that the grant, creation or existence of any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance (a "Lien") on the Mortgaged Property (other than the lien of this Instrument and the liens and encumbrances reflected on the Schedule of Title Exceptions) or on certain ownership interests in Borrower, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the lien of this Instrument, is a "Transfer" which constitutes an Event of Default under Section 21 of this Instrument.

17. **PRESERVATION, MANAGEMENT AND MAINTENANCE OF MORTGAGED PROPERTY.** Borrower (a) shall not commit waste or permit impairment or deterioration of the Mortgaged Property, (b) shall not abandon the Mortgaged Property, (c) shall restore or repair promptly, in a good and workmanlike manner, any damaged part of the Mortgaged Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, whether or not insurance proceeds or condemnation awards are available to cover any costs of such restoration or repair, (d) shall keep the Mortgaged Property in good repair, including the replacement of Personalty and Fixtures with items of equal or better function and quality, (e) shall provide for professional management of the Mortgaged Property by a property manager satisfactory to Lender under a contract approved by Lender in writing, and (f) shall give notice to Lender of and, unless otherwise directed in writing by Lender,

Texas Deed of Trust

Page 12



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS MARY LOUISE GARCIA, COUNTY CLERK

shall appear in and defend any action or proceeding purporting to affect the Mortgaged Property, Lender's security or Lender's rights under this Instrument. Borrower shall not (and shall not permit any tenant or other Person to) remove, demolish or alter the Mortgaged Property or any part of the Mortgaged Property except in connection with the replacement of tangible Personalty.

18.  ENVIRONMENTAL HAZARDS. Borrower shall comply with all covenants, conditions, provisions and obligations of Borrower (as Indemnitor) under the Environmental Indemnity.

19.  PROPERTY AND LIABILITY INSURANCE.

(a)  Borrower shall keep the Improvements insured at all times against such hazards as Lender may from time to time require, which insurance shall include but not be limited to coverage against loss by fire, windstorm and allied perils, general boiler and machinery coverage, and business income coverage. Lender's insurance requirements may change from time to time throughout the term of the Indebtedness. If Lender so requires, such insurance shall also include sinkhole insurance, mine subsidence insurance, earthquake insurance, and, if the Mortgaged Property does not conform to applicable zoning or land use laws, building ordinance or law coverage. In the event any updated reports or other documentation are reasonably required by Lender in order to determine whether such additional insurance is necessary or prudent, Borrower shall pay for all such documentation at its sole cost and expense. If any of the Improvements is located in an area that is either (i) identified by the Federal Emergency Management Agency (or any successor to that agency) ("FEMA") as an area having special flood hazards or (ii) designated by FEMA as Zone D, and if flood insurance is available in that area, Borrower shall insure such Improvements against loss by flood. If Lender so requires, such insurance shall also include business income/rental value insurance for all relevant perils to be covered in the amount required by Lender, but in no case less than the effective gross income attributable to the Mortgaged Property for the preceding 12 months, as determined by Lender in Lender's discretion. All insurance required pursuant to this Section 19(a) shall be referred to as "Property Insurance". All policies of Property Insurance must include a non-contributing, non-reporting mortgagee clause in favor of, and in a form approved by, Lender, and shall provide that the insurer will notify Lender in writing of cancelation of policies at least 10 days before the cancelation of the policy by the insurer for nonpayment of the premium or nonrenewal and at least 30 days before cancelation by the insurer for any other reason.

(b)  All premiums on insurance policies required under this Section 19 shall be paid in the manner provided in Section 7, unless Lender has designated in writing another method of payment. All such policies shall also be in a form approved by Lender. Borrower shall deliver to Lender a legible copy of each insurance policy (or duplicate original) and Borrower shall promptly deliver to Lender a copy of all renewal and other notices received by Borrower with respect to the policies and all receipts for paid premiums. At least 30 days prior to the expiration date of a policy, Borrower shall deliver to Lender a legible copy of each renewal policy (or a duplicate original) in a form satisfactory to Lender.

(c)  Borrower shall maintain at all times commercial general liability insurance, workers' compensation insurance and such other liability, errors and omissions and fidelity insurance coverages as Lender may from time to time require. All policies for general liability insurance must contain a standard additional insured provision, in favor of, and in a form approved by, Lender.

(d)  All insurance policies and renewals of insurance policies required by this Section 19 shall be in such amounts and for such periods as Lender may from time to time require, shall be in such form and contain such endorsements as Lender may from time to time require, and shall be issued by insurance companies satisfactory to Lender.

(e)  Borrower shall comply with all insurance requirements and shall not permit any condition to exist on the Mortgaged Property that would invalidate any part of any insurance coverage that this Instrument requires Borrower to maintain.

(f)  In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and appoints Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claims under policies of property damage insurance, to appear in and prosecute any action arising from such property damage insurance policies, to collect and receive the proceeds of property damage insurance, and to deduct from such proceeds Lender's expenses incurred in the collection of such proceeds. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this Section 19 shall require Lender to incur any expense or take any action. Lender may, at Lender's option, (1) hold the balance of such proceeds to be used to reimburse Borrower for the cost of restoring and repairing the Mortgaged Property to the equivalent of its original condition or to a condition approved by Lender (the "Restoration"), or (2) apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due. To the extent Lender determines to apply insurance proceeds to Restoration, Lender shall do so in accordance with Lender's then-current policies relating to the restoration of casualty damage on similar properties.

(g)  Lender shall not exercise its option to apply insurance proceeds to the payment of the Indebtedness if all of the following conditions are met: (1) no Event of Default (or any event which, with the giving of notice or the passage of time, or

Texas Deed of Trust                                                                                                    Page 13



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS; MARY LOUISE GARCIA, COUNTY CLERK

both, would constitute an Event of Default) has occurred and is continuing; (2) Lender determines, in its discretion, that Borrower has sufficient funds to complete the Restoration; (3) Lender determines, in its discretion, that the rental income from the Mortgaged Property after completion of the Restoration will be sufficient to meet all operating costs and other expenses, Imposition Deposits, deposits to reserves and loan repayment obligations relating to the Mortgaged Property; and (4) Lender determines, in its discretion, that the Restoration will be completed before the earlier of (A) one year before the maturity date of the Note or (B) one year after the date of the loss or casualty.

    (h)    If the Mortgaged Property is sold at a foreclosure sale or Lender acquires title to the Mortgaged Property, Lender shall automatically succeed to all rights of Borrower in and to any insurance policies and unearned insurance premiums and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such sale or acquisition.

    **20.**    **CONDEMNATION.**

    (a)    Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect (a "**Condemnation**"). Borrower shall appear in and prosecute or defend any action or proceeding relating to any Condemnation unless otherwise directed by Lender in writing. Borrower authorizes and appoints Lender as attorney in fact for Borrower to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any Condemnation and to settle or compromise any claim in connection with any Condemnation. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this Section 20 shall require Lender to incur any expense or take any action. Borrower hereby transfers and assigns to Lender all right, title and interest of Borrower in and to any award or payment with respect to (i) any Condemnation, or any conveyance in lieu of Condemnation, and (ii) any damage to the Mortgaged Property caused by governmental action that does not result in a Condemnation.

    (b)    Lender may apply such awards or proceeds, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to the restoration or repair of the Mortgaged Property or to the payment of the Indebtedness, with the balance, if any, to Borrower. Unless Lender otherwise agrees in writing, any application of any awards or proceeds to the Indebtedness shall not extend or postpone the due date of any monthly installments referred to in the Note, Section 7 of this Instrument or any Collateral Agreement, or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards or proceeds as Lender may require.

    **21.**    **TRANSFERS OF THE MORTGAGED PROPERTY OR INTERESTS IN BORROWER [NO RIGHT TO TRANSFER].**

    (a)    "Transfer" means (A) a sale, assignment, transfer or other disposition (whether voluntary, involuntary or by operation of law); (B) the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law); (C) the issuance or other creation of an ownership interest in a legal entity, including a partnership interest, interest in a limited liability company or corporate stock; (D) the withdrawal, retirement, removal or involuntary resignation of a partner in a partnership or a member or manager in a limited liability company; or (E) the merger, dissolution, liquidation, or consolidation of a legal entity or the reconstitution of one type of legal entity into another type of legal entity. For purposes of defining the term "Transfer," the term "partnership" shall mean a general partnership, a limited partnership, a joint venture and a limited liability partnership, and the term "partner" shall mean a general partner, a limited partner and a joint venturer.

    (b)    "Transfer" does not include: (i) a conveyance of the Mortgaged Property at a judicial or non-judicial foreclosure sale under this Instrument, (ii) the Mortgaged Property becoming part of a bankruptcy estate by operation of law under the Bankruptcy Code, or (iii) a lien against the Mortgaged Property for local taxes and/or assessments not then due and payable.

    (c)    The occurrence of any of the following events shall not constitute an Event of Default under this Instrument, notwithstanding any provision of this Section 21 to the contrary:

        (i)    a Transfer to which Lender has consented;

        (ii)    a Transfer that occurs by devise, descent, or by operation of law upon the death of a natural person (unless such death itself is an Event of Default under Section 22(o) of this Instrument);

        (iii)    the grant of a leasehold interest in accordance with the terms of this Instrument or otherwise approved in writing by Lender;

        (iv)    a Transfer of obsolete or worn out Personalty or Fixtures that are contemporaneously replaced by items of equal or better function and quality, which are free of liens, encumbrances and security interests other than those created by the Loan Documents or consented to by Lender; and

Texas Deed of Trust



Page 14



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

(v)    the creation of a mechanic's, materialman's, or judgment lien against the Mortgaged Property which is released of record or otherwise remedied to Lender's satisfaction within 60 days of the date of creation.

(d)    The occurrence of any of the following Transfers shall not constitute an Event of Default under this Instrument, provided that Borrower has notified Lender in writing within 30 days following the occurrence of any of the following, and such Transfer does not constitute an Event of Default under any other Section of this Instrument:

(i)    a change of Borrower's name, provided that UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender;

(ii)    a change of the form of Borrower not involving a transfer of Borrower's assets and not resulting in any change in liability of any Initial Owner, provided that: (A) UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender, (B) Lender has been provided, in advance, for Lender's review and approval, all proposed filings, amendments and other documents pertaining to such change in form, and (C) Borrower shall pay for attorneys' fees, and other out of pocket costs of Lender for the review of such documents and any filings, including any title endorsement costs if Lender in its discretion requires an endorsement or endorsements to Lender's title policy;

(iii)    the merger of Borrower with another entity when Borrower is the surviving entity;

(iv)    [intentionally omitted]; and

(v)    the grant of an easement, if before the grant Lender determines that the easement will not materially affect the operation or value of the Mortgaged Property or Lender's interest in the Mortgaged Property, and Borrower pays to Lender, upon demand, all costs and expenses, including Attorneys' Fees and Costs, incurred by Lender in connection with reviewing Borrower's request.

(e)    The occurrence of any of the following events shall constitute an Event of Default under this Instrument:

(i)    a Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property (including without limitation the creation or existence of any Lien as provided in Section 16 of this Instrument);

(ii)    if Borrower is a limited partnership, a Transfer of (A) any general partnership interest, or (B) limited partnership interests in Borrower that would cause the Initial Owners of Borrower to own less than a Controlling Interest of all limited partnership interests in Borrower;

(iii)    if Borrower is a general partnership or a joint venture, a Transfer of any general partnership or joint venture interest in Borrower;

(iv)    if Borrower is a limited liability company, (A) a Transfer of any membership interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the membership interests in Borrower, (B) a Transfer of any membership or other interest of a manager in Borrower that results in a change of manager, or (C) a change of a nonmember manager;

(v)    if Borrower is a corporation, (A) the Transfer of any voting stock in Borrower which would cause the Initial Owners to own less than a Controlling Interest of any class of voting stock in Borrower or (B) if the outstanding voting stock in Borrower is held by 100 or more shareholders, one or more transfers by a single transferor within a 12-month period affecting an aggregate of 5% or more of that stock;

(vi)    if Borrower is a trust, (A) a Transfer of any beneficial interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the beneficial interests in Borrower, (B) the termination or revocation of the trust, or (C) the removal, appointment or substitution of a trustee of Borrower; and

(vii)    a Transfer of any interest in a Controlling Entity which, if such Controlling Entity were Borrower, would result in an Event of Default under any of Sections 21(e)(i) through (vi) above.

Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to exercise any of its remedies with respect to an Event of Default under this Section 21.

Texas Deed of Trust                                            Page 15


TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

22. **EVENTS OF DEFAULT.** The occurrence of any one or more of the following shall constitute an Event of Default under this Instrument:

(a) any failure by Borrower to pay or deposit when due any amount required by the Note, this Instrument or any other Loan Document;

(b) any failure by Borrower to maintain the insurance coverage required by Section 19 or to provide any financial information or documents required by Section 14;

(c) any failure by Borrower to comply with the provisions of Section 33;

(d) fraud or material misrepresentation or material omission by Borrower, any of its officers, directors, trustees, general partners or managers or any Guarantor in connection with (A) the application for or creation of the Indebtedness, (B) any financial statement, rent roll, or other report or information provided to Lender during the term of the Indebtedness, or (C) any request for Lender's consent to any proposed action, including a request for disbursement of funds under any Collateral Agreement;

(e) any event or condition that under the terms of this Instrument is specified as constituting an Event of Default, including, without limitation, any Event of Default under Section 21;

(f) the commencement of a forfeiture action or proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of the Mortgaged Property or otherwise materially impair the lien created by this Instrument or Lender's interest in the Mortgaged Property;

(g) any failure by Borrower to perform any of its obligations under this Instrument (other than those specified in Sections 22(a) through (f)), as and when required, which continues for a period of 30 days after notice of such failure by Lender to Borrower. However, no such notice or grace period shall apply in the case of any such failure which could, in Lender's judgment, absent immediate exercise by Lender of a right or remedy under this Instrument, result in harm to Lender, impairment of the Note or this Instrument or any other security given under any other Loan Document;

(h) any failure by Borrower or any Guarantor to perform any of its obligations as and when required under any Loan Document other than this Instrument which continues beyond the applicable cure period, if any, specified in that Loan Document;

(i) any event or condition occurs that results in any other Indebtedness (i.e. indebtedness other than the Indebtedness secured by this Instrument) owing by Borrower or any Borrower Affiliate (as defined below) to Lender becoming due prior to its scheduled maturity or that enables or permits (after the lapse of any applicable cure period) Lender or any trustee or agent on its behalf to cause such indebtedness to become due prior to its scheduled maturity ("Borrower Affiliate" means (i) any entity owned or controlled by Borrower, (ii) any entity commonly owned or controlled by the members or owners of Borrower, (iii) any Guarantor and (iv) any entity owned or controlled by one or more Guarantors);

(j) any exercise by the holder of any debt instrument secured by a mortgage, deed of trust or deed to secure debt on the Mortgaged Property of a right to declare all amounts due under that debt instrument immediately due and payable;

(k) should any representation or warranty contained in this Instrument, the Borrower Certificate, any other Loan Document, or any other document submitted by Borrower to Lender be or become false or misleading in any material respect;

(l) if the Mortgaged Property is subject to any covenants, conditions and/or restrictions, land use restriction agreements or similar agreements, Borrower fails to perform any of its obligations under any such agreement as and when required, and such failure continues beyond any applicable cure period;

(m) Borrower or any Guarantor makes a general assignment for the benefit of creditors, voluntarily files for bankruptcy protection under the Bankruptcy Code or voluntarily becomes subject to any reorganization, receivership, insolvency proceeding or other similar proceeding pursuant to any other federal or state law affecting debtor and creditor rights, or an involuntary case is commenced against Borrower or any Guarantor by any creditor (other than Lender) of Borrower or any Guarantor pursuant to the Bankruptcy Code or other federal or state law affecting debtor and creditor rights to which Borrower or any Guarantor voluntarily becomes subject, and is not dismissed or discharged within 60 days after filing;

(n) Borrower, any member, manager, officer, shareholder, general partner or trustee of Borrower, any Guarantor or any member, manager, officer, shareholder, general partner or trustee of any Guarantor, purports to revoke or dispute the validity of, or Borrower's or any Guarantor's liability under, any of the Loan Documents or any Guaranty; and

(o) Borrower (if Borrower is a natural person) or any member, shareholder, partner or trustee of Borrower (if such member, shareholder, partner or trustee is a natural person), or any Guarantor who is a natural person, dies or becomes incompetent (unless, in the case of the death or incapacity of any member, shareholder or partner of Borrower, the Transfer of such member's, shareholder's or partner's interest in Borrower would not have been an Event of Default under Section 21);

Texas Deed of Trust                                                                                    Page 16



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

provided, however, that in the event of the death of any such person, Borrower (or such deceased person's executor, administrator or successor trustee) may within thirty (30) days after such death, present to Lender credit application(s) for proposed substitute borrower(s), member(s), shareholder(s), partner(s), trustee(s) or guarantor(s) on Lender's required forms, together with such supporting financial information as Lender may require, and in such event Lender, in its sole, absolute and unfettered discretion after review of such application(s) and supporting information, may waive such Event of Default, and provided further that such waiver may, in the case of the death or incompetence of Borrower or any Guarantor, require, as a condition of such waiver, that one or more substitute borrowers or guarantors assume unconditionally the obligations of such deceased person under the Loan Documents and/or guaranty, in a manner satisfactory to Lender. In such event Borrower or the successor Borrower(s) shall execute such documentation as Lender may require and shall pay all of Lender's Attorneys' Fees and Costs and other out of pocket costs in connection with such assumption.

23.     **REMEDIES CUMULATIVE.** Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument or any other Loan Document or afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order.

24.     **FORBEARANCE.**

(a)     Lender may (but shall not be obligated to) agree with Borrower, from time to time, and without giving notice to, or obtaining the consent of, or having any effect upon the obligations of, any Guarantor or any other third party obligor, to take any of the following actions:  extend the time for payment of all or any part of the Indebtedness; reduce the payments due under this Instrument, the Note, or any other Loan Document; release anyone liable for the payment of any amounts under this Instrument, the Note, or any other Loan Document; accept a renewal of the Note; modify the terms and time of payment of the Indebtedness; join in any extension or subordination agreement; release any Mortgaged Property; take or release other or additional security; modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable under the Note; and otherwise modify this Instrument, the Note, or any other Loan Document.

(b)     Any forbearance by Lender in exercising any right or remedy under the Note, this Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of all or any part of the Indebtedness after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments on account of the Indebtedness or to exercise any remedies for any failure to make prompt payment. Enforcement by Lender of any security for the Indebtedness shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right available to Lender. Lender's receipt of any awards or proceeds under Sections 19 and 20 shall not operate to cure or waive any Event of Default.

25.     **LOAN CHARGES.** If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in any Loan Document, whether considered separately or together with other charges levied in connection with any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the principal of the Indebtedness. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness which constitutes interest, as well as all other charges levied in connection with the Indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.

26.     [Intentionally Omitted]

27.     **WAIVER OF MARSHALLING.** Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided in this Instrument, the Note, any other Loan Document or applicable law. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Borrower and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.



TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS
MARY LOUISE GARCIA, COUNTY CLERK

28.     **FURTHER ASSURANCES.** Borrower shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as Lender may require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this Instrument and the Loan Documents.

29.     **ESTOPPEL CERTIFICATE.** Within ten (10) days after a request from Lender, Borrower shall deliver to Lender a written statement, signed and acknowledged by Borrower, certifying to Lender or any Person designated by Lender, as of the date of such statement, (i) that the Loan Documents are unmodified and in full force and effect (or, if there have been modifications, that the Loan Documents are in full force and effect as modified and setting forth such modifications); (ii) the unpaid principal balance of the Note; (iii) the date to which interest under the Note has been paid; (iv) that Borrower is not in default in paying the Indebtedness or in performing or observing any of the covenants or agreements contained in this Instrument or any of the other Loan Documents (or, if Borrower is in default, describing such default in reasonable detail); (v) whether or not there are then existing any setoffs or defenses known to Borrower against the enforcement of any right or remedy of Lender under the Loan Documents; and (vi) any additional facts requested by Lender.

30.     **GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE.**

(a)     This Instrument, and any Loan Document which does not itself expressly identify the law that is to apply to it, shall be governed by the laws of the jurisdiction in which the Land is located (the "**Property Jurisdiction**").

(b)     Borrower agrees that any controversy arising under or in relation to the Note, this Instrument, or any other Loan Document may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have non-exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the Indebtedness, or any other Loan Document. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue, or defense to venue to which it might be entitled by virtue of domicile, habitual residence, inconvenient forum or otherwise.

31.     **NOTICE.**

(a)     All notices, demands and other communications ("**notice**") under or concerning this Instrument shall be in writing. Each notice shall be addressed to the intended recipient at its address set forth in paragraph A of this Instrument, and shall be deemed given on the earliest to occur of (1) the date when the notice is received by the addressee; (2) the first Business Day after the notice is delivered to a recognized overnight courier service, with arrangements made for payment of charges for next Business Day delivery; or (3) the third Business Day after the notice is deposited in the United States mail with postage prepaid, certified mail, return receipt requested. As used in this Section 31, the term "Business Day" means any day other than a Saturday, a Sunday or any other day on which Lender is not open for business.

(b)     Any party to this Instrument may change the address to which notices intended for it are to be directed by means of notice given to the other party in accordance with this Section 31. Each party agrees that it will not refuse or reject delivery of any notice given in accordance with this Section 31, that it will acknowledge, in writing, the receipt of any notice upon request by the other party and that any notice rejected or refused by it shall be deemed for purposes of this Section 31 to have been received by the rejecting party on the date so refused or rejected, as conclusively established by the records of the U.S. Postal Service or the courier service.

(c)     Any notice under the Note and any other Loan Document which does not specify how notices are to be given shall be given in accordance with this Section 31.

32.     **SALE OF NOTE; CHANGE IN SERVICER.** The Note or a partial interest in the Note (together with this Instrument and the other Loan Documents) may be sold one or more times without prior notice to Borrower. A sale may result in a change of the Loan Servicer. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given notice of the change.

33.     **SINGLE ASSET BORROWER.** Until the Indebtedness is paid in full, Borrower (a) shall not acquire any real or personal property other than the Mortgaged Property and personal property related to the operation and maintenance of the Mortgaged Property; (b) shall not operate any business other than the management and operation of the Mortgaged Property; and (c) shall not maintain its assets in a way difficult to segregate and identify.

34.     **SUCCESSORS AND ASSIGNS BOUND.** This Instrument shall bind, and the rights granted by this Instrument shall inure to, the respective successors and assigns of Lender and Borrower. However, a Transfer not permitted by Section 21 shall constitute an Event of Default.

35.     **JOINT AND SEVERAL LIABILITY.** If more than one Person signs this Instrument as Borrower, the obligations of such Persons under this Instrument, the Note and other Loan Documents shall be joint and several.

Texas Deed of Trust                                                                 Page 18



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

36.   RELATIONSHIP OF PARTIES; NO THIRD PARTY BENEFICIARY.

(a)   The relationship between Lender and Borrower shall be solely that of creditor and debtor, respectively, and nothing contained in this Instrument shall create any other relationship between Lender and Borrower.

(b)   No creditor of any party to this Instrument and no other Person shall be a third party beneficiary of this Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (1) any arrangement (a "Servicing Arrangement") between Lender and any Loan Servicer for loss sharing or interim advancement of funds shall constitute a contractual obligation of such Loan Servicer that is independent of the obligation of Borrower for the payment of the Indebtedness, (2) Borrower shall not be a third party beneficiary of any Servicing Arrangement, and (3) no payment by the Loan Servicer under any Servicing Arrangement will reduce the amount of the Indebtedness.

37.   SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.   The parties intend that the provisions of this Instrument and all other Loan Documents shall be legally severable. If any term or provision of this Instrument, or any other Loan Document, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document shall not be affected thereby, and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

38.   CONSTRUCTION.   The captions and headings of the Sections of this Instrument are for convenience only and shall be disregarded in construing this Instrument. Any reference in this Instrument to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Instrument or to a Section of this Instrument. All Exhibits attached to or referred to in this Instrument are incorporated by reference into this Instrument. Any reference in this Instrument to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." The use of one gender includes the other gender, as the context may require. Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document in this Instrument shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument or any other Loan Document), and (b) any reference in this Instrument to any Person shall be construed to include such Person's successors and assigns.

39.   LOAN SERVICING.   All actions regarding the servicing of the Loan, including the collection of payments, the giving and receipt of notice, inspections of the Mortgaged Property, inspections of books and records, and the granting of consents and approvals, may be taken by the Loan Servicer unless Borrower receives notice to the contrary. If Borrower receives conflicting notices regarding the identity of the Loan Servicer or any other subject, any such notice from Lender shall govern.

40.   DISCLOSURE OF INFORMATION.   Lender may furnish information regarding Borrower or the Mortgaged Property to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, purchase or securitization of the Indebtedness, including but not limited to trustees, master servicers, special servicers, rating agencies, and organizations maintaining databases on the underwriting and performance of similar mortgage loans, as well as governmental regulatory agencies having regulatory authority over Lender. Borrower irrevocably waives any and all rights it may have under applicable law to prohibit such disclosure, including but not limited to any right of privacy.

41.   NO CHANGE IN FACTS OR CIRCUMSTANCES.   All information in the application for the loan submitted to Lender (the "Loan Application") and in all financial statements, rent rolls, reports, certificates and other documents submitted in connection with the Loan Application are complete and accurate in all material respects. There has been no material adverse change in any fact or circumstance that would make any such information incomplete or inaccurate.

42.   SUBROGATION.   If, and to the extent that, the proceeds of the Loan, or subsequent advances under Section 12, are used to pay, satisfy or discharge a Prior Lien, such Loan proceeds or advances shall be deemed to have been advanced by Lender at Borrower's request, and Lender shall automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the Prior Lien, whether or not the Prior Lien is released.

43.   [Intentionally Omitted]

Texas Deed of Trust



Page 19



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS MARY LOUISE GARCIA, COUNTY CLERK

**44. ACCELERATION; REMEDIES.**

(a) At any time during the existence of an Event of Default, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may invoke the power of sale and any other remedies permitted by Texas law or provided in this Instrument or in any other Loan Document. Borrower acknowledges that the power of sale granted in this Instrument may be exercised by Lender without prior judicial hearing. Lender shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including Attorneys' Fees and Costs, and costs of documentary evidence, abstracts and title reports.

(b) If Lender invokes the power of sale, Lender may, by and through the Trustee, or otherwise, sell or offer for sale the Mortgaged Property in such portions, order and parcels as Lender may determine, with or without having first taken possession of the Mortgaged Property, to the highest bidder for cash at public auction. Such sale shall be made at the courthouse door of the county in which all or any part of the Land to be sold is situated (whether the parts or parcel, if any, situated in different counties are contiguous or not, and without the necessity of having any Personalty present at such sale) on the first Tuesday of any month between the hours of 10:00 a.m. and 4:00 p.m. (or, if the first Tuesday of the month falls on January 1 or July 4, the date of the foreclosure sale will be the first Wednesday of such month), after advertising the time, place and terms of sale and that portion of the Mortgaged Property to be sold by posting or causing to be posted written or printed notice of sale at least twenty-one (21) days before the date of the sale at the courthouse door of the county in which the sale is to be made and at the courthouse door of any other county in which a portion of the Land may be situated, and by filing such notice with the County Clerk(s) of the county(s) in which all or a portion of the Land may be situated, which notice may be posted and filed by the Trustee acting, or by any Person acting for the Trustee, and Lender has, at least twenty-one (21) days before the date of the sale, served written or printed notice of the proposed sale by certified mail on each debtor obligated to pay the Indebtedness according to Lender's records by the deposit of such notice, enclosed in a postpaid wrapper, properly addressed to such debtor at debtor's most recent address as shown by Lender's records, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any Person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

(c) Trustee shall deliver to the purchaser at the sale, within a reasonable time after the sale, a deed conveying the Mortgaged Property so sold in fee simple with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Mortgaged Property against all claims and demands. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements contained in those recitals. Trustee shall apply the proceeds of the sale in the following order: (i) to all reasonable costs and expenses of the sale, including reasonable Trustee's fees not to exceed 5% of the gross sales price, Attorneys' Fees and Costs and costs of title evidence; (ii) to the Indebtedness in such order as Lender, in Lender's discretion, directs; and (iii) the excess, if any, to the Person or Persons legally entitled to the excess.

(d) If all or any part of the Mortgaged Property is sold pursuant to this Section 44, Borrower will be divested of any and all interest and claim to the Mortgaged Property, including any interest or claim to all insurance policies, utility deposits, bonds, loan commitments and other intangible property included as a part of the Mortgaged Property. Additionally, after a sale of all or any part of the Land, Improvements, Fixtures and Personalty, Borrower will be considered a tenant at sufferance of the purchaser of the same, and the purchaser shall be entitled to immediate possession of such property. If Borrower shall fail to vacate the Mortgaged Property immediately, the purchaser may and shall have the right, without further notice to Borrower, to go into any justice court in any precinct or county in which the Mortgaged Property is located and file an action in forcible entry and detainer, which action shall lie against Borrower or its assigns or legal representatives, as a tenant at sufferance. This remedy is cumulative of any and all remedies the purchaser may have under this Instrument or otherwise.

(e) In the event an interest in any of the Mortgaged Property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Borrower agrees as follows: notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Borrower agrees that Lender will be entitled to seek a deficiency judgment from Borrower and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Mortgaged Property was sold pursuant to judicial or nonjudicial foreclosure sale. Borrower expressly recognizes that this Section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Borrower and other Persons against whom a recovery of deficiencies is sought or any Guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Mortgaged Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Borrower further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS. MARY LOUISE GARCIA, COUNTY CLERK

equal to the fair market value of the Mortgaged Property for purposes of calculating deficiencies owed by Borrower, any Guarantor, and others against whom recovery of a deficiency is sought. Alternatively, in the event the waiver provided for in this Section is determined by a court of competent jurisdiction to be unenforceable, in any action for a deficiency after a foreclosure under this Instrument, if any Person against whom recovery is sought requests the court in which the action is pending to determine the fair market value of the Mortgaged Property, as of the date of the foreclosure sale, the following shall be the basis of the court's determination of fair market value:

(i)   the Mortgaged Property shall be valued "as is" and in its condition as of the date of foreclosure, and no assumption of increased value because of post-foreclosure repairs, refurbishment, restorations or improvements shall be made;

(ii)   any adverse effect on the marketability of title because of the foreclosure or because of any other title condition not existing as of the date of this Instrument shall be considered;

(iii)   the valuation of the Mortgaged Property shall be based upon an assumption that the foreclosure purchaser desires a prompt resale of the Mortgaged Property for cash within a six month-period after foreclosure;

(iv)   although the Mortgaged Property may be disposed of more quickly by the foreclosure purchaser, the gross valuation of the Mortgaged Property as of the date of foreclosure shall be discounted for a hypothetical reasonable holding period (not to exceed 6 months) at a monthly rate equal to the average monthly interest rate on the Note for the twelve months before the date of foreclosure;

(v)   the gross valuation of the Mortgaged Property as of the date of foreclosure shall be further discounted and reduced by reasonable estimated costs of disposition, including brokerage commissions, title policy premiums, environmental assessment and clean-up costs, tax and assessment, prorations, costs to comply with legal requirements and Attorneys' Fees and Costs;

(vi)   expert opinion testimony shall be considered only from a licensed appraiser certified by the State of Texas and, to the extent permitted under Texas law, a member of the Appraisal Institute, having at least five years' experience in appraising property similar to the Mortgaged Property in the county where the Mortgaged Property is located, and who has conducted and prepared a complete written appraisal of the Mortgaged Property taking into considerations the factors set forth in this Instrument; no expert opinion testimony shall be considered without such written appraisal;

(vii)   evidence of comparable sales shall be considered only if also included in the expert opinion testimony and written appraisal referred to in subsection (vi), above; and

(viii)   an affidavit executed by Lender to the effect that the foreclosure bid accepted by Trustee was equal to or greater than the value of the Mortgaged Property determined by Lender based upon the factors and methods set forth in subsections (i) through (vii) above before the foreclosure shall constitute *prima facie* evidence that the foreclosure bid was equal to or greater than the fair market value of the Mortgaged Property on the foreclosure date.

(f)   Lender may, at Lender's option, comply with these provisions in the manner permitted or required by Title 5, Section 51.002 of the Texas Property Code (relating to the sale of real estate) or by Chapter 9 of the Texas Business and Commerce Code (relating to the sale of collateral after default by a debtor), as those titles and chapters now exist or may be amended or succeeded in the future, or by any other present or future articles or enactments relating to same subject. Unless expressly excluded, the Mortgaged Property shall include Rents collected before a foreclosure sale, but attributable to the period following the foreclosure sale, and Borrower shall pay such Rents to the purchaser at such sale.

(g)   At any such sale, all of the following will be true:

(i)   whether made under the power contained in this Instrument, Section 51.002 of the Texas Property Code, Chapter 9 of the Texas Business and Commerce Code, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for Trustee to have physically present, or to have constructive possession of, the Mortgaged Property (Borrower shall deliver to Trustee any portion of the Mortgaged Property not actually or constructively possessed by Trustee immediately upon demand by Trustee) and the title to and right of possession of any such property shall pass to the purchaser as completely as if the property had been actually present and delivered to the purchaser at the sale;

(ii)   each instrument of conveyance executed by Trustee shall contain a general warranty of title, binding upon Borrower;

(iii)   the recitals contained in any instrument of conveyance made by Trustee shall conclusively establish the truth and accuracy of the matters recited in the instrument, including nonpayment of the Indebtedness and the

Texas Deed of Trust

TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS; MARY LOUISE GARCIA, COUNTY CLERK

advertisement and conduct of the sale in the manner provided in this Instrument and otherwise by law and the appointment of any successor Trustee;

       (iv)     all prerequisites to the validity of the sale shall be conclusively presumed to have been satisfied;

       (v)     the receipt of Trustee or of such other party or officer making the sale shall be sufficient to discharge to the purchaser or purchasers for such purchaser(s)' purchase money, and no such purchaser or purchasers, or such purchaser(s)' assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or nonapplication of such purchase money;

       (vi)     to the fullest extent permitted by law, Borrower shall be completely and irrevocably divested of all of Borrower's right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold, and such sale shall be a perpetual bar to any claim to all or any part of the property sold, both at law and in equity, against Borrower and against any Person claiming by, through or under Borrower; and

       (vii)     to the extent and under such circumstances as are permitted by law, Lender may be a purchaser at any such sale.

       (h)     Lender may foreclose or exercise its remedies with respect to part or all of the collateral for the Indebtedness, and no foreclosure or exercise of remedies with respect to less than all of the collateral for the Loan shall limit Lender's rights with respect to the remaining collateral or other remedies of Lender. Without limiting the foregoing, multiple foreclosure sales of portions of the Mortgaged Property, at the same time or at different times, are permitted and shall not affect Lender's rights or remedies with respect to remaining portions of the Mortgaged Property. The power of sale under this Instrument shall survive until all of the Mortgaged Property is sold or the lien of this Instrument is fully satisfied.

       45.     RELEASE.  Upon payment of the Indebtedness, Lender shall release this Instrument. Borrower shall pay Lender's reasonable costs incurred in releasing this Instrument.

       46.     TRUSTEE.

       (a)     Trustee may resign by giving of notice of such resignation in writing to Lender. If Trustee shall die, resign or become disqualified from acting under this Instrument or shall fail or refuse to act in accordance with this Instrument when requested by Lender or if for any reason and without cause Lender shall prefer to appoint a substitute trustee to act instead of the original Trustee named in this Instrument or any prior successor or substitute trustee, Lender shall have full power to appoint a substitute trustee and, if preferred, several substitute trustees in succession who shall succeed to all the estate, rights, powers and duties of the original Trustee named in this Instrument. Such appointment may be executed by an authorized officer, agent or attorney-in-fact of Lender (whether acting pursuant to a power of attorney or otherwise), and such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by Lender.

       (b)     Any successor Trustee appointed pursuant to this Section shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of the predecessor Trustee with like effect as if originally named as Trustee in this Instrument; but, nevertheless, upon the written request of Lender or such successor Trustee, the Trustee ceasing to act shall execute and deliver an Instrument transferring to such successor Trustee, all the estates, properties, rights, powers and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and monies held by the Trustee ceasing to act to the successor Trustee.

       (c)     Trustee may authorize one or more parties to act on Trustee's behalf to perform the ministerial functions required of Trustee under this Instrument, including the transmittal and posting of any notices.

       47.     VENDOR'S LIEN.  The Indebtedness evidenced by the Note is utilized as payment of all or a portion of the purchase price of the Mortgaged Property. To the extent a vendor's lien is retained in that certain deed conveying the Mortgaged Property to Borrower and dated on or about the date of this Instrument, such vendor's lien has been assigned to Lender, the Note is primarily secured by said vendor's lien, and this Instrument is additional security therefor. This Instrument does not waive the vendor's lien, and the two liens and the rights created by this Instrument are cumulative. Lender may elect to foreclose under either of the liens without waiving the other or may foreclose under both.

       48.     FIXTURE FILING.  This Instrument is also a fixture filing under the Uniform Commercial Code of Texas.

       49.     NO FIDUCIARY DUTY.  Lender owes no fiduciary or other special duty to Borrower.

       50.     ADDITIONAL PROVISIONS REGARDING ASSIGNMENT OF RENTS.  Section 3 shall not be construed to require a pro tanto or other reduction of the Indebtedness resulting from the assignment of Rents. If the provisions of Section 3 and the preceding sentence cause the assignment of Rents in Section 3 to be deemed to be an assignment for additional security only, Lender shall be entitled to all rights, benefits and remedies attendant to such collateral assignment. The assignment of Rents contained in Section 3 shall terminate upon the release of this Instrument.

Texas Deed of Trust                            Page 22



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS. MARY LOUISE GARCIA, COUNTY CLERK

51.     **LOAN CHARGES.** Borrower and Lender intend at all times to comply with the laws of the State of Texas governing the maximum rate or amount of interest payable on or in connection with the Indebtedness (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount payable under the Note, this Instrument or any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Indebtedness, or if acceleration of the maturity of the Indebtedness, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by any applicable law, then Borrower and Lender expressly intend that all excess amounts collected by Lender shall be applied to reduce the unpaid principal balance of the Indebtedness (or, if the Indebtedness has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of the Note, this Instrument and the other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under the Loan Documents reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents. The right to accelerate the maturity of the Indebtedness does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness shall, to the extent permitted by any applicable law, be amortized, prorated, allocated and spread throughout the full term of the Indebtedness until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the applicable usury ceiling. Notwithstanding any provision contained in the Note, this Instrument or any other Loan Document that permits the compounding of interest, including any provision by which any accrued interest is added to the principal amount of the Indebtedness, the total amount of interest that Borrower is obligated to pay and Lender is entitled to receive with respect to the Indebtedness shall not exceed the amount calculated on a simple (i.e., noncompounded) interest basis at the maximum rate on principal amounts actually advanced to or for the account of Borrower, including all current and prior advances and any advances made pursuant to the Instrument or any other Loan Document (such as for the payment of Impositions and similar expenses or costs).

52.     **INTERPRETATION.** It is the intention of Borrower and Lender that if any provision of this Instrument or any other Loan Document is capable of two (2) constructions, one of which would render the provision void, and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid. Borrower acknowledges that Lender has attempted in good faith to assure that this Instrument, the Note and all other Loan Documents are in compliance with applicable laws of the Property Jurisdiction and federal laws. Nevertheless, in the event that any provision of this Instrument, the Note or any other Loan Document is not in compliance with any such laws, then the non-complying provision shall be deemed to be deleted or modified to the extent necessary to assure legal compliance. Similarly, in the event any language or disclosure required by applicable laws of the Property Jurisdiction is not contained in the Loan Documents, then the Loan Documents shall be deemed to have been supplemented to add such language or disclosure, or, at Lender's option, Lender may provide such additional language or disclosure. In either event, such legal requirement shall thereby be satisfied and such noncompliance shall be deemed to have been cured for all purposes. Within ten (10) days after written request by Lender, Borrower agrees to execute such documentation as Lender may require to cure any legal compliance issues or deficiencies in the Loan Documents.

53.     **FUTURE ADVANCES.** In addition to the Indebtedness, this Instrument shall (to the extent allowed by applicable law) also secure payment of the principal, interest and other charges due on all other future loans or advances made by Lender to Borrower (or any successor in interest to Borrower as the owner of all or any part of the Mortgaged Property) when the promissory note evidencing such loan or advance specifically states that it is secured by this Instrument ("Future Advances"), including all extensions, renewals and modifications of any such Future Advances.

54.     **AGREEMENT TO PROVIDE ADDITIONAL DOCUMENTS.** Borrower agrees to execute and acknowledge such additional documents as may be necessary or desirable in order to carry out the intent and purpose of this Instrument and the other Loan Documents, to confirm or establish the lien hereof, or to correct any clerical errors or legal deficiencies. Without limiting the foregoing, Borrower agrees to execute a replacement Note in the event the Note is lost or destroyed and to execute an amended or corrected and restated substitute Note to correct any clerical or other errors which may be discovered in the original Note. Failure of Borrower to comply with any request by Lender pursuant to this Section or under Section 28 above within ten (10) days after written request by Lender shall constitute a material Event of Default hereunder.

55.     **EXECUTION IN COUNTERPARTS.** This Instrument may be executed in multiple counterparts, and the separate signature pages and notary acknowledgments may then be combined into a single original document for recordation.

56.     **PAYMENT OF CLOSING COSTS.** If for any reason the escrow or closing agent fails to reserve and pay for all of Lender's fees, legal, documentation, appraisal, title, recording and other closing costs incurred in connection with the

Texas Deed of Trust                                                                                      Page 23



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

closing and funding of the Loan, then Borrower shall pay or reimburse Lender for any such unpaid fees or costs within ten (10) days after written demand by Lender itemizing the unpaid fees and costs. Failure of Borrower to so pay or reimburse Lender for any such unpaid fees and costs within ten (10) days after written demand by Lender shall constitute an Event of Default and, without limiting any other remedies of Lender, Lender may immediately instate the Default Rate under the Note until such amounts are received by Lender.

57.     **BALLOON PAYMENT NOTICE.** The Note secured hereby provides for a balloon payment of the entire indebtedness upon the Maturity Date of the Note.

58.     **DOCUMENT IMAGING.** Lender shall be entitled, in its sole discretion, to image or make copies of all or any selection of the agreements, instruments, documents, items and records governing, arising from or relating to any of Borrower's loans, including, without limitation, this Instrument and the other Loan Documents, and Lender may destroy or archive the paper originals. Borrower waives (i) any right to insist or require that Lender produce paper originals, (ii) agrees that such images shall be accorded the same force and effect as the paper originals, (iii) agrees that Lender is entitled to use such images in lieu of destroyed or archived originals for any purpose, including as admissible evidence in any demand, presentment or other proceedings, and (iv) further agrees that any executed facsimile (faxed), scanned, or other imaged copy of this Instrument or any other Loan Document shall be deemed to be of the same force and effect as the original manually executed document.

59.     **NOTICE OF ADDITIONAL PROVISIONS REGARDING INSURANCE.** Any terms to the contrary contained in this Instrument notwithstanding, the following requirements are hereby imposed pursuant to Section 307.052 of the Texas Finance Code:

(a)     BORROWER IS REQUIRED TO: (i) KEEP THE MORTGAGED PROPERTY INSURED AGAINST DAMAGE IN AN AMOUNT EQUAL TO THE INDEBTEDNESS, (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER, AND (iii) NAME THE LENDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF LOSS.

(b)     IF BORROWER FAILS TO COMPLY WITH SUBSECTION (a) ABOVE, LENDER MAY, BUT WILL NOT BE OBLIGATED TO, OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF BORROWER AT BORROWER'S EXPENSE.

[The balance of this page is intentionally left blank.]



Texas Deed of Trust



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS; MARY LOUISE GARCIA, COUNTY CLERK

60.    **ENTIRE AGREEMENT.** THIS INSTRUMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS.    THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

61.    **WAIVER OF TRIAL BY JURY.** BORROWER AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

**ATTACHED EXHIBIT.** The following Exhibit is attached to this Instrument:
Exhibit "A"        Description of the Land

THIS DEED OF TRUST SECURES A FIXED RATE PROMISSORY NOTE. THIS DEED OF TRUST IS A FIRST DEED OF TRUST. NO FURTHER ENCUMBRANCES MAY BE RECORDED AGAINST THE MORTGAGED PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER. FAILURE TO COMPLY WITH THIS PROVISION SHALL CONSTITUTE AN EVENT OF DEFAULT AND AT LENDER'S OPTION THE LOAN SHALL IMMEDIATELY BECOME DUE AND PAYABLE. CONSENT TO ONE FURTHER ENCUMBRANCE SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE ENCUMBRANCES.

**IN WITNESS WHEREOF**, Borrower has signed and delivered this Instrument under seal (where applicable) or has caused this Instrument to be signed and delivered by its duly authorized representative under seal (where applicable). Where applicable law so provides or allows, Borrower intends that this Instrument shall be deemed to be signed and delivered as a sealed Instrument.

BORROWER:

MANSFIELD BOAT AND RV STORAGE L.L.C.,
a Texas limited liability company

By: _____
    LARRY J. REYNOLDS, Member

(SEAL)

TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS
MARY LOUISE GARCIA, COUNTY CLERK

State of Alaska                                        )
                                                      ) ss.
Judicial District _Third_____              )

On _Nov. 27th_____, 2017, before me, _Joyce L. Wylie_____, Notary Public, personally
appeared **LARRY J. REYNOLDS,**

☑ personally known to me – **OR** –

☐ proved to me on the basis of satisfactory evidence

to be the person(s) who executed the within instrument as
Member on behalf of **MANSFIELD BOAT AND RV STORAGE
L.L.C., a Texas limited liability company,** the limited liability
company therein named, and acknowledged to me that the
limited liability company executed the same for the purposes
therein stated.

WITNESS my hand and official seal.

_____
Signature of Notary Public

**Commission Expires: 4-13-18**
Other Required Information (Printed Name of Notary, Residence, etc.)

**Joyce L. Wylie**
**Notary Public**

Place Notary Seal and/or Any Stamp Above

TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS
MARY LOUISE GARCIA, COUNTY CLERK

**EXHIBIT "A"**
DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN TARRANT COUNTY, STATE OF TEXAS, AND IS DESCRIBED AS FOLLOWS:

Tract 1:

BEING a tract of land situated in the SAMUEL WEST SURVEY, ABSTRACT NO. 1648, in the City of Mansfield, Tarrant County, Texas, and being all of Lot 1, Block 1, Reynolds Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 6684, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

COMMENCING at a 1/2-inch iron rod found for the northeast corner of Lot 2C, Block 1, Reynolds Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 6690, Official Public Records, Tarrant County, Texas, said iron rod also being situated in the westerly right-of-way of F.M. Highway 157, a 120-foot right-of-way (S. Cooper Street);

THENCE North 89 deg 56 min 34 sec West, departing the westerly right-of-way of said F.M. Highway 157 and along the north line of said Lot 2C, Block 1, a distance of 374.71 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for the POINT OF BEGINNING;

THENCE South 00 deg 02 min 24 sec West, a distance of 610.80 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 67 deg 43 min 34 sec East, a distance of 252.77 feet to a 1/2-inch iron rod with plastic cap found for corner, and being situated in the westerly right-of-way of said F.M. Highway 157, said iron rod also being the beginning of a non-tangent curve to the right having a radius of 4,860.93 feet, a central angle of 00 deg 01 min 46 sec, a chord bearing of South 14 deg 57 min 52 sec West, and a chord length of 2.48 feet;

THENCE along said westerly right-of-way and said curve to the right, an arc distance of 2.48 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 75 deg 18 min 50 sec West, continuing along said westerly right-of-way, a distance of 8.49 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 14 deg 36 min 38 sec West, along the westerly right-of-way of said F.M. Highway 157, a distance of 10.00 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 01 deg 38 min 26 sec West, continuing along said westerly right-of-way, a distance of 12.30 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 67 deg 43 min 34 sec West, departing the westerly right-of-way of said F.M. Highway 157, a distance of 826.02 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

[Legal description continued on next pages.]

TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

THENCE North 00 deg 36 min 24 sec East, a distance of 416.29 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 89 deg 56 min 34 sec East, a distance of 538.22 feet to the POINT OF BEGINNING, CONTAINING within these metes and bounds 6.681 acres or 291,038 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 28th day of May, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of South 11 deg 12 min 08 sec West (plat-South 11 deg 49 min 40 sec West), along the Northwesterly right-of-way of F.M. Highway 157 (Cooper Street), recorded in Cabinet A, Slide 6684, Official Public Records, Tarrant County, Texas.

Tract 2:

BEING a tract of land situated in the F.B. WADDELL SURVEY, ABSTRACT NO. 1658, in the City of Mansfield, Tarrant County, Texas, and being all of Lot 3, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 1635, Plat Records, Tarrant County, Texas, a portion of Lot 1, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 771, Official Public Records, Tarrant County, Texas, and a portion of Lot 2, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 1060, Official Public Records, Tarrant County, Texas, and also being Tracts I, II and III as described in deed to Larry Reynolds, recorded in County Clerk's Instrument No. D202115424, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

BEGINNING at a 3/8-inch iron rod found for corner at the intersection of the westerly right-of-way of Smith Street, a 60-foot right-of-way, with the northerly right-of-way of Texas and Pacific Railroad, a variable width right-of-way, said point being the southeast corner of said Lot 3;

THENCE North 84 deg 26 min 38 sec West, departing said westerly right-of-way and along said northerly right-of-way, a distance of 177.88 feet to a 1/2-inch iron rod found for corner at the intersection of the northerly right-of-way of said Texas and Pacific Railroad with the easterly right-of-way of Business Highway 287, a variable width right-of-way;

THENCE departing the northerly right-of-way of said Texas and Pacific Railroad and along the easterly right-of-way of said Business Highway 287 the following:

North 05 deg 48 min 42 sec West, a distance of 76.49 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 04 deg 15 min 22 sec East, a distance of 24.30 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 14 deg 07 min 49 sec West, a distance of 201.04 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 14 deg 09 min 38 sec West, a distance of 230.04 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

[Legal description continued on next pages.]

Texas Deed of Trust
Exhibit "A" -- Legal Description

Page A-2


TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS:
MARY LOUISE GARCIA, COUNTY CLERK

THENCE North 60 deg 35 min 09 sec East, departing the easterly right-of-way of said Business Highway 287, a distance of 295.70 feet to a point for corner (falls in concrete rubble);

THENCE South 03 deg 51 min 53 sec West, a distance of 168.82 feet to a P.K. nail set for corner;

THENCE South 83 deg 50 min 41 sec East, a distance of 77.34 feet to a P.K. nail set for corner and being situated in the westerly right-of-way of said Smith Street;

THENCE South 03 deg 50 min 30 sec West, along said westerly right-of-way, a distance of 216.27 feet to a 1/2- inch iron rod with red plastic cap stamped "W.A.I." set for corner and being the northeast corner of said Lot 1, Block 1;

THENCE North 84 deg 30 min 41 sec West, departing the westerly right-of-way of said Smith Street and along the north line of said Lot 1, Block 1, a distance of 74.64 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 05 deg 19 min 16 sec West, departing said north line and over and across said Lot 1, Block 1, a distance of 105.13 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 83 deg 32 min 00 sec East, continuing over and across said Lot 1, Block 1, a distance of 77.07 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner, and being situated in the westerly right-of-way of said Smith Street;

THENCE South 04 deg 01 min 22 sec West, continuing along the westerly right-of-way of said Smith Street, a distance of 182.49 feet to the POINT OF BEGINNING.

CONTAINING within these metes and bounds 3.124 acres or 136,082 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 2nd day of June, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of North 84 deg 26 min 38 soc West (plat-North 84 deg 28 min 00 sec West), along the northerly line of Lot 3, Block 1, Rountree Addition, recorded in Cabinet a, Slide 1635, Official Public Records, Tarrant County, Texas.

Tract 3:

BEING a tract of land situated in the F.B. WADDELL SURVEY, ABSTRACT NO. 1658, City of Mansfield, Tarrant County, Texas and being all of Lot 1-R-1, Block 2, Rountree Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 6164, Plat Records, Tarrant County, Texas, and also being all of Tract IV as described in deed to Larry Reynolds, recorded in County Clerk's File No. D202115424, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

BEGINNING at a 1/2-inch iron rod found for corner at the southwest corner of said Lot 1-R-1, Block 2, said iron rod also being situated at the intersection of the easterly right-of-way of Smith Street (50-foot right-of-way) and the northerly right-of-way of Texas and Pacific Railroad (variable width right-of-way);

THENCE North 04 deg 09 min 37 sec East, departing said northerly right-of-way and along said easterly right-of- way, a distance of 339.54 feet to a MAG nail set for corner;

[Legal description continued on next page.]

Texas Deed of Trust
Exhibit "A" – Legal Description



Page A-3



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

THENCE North 04 deg 01 min 02 sec East, continuing along the easterly right-of-way of said Smith Street, a distance of 164.70 feet to a point for corner from which a 1/2-inch iron rod found bears North 77 deg 57 min 42 sec West, a distance of 0.74 feet;

THENCE South 83 deg 45 min 40 sec East, departing the easterly right-of-way of said Smith Street, a distance of 332.60 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 84 deg 46 min 09 sec East, a distance of 294.05 feet to a point for corner from which a 1/2-inch iron rod found bears North 17 deg 36 min 13 sec West, a distance of 1.05 feet;

THENCE South 02 deg 52 min 46 sec West, a distance of 83.46 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 08 deg 51 min 03 sec West, a distance of 419.12 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner and being situated in the north right-of-way of said Texas and Pacific Railroad;

THENCE North 84 deg 26 min 37 sec West, along said northerly right-of-way, a distance of 593.73 feet to the POINT OF BEGINNING.

CONTAINING within these metes and bounds 7.066 acres or 307,778 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 2nd day of June, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of North 84 deg 26 min 38 sec West (plat-North 84 deg 28 min 00 sec West), along the northerly line of Lot 3, Block 1, Rountree Addition, recorded in Cabinet a, Slide 1635, Official Public Records, Tarrant County, Texas.

APN: 07818130, 06498302, 06556590, 06676820, 07715293

PROPERTY ADDRESS: 1945 FARM ROAD 157 AND 305 SMITH ST., MANSFIELD, TX 76063

Texas Deed of Trust
Exhibit "A" – Legal Description

Page A-4



TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS: MARY LOUISE GARCIA, COUNTY CLERK

**EXHIBIT A**
**LEGAL DESCRIPTION**

TRACT I:

Lot 1, in Block 1, of REYNOLDS ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 6684, Plat Records, Tarrant County, Texas.

TRACT II:

Lot 1, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 771, Plat Records, Tarrant County, Texas.

SAVE AND EXCEPT: Being a portion of Lot 1, Block 1, of ROUNTREE ADDITION, an Addition to the City of Mansfield, Tarrant County, Texas, according to the Plat thereof recorded in Cabinet A, Slide 771, of the Plat Records of Tarrant County, Texas, also being a portion of "Tract I" conveyed to Larry Reynolds by deed recorded in Volume 15634, Page 84, Deed Records, Tarrant County, Texas, and being more particularly described by metes and-bounds as follows:

BEGINNING at a ½ iron rod found in the west right-of-way line of Smith Street and the north right-of-way line of Texas & Pacific Railroad for the southeast corner of said Lot 1 and the southeast corner of said Tract I;

THENCE N 84° 32' 08" W, with the north right-of-way line of said Texas & Pacific Railroad and the south line of said Lot 1 and said Tract 1 190.77 feet to a concrete monument found in the east right-of-way line of Spur 496 for the southwest corner of said Lot 1 and Tract I;

THENCE N 03° 53' 20" E, with the east right-of-way line of said Spur 496 and the west line of said Lot I and said Tract I, 24.71 feet to a ½" iron rod found,

THENCE N 14° 05' 01" W, continuing with the east right-of-way line of said Spur 496 and the west line of said Lot I and said Tract 1, 201.11 feet to railroad spike found for the northwest corner of said Lot 1 and said Tract I, and the southwest corner of Lot 2, Block 1, Rountree Addition recorded in Cabinet A, Slide 1060, PRTCT;

THENCE S 84° 26' 29" E, with the north line of said Lot I and said Tract I and the south line of said Lot 2, 178.92 feet to a metal fence post for corner;

THENCE S 05° 23' 28" W, 105.13 feet to a metal fence post for corner;

THENCE S 83° 27' 48" E, 77.10 feet to a metal fence post in the west right-of-way line of said Smith Street and the east line of said Lot 1 and said Tract I;

THENCE S 04° 04' 35" W, with the west right-of-way line of said Smith Street and the east line of said Lot 1 and said Tract I, 107.38 feet, to the POINT OF BEGINNING and containing 0.8895 acres of land more or less

TRACT III:

Lot 1-R-1, in Block 2, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 6164, Plat Records Tarrant County, Texas.

TRACT IV:

Lot 2, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 1060, Plat Records, Tarrant County, Texas.

SAVE & EXCEPT that portion conveyed to Communities Foundation of Texas, Inc., by Warranty Deed dated 8/16/1993, recorded in Volume 11381, Page 401, Real Property Records, Tarrant County, Texas.

TRACT V:

Lot 3, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 1635, Plat Records, Tarrant County, Texas.

A CERTIFIED COPY,

ATTEST: _May 23rd_, 20 18

MARY LOUISE GARCIA, County Clerk
Tarrant County, Texas

BY: _____ Deputy

# Exhibit C

**CAUSE NO. 048-299273-18**

| | | |
|---|---|---|
| **PENDER CAPITAL ASSET BASED** | § | **IN THE DISTRICT COURT OF** |
| **LENDING FUND I, LP,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| **MANSFIELD BOAT AND RV** | § | |
| **STORAGE,** | | |
| **L.L.C.** | § | |
| **Defendants,** | § | **48TH JUDICIAL DISTRICT** |
| | § | |
| **JANICE RUTH REYNOLDS** | § | |
| **Intervenor,** | § | |
| **v.** | § | |
| **ANNA M. VIRENE** | § | |
| **Third Party Defendant.** | § | **TARRANT COUNTY, TEXAS** |

<u>**CONFIDENTIAL FULL AND FINAL COMPROMISE SETTLEMENT AGREEMENT**</u>

THIS CONFIDENTIAL FULL AND FINAL COMPROMISE SETTLEMENT AGREEMENT ("Settlement Agreement") is entered into, effective June 18, 2018 (the "Effective Date"), between Pender Capital Asset Based Lending Fund I, LP, Mansfield Boat and RV Storage, L.L.C., and Janice Ruth Reynolds (collectively the "Parties").

**1.0 DEFINITIONS.**

The following additional definitions shall apply for purposes of this Settlement Agreement:

1.1 "Lawsuit" shall mean and refer to the above styled and numbered lawsuit.

1.2 "Pender" shall mean and refer to Pender Capital Asset Based Lending Fund I, LP, the plaintiff and counter-defendant in the Lawsuit.

1.3 "Mansfield" shall mean and refer to Mansfield Boat and RV Storage, L.L.C., the defendant and counter-plaintiff in the Lawsuit.

1.4 "Reynolds" shall mean Janice Ruth Reynolds, the intervenor in the Lawsuit.

1.5 "Claims" shall mean any and all claims, demands, causes of action, liabilities, obligations, losses, damages, expenses, costs, legal fees, interest,

recoveries, and remedies, known or unknown, of any kind or nature, for alleged actual damages, lost profits, exemplary damages, injunctive relief, equitable relief, and all other relief and remedies of any kind, nature, or character, based or brought under any theory of liability pursuant to law, equity, tort, statute, code, or regulation, including, but not limited to, claims and causes of action for breach of oral or written contract, violation of the Texas Deceptive Trade Practices Act, and/or usury.

1.6     In this Settlement Agreement, the singular includes the plural, and vice versa; likewise, the disjunctive includes the conjunctive, and vice versa.

## 2.0     RECITALS.

2.1     Pender is a leading provider of short-term, senior-secured bridge loans to commercial real estate holders throughout the United States.

2.2     Mansfield is the owner of two boat and RV storage facilities in Mansfield, Texas located at 301-309 Smith Street and 1945 FM 157 Mansfield, Texas (the "Storage Properties").

2.3     Pender made a $6.7 million loan to Manfield in November 2017 (the "Loan") secured by the Storage Properties.

2.4     In connection with Loan, Mansfield signed a Deed of Trust, Promissory Note, Business Loan Agreement, and other loan documents (collectively "Loan Documents") effective November 22, 2017.

2.5     Pender filed the Lawsuit claiming that Mansfield was in default of its obligations under the Loan Documents. Pender also posted a notice of foreclosure sale of the Storage Properties.

2.6     Mansfield counterclaimed for breach of contract, violation of the Texas Deceptive Trade Practices Act, and usury. Reynolds intervened, claiming title to the Storage Properties and claiming that the Smith Street property was her homestead.

2.7     The Parties entered into a settlement on the record in the 48th Judicial District Court of Tarrant County, Texas on June 18, 2018. This Settlement Agreement is intended to document the full terms of the June 18, 2018 settlement.

## 3.0     REPRESENTATIONS AND WARRANTIES.

The Parties each represent and warrant to each other Party as follows:

3.1 <u>Authority</u>. That they are duly authorized to execute this Settlement Agreement on their own behalf and that their signatories to this Settlement Agreement are legally competent to execute, authorized to execute, and do execute this Settlement Agreement on their behalf.

3.2 <u>Non-Conveyance</u>. That they have not assigned, sold, conveyed, pledged, or otherwise in any manner whatsoever transferred (1) any of their respective claims and causes of action asserted in the Lawsuit and (2) any right, title, or interest in the Storage Properties.

3.3 <u>Represented by Own Counsel and Professionals</u>. That they have been represented by legal counsel and any other professionals of their own choice, they have had the benefit of such counsel's and any other professional's advice, and they have relied solely upon their own judgement and the advice of legal counsel and other professionals retained directly by them, and of their own choice, with respect to the Lawsuit and the negotiation, terms, effect, and execution of this Settlement Agreement, and any related tax or other consequences.

3.4 <u>Settlement Agreement Read and Understood</u>. That, with the benefit of such professional advice of their own choice, and before executing this Settlement Agreement, they read this Settlement Agreement in its entirety and became fully informed of the terms, contents, agreements, and effects of this Settlement Agreement, and they fully understand and voluntarily accept such terms, contents, agreements and effects.

3.5 <u>Free Negotiation and No Reliance or Duress</u>. That this Settlement Agreement has been freely negotiated between the Parties, and that this Settlement Agreement is entered into voluntarily and without any duress.

3.6 <u>Entire Agreement</u>. That this Settlement Agreement sets forth the entire agreement of the Parties with respect to the settlement of the Lawsuit, and no verbal promises, representations, warranties or other agreements have been made or have been relied upon which do not expressly appear within the terms of this Settlement Agreement.

3.7 <u>Entire Consideration</u>. That they understand and agree the Consideration recited in this Settlement Agreement is all of the consideration provided or to be provided in exchange for this Settlement Agreement, and that the receipt and sufficiency of such Consideration is acknowledged and confessed.

3.8 <u>No Other Litigation or Claim</u>. That, other than in the Lawsuit, they have not filed any lawsuit or asserted any claim or cause of action in any court, in

any forum, against one or more of the releasees they have released in this Settlement Agreement arising from the matters at issue in the Lawsuit.

## 4.0   CONSIDERATION.

The Parties have agreed that, in addition to the releases in Sections 5, 6, and 7, the following independent items will serve as consideration (the "Consideration" for this Settlement Agreement:

4.1   Effective June 18, 2018, the sum of One Hundred Fifty Thousand and No/100 Dollars ($150,000.00) (the "Addition to Principal") will be added to the principal amount owed by Mansfield under the November 22, 2017 Promissory Note (as modified and/or amended pursuant to this Settlement Agreement).

4.2   On or before 5:00 PM Pacific Time on July 13, 2018, Mansfield will pay Pender by wire transfer the total sum of Two Hundred Fifty-Five Thousand and No/100 Dollars ($255,000.00) (the "Accrued Interest Payment").  In the event that Mansfield does not make such wire transfer payment by 5:00 PM Pacific Time on July 13, 2018, the sum of Two Hundred Fifty-Five Thousand and No/100 Dollars ($255,000.00) will be added to the principal amount of the November 22, 2017 Promissory Note (as modified and/or amended pursuant to this Settlement Agreement) effective as of June 18, 2018.  This shall be in addition to any other sums added to the Promissory Note pursuant to this Settlement Agreement.

4.3   Effective July 1, 2018, the additional sum of Sixty-Seven Thousand Five Hundred Ninety-Three and 63/100 Dollars ($67,593.63) (the "July Interest Payment") shall be added to the principal balance of the Promissory Note (as modified and/or amended pursuant to this Settlement Agreement).  This shall be in addition to any other sums added to the Promissory Note pursuant to this Settlement Agreement.

4.4   On the same day this Settlement Agreement is signed, Pender and Mansfield and the guarantors of the Promissory Note will sign the Loan Modification attached as Exhibit A, which will incorporate the items specified in Sections 4.1, 4.2, and 4.3 above.

4.5   Mansfield expressly agrees that a term of this Settlement Agreement requires that a lockbox account be set up that complies with the terms of the Loan Documents.  Mansfield agrees that it must instruct its credit card processor to deposit all funds directly into the lockbox account, which instruction shall not be modified or withdrawn without Pender's prior written consent.  Mansfield agrees that all funds for rent or other fees and charges that are received by Mansfield or its agents outside of the lockbox account will be immediately forwarded to the lockbox

**Confidential Full and Final Compromise Settlement Agreement**

account for deposit. Mansfield acknowledges that Pender has proposed that the lockbox account be set up using Exhibits B-1 and B-2, which are modified versions of documents provided by Mansfield related to a different loan. Within three days of the execution of this Settlement Agreement, Mansfield will provide Pender a complete list of all objections to Exhibits B-1 and B-2 and the full reasons for such objections. If the parties are unable to reach an agreement on the lockbox account within seven days of the execution of this Settlement Agreement, the parties will request the Court in which the Lawsuit is pending to resolve the dispute. Mansfield acknowledges and agrees that it is required to make all payments due under the terms of the Loan Documents whether or not a lockbox account has been setup. Mansfield further acknowledges and agrees that it has already received wire transfer instructions from Pender that may be used for any and all payments due under the terms of the Loan Documents.

4.6     On the same day this Settlement Agreement is signed, Janice Ruth Reynolds, in order to eliminate any homestead claim she may have, will sign a Special Warranty Deed transferring all of her right, title, and interest in the Storage Properties to Mansfield effective as of November 1, 2017. The Special Warranty Deed shall be in the form attached to this Settlement Agreement as Exhibit C. After executing the Special Warranty Deed and delivering it to Pender, Janice Ruth Reynolds agrees not to claim any ownership, right, title, or interest in the Storage Properties, including but not limited to any claim of homestead, at any time after the Effective Date of this Settlement Agreement.

4.7     Pender will not proceed with its foreclosure sale of the Storage Properties that was posted for July 3, 2018.

4.8     Upon execution of the Settlement Agreement, the Loan Modification, and the Special Warranty Deed, the parties will file a Joint Motion to Dismiss the Lawsuit and Order of Dismissal in the form attached as Exhibit D.

## 5.0     RELEASE BY PENDER.

5.1     In exchange for the Consideration, Pender does hereby FULLY AND FINALLY RELEASE, ACQUIT, and FOREVER DISCHARGE Mansfield and Reynolds from any and all Claims asserted in the Lawsuit. This release expressly does not apply to any claim by Pender for breach of this Settlement Agreement, including any claim for breach of any express warranty made in this Settlement Agreement. This release expressly does not apply to any future claim by Pender for a breach of or default under the Loan Documents that occurs after execution of this Settlement Agreement.

## 6.0     RELEASE BY MANSFIELD

**Confidential Full and Final Compromise Settlement
Agreement**

6.1    In exchange for the Consideration, Mansfield does hereby FULLY AND FINALLY RELEASE, ACQUIT, and FOREVER DISCHARGE Pender from any and all Claims asserted in the Lawsuit.  This release expressly does not apply to any claim by Mansfield for breach of this Settlement Agreement, including any claim for breach of any express warranty made in this Settlement Agreement. This release expressly does not apply to any future claim by Mansfield for a breach of or default under the Loan Documents that occurs after execution of this Settlement Agreement.

## 7.0    RELEASE BY REYNOLDS

7.1    In exchange for the Consideration, Reynolds does hereby FULLY AND FINALLY RELEASE, ACQUIT, and FOREVER DISCHARGE Pender from any and all Claims asserted in the Lawsuit.  This release expressly does not apply to any claim by Reynolds for breach of this Settlement Agreement, including any claim for breach of any express warranty made in this Settlement Agreement.

## 8.0    ADDITIONAL    TERMS,    CONDITIONS,    AGREEMENTS,    AND OBLIGATIONS.

8.1    <u>Unjustifiable Reliance</u>.  Any reliance on any verbal or other promise, representation, warranty or other oral or written agreement made or allegedly made prior to the effective date of this Settlement Agreement, which does not appear within the express terms of this Settlement Agreement, shall be deemed unjustifiable reliance.

8.2    <u>Acknowledgements, Waivers, and Assumptions of Risk</u>.  The Parties acknowledge and agree that the releases set forth above include general releases. The Parties expressly waive and assume the risk of any and all claims for damage(s) that may exist as of the effective date of this Settlement Agreement, but of which they do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect their decision to enter into this Settlement Agreement.  The Parties further acknowledge and agree that they have accepted the Consideration in a full and complete compromise and settlement of all matters involving disputed issues of law and fact, and that each Party assumes the risk that the facts or law may be other than it believes.

8.3    <u>No Admissions</u>.  It is acknowledged, understood, and agreed by the Parties that this settlement and this Settlement Agreement are in compromise and settlement of uncertain, doubtful, and disputed claims and causes of action, and that by entering into this Settlement Agreement, by any of the terms of this Settlement Agreement and by any act or communication related to the foregoing,

and/or otherwise, the Parties do not admit any liability of any kind or nature, which is expressly denied, and do not admit any prejudicial fact.

8.4 <u>Additional Documents</u>. The Parties agree to cooperate fully to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement.

8.5 <u>Full and Final Settlement</u>. The Parties respectively acknowledge and agree that the Consideration is accepted in full and final settlement of all Claims that existed as of June 18, 2018, including but not limited to all claims asserted or which could have been asserted in the Lawsuit.

8.6 <u>Parties Bound</u>. This Settlement Agreement shall be binding upon, and inure to the benefit of the Parties and their respective past, present and future predecessors, successors, parent and subsidiary corporations, affiliates, executors, heirs, and assigns.

8.7 <u>Modification and Amendment</u>. This Settlement Agreement may not be amended or modified except by written instrument signed by all of the Parties, and the Parties agree that this provision may not be waived except in writing signed by the Party affected.

8.8 <u>Legal Fees, Costs, and Expenses</u>. The Parties shall bear their own attorneys' fees, costs, and expenses in connection with the Lawsuit, the claims asserted in the Lawsuit, and the actions of their own counsel in connection with the Lawsuit, this Settlement Agreement, and the matters and documents referred to herein.

8.9 <u>Choice of Law</u>. This Settlement Agreement shall be governed by, construed, and interpreted in accordance with the laws of the State of Texas, without regard to principles of conflicts of law.

8.10 <u>Joint Drafting Effort</u>. This Settlement Agreement shall be deemed negotiated and drafted through the joint efforts of the respective attorneys for the Parties. This Settlement Agreement shall not be interpreted against any of the Parties as the drafter and the doctrine of *contra proferentum* shall not apply.

8.11 <u>Multiple Originals</u>. This Settlement Agreement may be executed in one or more counterparts each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Signatures by facsimile transmission or other electronic transmission shall be acceptable and binding upon the Parties.

8.12    <u>Severability</u>.  If any provision of this Settlement Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable for any reason, whether on its face or as applied, the remaining provisions shall remain in full force and effect.  In that event, the Parties shall cooperate in good faith to replace the provision held to be illegal, invalid, or unenforceable in a manner that preserves and furthers to the fullest extent possible the Parties' intent as expressed in this Settlement Agreement.

8.13    <u>Loan Document Survival.</u>    Notwithstanding any provision of this Settlement Agreement, the Parties acknowledge that the Loan Documents, as defined in Exhibit A, remain unchanged and in full force and effect except for those changes reflected in Exhibit A.

EXECUTED in multiple parts on the date(s) indicated below.

**PENDER CAPITAL ASSET BASED LENDING FUND, LP**

By: _____

Zach Murphy
Managing Director

Date: ____7 -13 - 2018_____

THE STATE OF _____ §
                                §
COUNTY OF _____ §

BEFORE ME, the undersigned authority, on this day personally appeared Zach Murphy, Managing Director of Pender Capital Asset Based Lending Fund, LP, known by me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he has read the entire instrument and has executed the same for the purposes therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE on this _____ day of _____, 2018.

_____

Notary Public in and for the State of _____
_____

_____
(Printed Name of Notary)

My Commission Expires:_____

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**  CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California  )

County of _Orange_ )

On _7/13/18_ before me, _Hannah R. Murphy, notary_,

*Date*                                    *Here Insert Name and Title of the Officer*

personally appeared _Zachary Murphy_

*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

HANNAH R. MURPHY
Commission # 2134438
Notary Public - California
Orange County
My Comm. Expires Nov 20, 2019

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Hannah R. Murphy_

*Signature of Notary Public*

*Place Notary Seal Above*

━━━━━━━━━━ **OPTIONAL** ━━━━━━━━━━

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____ Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Partner — ☐ Limited ☐ General

☐ Individual ☐ Attorney in Fact

☐ Trustee ☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

_____

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Partner — ☐ Limited ☐ General

☐ Individual ☐ Attorney in Fact

☐ Trustee ☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

_____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

MANSFIELD BOAT AND RV STORAGE, L.L.C.

By: _____

Printed Name: _Larry Reynolds_

Title: _CFO_

Date: _____

THE STATE OF _____ §
§
COUNTY OF _____ §

BEFORE ME, the undersigned authority, on this day personally appeared ___ _Larry Reynolds, CFO_ of Glasturno, Inc. known by me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he has read the entire instrument and has executed the same for the purposes therein expressed and in the capacity therein stated.

GIVEN, UNDER MY HAND AND SEAL OF OFFICE on this _12_ day of _JULY_, 2018.

LISAMARIE AROCHA
Notary Public, State of Texas
Comm. Expires 01-10-2021
Notary ID 126515280

Notary Public in and for the State of _TEXAS_

_Lisamarie Arocha_
(Printed Name of Notary)

My Commission Expires: _1/10/2021_

Page **10** of 11
**Confidential Full and Final Compromise Settlement
Agreement**



**JANICE RUTH REYNOLDS**

Janice Reynolds

Date: 7-12-18

THE STATE OF _Alaska_ §
§
COUNTY OF _____ §

     BEFORE ME, the undersigned authority, on this day personally appeared Janice Ruth Reynolds known by me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she has read the entire instrument and has executed the same for the purposes therein expressed and in the capacity therein stated.

     GIVEN UNDER MY HAND AND SEAL OF OFFICE on this _12_ day of _July_, 2018.

Notary Public in and for the State of _Alaska_

Kira Polillo
(Printed Name of Notary)

My Commission Expires: _6/27/22_

EXHIBIT A

# PROMISSORY NOTE MODIFICATION AGREEMENT

**Date:** as of June 18, 2018

**Borrower**: MANSFIELD BOAT AND RV STORAGE L.L.C.

**Lender**: PENDER CAPITAL ASSET BASED LENDING FUND I, LP

**Note**: PROMISSORY NOTE dated November 22, 2017 in the original principal amount of $6,700,000.00.

FOR VALUE RECEIVED, Borrower and Lender hereby agree to amend the Note as follows:

1. The principal sum in the header and first paragraph of the Note shall be US **$6,917,593.63** and **SIX MILLION NINE HUNDRED SEVENTEEN THOUSAND FIVE HUNDRED NINETY-THREE AND 63/100 DOLLARS (US $6,917,593.63)**, respectively.

2. The definition of Defined Term "**Default Rate**" in paragraph 1(a) shall be deleted in its entirety and replaced with the following: "An annual interest rate equal to the maximum annual interest rate allowed by Texas law."

3. The phrase "a late charge equal to **ten percent (10%)** of such installment or other amount due" in paragraph 7(a) shall be deleted and replaced with the following: "a late charge equal to **five percent (5%)** of such installment or other amount due".

4. The next Payment Due Date shall be August 1, 2018.

5. The second sentence of paragraph 3(d) of the Note shall be deleted in its entirety and replaced with the following: "The amount of the monthly installment of interest only payable pursuant to this Section 3(d) on a Payment Due Date shall be **SIXTY NINE THOUSAND ONE HUNDRED EIGHTEEN AND 29/100 DOLLARS (US $69,118.29)** (assuming no principal reduction payments have been made and no other changes to the outstanding principal balance have occurred)."

6. If Borrower does not pay Lender Two Hundred Fifty-Five Thousand and No/100 Dollars ($255,000.00) by July 13, 2018 at 5:00 PM Pacific Daylight Time in accordance with the terms of the June 18, 2018 Settlement Agreement between Borrower, Lender, and Janice Ruth Reynolds, that amount (plus additional accrued interest) shall be added to the principal

balance of the Note, which shall result in the replacement of paragraphs 1 and 5 of this Loan Modification with a. and b. below, respectively.

a. The principal sum in the header and first paragraph of the Note shall be US **$7,173,697.72** and **SEVEN MILLION ONE HUNDRED SEVENTY-THREE THOUSAND SIX HUNDRED NINETY-SEVEN AND 72/100 DOLLARS (US $7,173,697.92)**, respectively.

b. The second sentence of paragraph 3(d) of the Note shall be deleted in its entirety and replaced with the following: "The amount of the monthly installment of interest only payable pursuant to this Section 3(d) on a Payment Due Date shall be **SEVENTY-ONE THOUSAND SIX HUNDRED SEVENTY-SEVEN AND 20/100 DOLLARS (US $71,677.20)** (assuming no principal reduction payments have been made and no other changes to the outstanding principal balance have occurred)."

Except as modified above, all other provisions of the Note, and the loan evidenced thereby (the "**Loan**") and any other documents securing or relating to the Note and the Loan (the "**Loan Documents**") remain unchanged and in full force and effect. All security given for the Loan and all guarantees of the Note and the Loan as modified hereby shall continue in full force and effect notwithstanding the modifications made herein, and each of Larry J. Reynolds, Trustee of the Poyner Wilkins Generational Trust, and Larry J. Reynolds, an individual, as guarantors, hereby acknowledge the same by their signature set forth below. Borrowers and Guarantors warrant and represent to Lender that they have full right, power and authority to enter into this agreement and to perform all its obligations hereunder, and that all information and materials submitted to Lender in connection with this modification are accurate and complete. Borrowers and Guarantors reaffirm their obligation to pay the Loan in full and reaffirm the validity and enforceability of the Loan Documents, as modified herein, without set-off, counterclaim or defense.

**BORROWERS:**

**MANSFIELD BOAT AND RV STORAGE L.L.C.**

By:_____
    Larry J. Reynolds, Member

2

**GUARANTORS:**

**THE POYNER WILKINS
GENERATIONAL TRUST**


By:_____
    Larry J. Reynolds, Trustee


**LARRY J. REYNOLDS**


_____



**LENDER:**

**PENDER CAPITAL ASSET BASED
LENDING FUND I, LP**


By:_____
Name: Zach Murphy
Title: Managing Director

3

EXHIBIT B-1



## DEPOSIT ACCOUNT CONTROL AGREEMENT

### (Hard Lockbox)

11346359 v2

This **Deposit Account Control Agreement** (this "Agreement") is made as of July **[__]**, 2018, by and among **[To-Be-Formed SM LLC]**, a Delaware limited liability company ("Borrower"), **Pender Capital Asset Based Lending Fund I, LP**, a Delaware limited partnership ("Lender"), and **Wells Fargo Bank, National Association** ("Bank"), and sets forth the rights and obligations of the parties with respect to the DACA Account (defined below).

1. **Establishment of Account.**

   a. Borrower and Bank acknowledge and confirm that Borrower has established with Bank an account with account number **[_____]** (the "DACA Account"), and that the DACA Account is subject to lockbox services provided by Bank in accordance with Section 7 of this Agreement and Bank's standard lockbox policies and procedures.

   b. The DACA Account shall be in the name of Borrower for the benefit of Lender (or in such other name as Lender may direct in writing and agreed to by Bank).

   c. Each account designated as a DACA Account includes, for purposes of this Agreement, and without the necessity of separately listing subaccount numbers, all subaccounts presently existing or hereafter established for deposit reporting purposes and integrated with the DACA Account by an arrangement in which deposits made through subaccounts are posted only to the DACA Account.

   d. The DACA Account shall at all times have a minimum balance of $5,000 (the "Minimum Balance").

   e. The DACA Account is an Eligible Account. As used herein, (i) "Eligible Account" shall mean a separate and identifiable account from all other funds held by the holding institution that is either (i) an account or accounts maintained with a federal or state-chartered depository institution or trust company which complies with the definition of Eligible Institution or (ii) a segregated trust account or accounts maintained with a federal or state chartered depository institution or trust company acting in its fiduciary capacity which, in the case of a state chartered depository institution or trust company is subject to regulations substantially similar to 12 C.F.R. §9.10(b), having in either case a combined capital and surplus of at least $50,000,000 and subject to supervision or examination by federal and state authority. An Eligible Account will not be evidenced by a certificate of deposit, passbook or other instrument and (ii) "Eligible Institution" shall mean a depository institution or trust company insured by the Federal Deposit Insurance Corporation the short term unsecured debt obligations or commercial paper of which are rated at least "A-1" by Standard & Poor's Ratings Group ("S&P"), "P-1" by Moody's Investors Service, Inc. ("Moody's"), and "F-1" by Fitch, Inc. ("Fitch") in the case of accounts in which funds are held for thirty (30) days or less or, in the case of Letters of Credit or accounts in which funds are held for more than thirty (30) days, the long term unsecured debt obligations of which are rated at least "A" by Fitch and S&P and "A2" by Moody's.

2. **Lender's Interest in DACA Account.** Borrower represents that it has granted, or intends to grant, a security interest in the DACA Account to Lender. Borrower hereby confirms the security interest

EXHIBIT B-1

granted, or to be granted, by Borrower to Lender in all of Borrower's right, title and interest in and to the DACA Account and all sums now or hereafter on deposit in or payable or withdrawable from the DACA Account (the "DACA Account Funds", which includes, if applicable, all financial assets, security entitlements, investment property, and other property and the proceeds thereof now or at any time hereafter held in the DACA Account). Lender hereby appoints Bank as agent for Lender solely for the purpose of perfecting the security interest of Lender in the DACA Account and the DACA Account Funds.

3. **Lender Control.** Except as otherwise provided in this Agreement, Borrower agrees that the DACA Account and the DACA Account Funds are subject to the sole dominion, control and discretion of Lender. Bank, Lender and Borrower each agrees that Bank will comply with instructions given to Bank by Lender directing disposition of funds in the DACA Account (collectively "Disposition Instructions") without further consent by Borrower or any other person. Except as otherwise required by law, Bank will not agree with any third party to comply with instructions for disposition of funds in the DACA Account.

4. **No Access to DACA Account.** Borrower acknowledges and agrees that (a) subject to the terms hereof, neither Borrower nor any other person claiming on behalf of, or through, Borrower shall have any right, title or interest, whether express or implied, in the DACA Account or to withdraw or make use of any amounts from the DACA Account, and (b) unless required by applicable law, Borrower shall not be entitled to any interest on amounts held in the DACA Account.

5. **Disbursements from DACA Account.**

   a. Unless otherwise instructed by Lender in writing in accordance with Section 3 above, Bank will transfer the full amount of the collected and available balance in the DACA Account (after deduction of the Minimum Balance and other amounts permitted under Section 6 hereof), on each Business Day by wire transfer (or other means in Bank's sole discretion) of immediately available funds to the following account of Lender or such other account specified by Lender in writing:

   > Bank Name: [_____]
   > Bank Address: [_____]
   > ABA Number: [_____]
   > Account Number: [_____]
   > Account Name: [_____]

   "Business Day" means any day on which Bank is open to conduct its regular banking business, other than a Saturday, Sunday or public holiday.

   b. Unless Bank separately agrees in writing to the contrary, Bank will have no obligation to disburse funds or assets under this Agreement other than by automatic standing wire. Any disposition of funds or assets which Bank makes pursuant to this Agreement is subject to Bank's standard policies, procedures and documentation governing the type of disposition made; provided, however, that in no circumstances will any such disposition require Borrower's consent. Furthermore, Bank will have a reasonable opportunity to act upon any instructions (including Disposition Instructions) provided pursuant to this Agreement.

6. **Partial Subordination of Bank's Rights.** Bank hereby subordinates to the security interest of Lender in the DACA Account (i) any security interest which Bank may have or acquire in the DACA Account, and (ii) any right which Bank may have or acquire to set off or otherwise apply any DACA Account Funds against the payment of any indebtedness from time to time owing to Bank from Borrower; provided, however, that, Bank retains the right to set off against and to charge the DACA Account for (A) any Bank Fees (as defined in Section 9), (B) all items deposited in and credited to such account and subsequently returned unpaid or with respect to which Bank fails to receive final settlement and (C) all

EXHIBIT B-1

items deposited in and credited to such account in error. If amounts in the DACA Account are insufficient to fully reimburse Bank for such amounts, Borrower agrees to pay such deficiency to Bank in immediately available funds, without setoff or counterclaim, within five (5) calendar days after demand of Bank.

7. **Bank Obligations with respect to DACA Account.**

   a. To the extent items deposited to a DACA Account have been received in one or more post office lockboxes maintained for Borrower by Bank (each a "Lockbox") and processed by Bank for deposit, Borrower acknowledges that Borrower has granted Lender a security interest in all such items (the "Remittances"). Lender alone will have the right and ability to so instruct Bank regarding the receipt, processing or deposit of Remittances. Borrower and Lender acknowledge and agree that Bank's operation of each Lockbox, and the receipt, retrieval, processing and deposit of Remittances, will at all times be governed by Bank's Master Agreement for Treasury Management Services and the relevant lockbox service description.

   b. The parties agree that items deposited in the DACA Account shall be deemed to bear the valid and legally binding endorsement of the payee and to comply with all of Bank's requirements for the supplying of missing endorsements, now or hereafter in effect. As between Borrower and Lender, any deposit made by or on behalf of Borrower into the DACA Account shall be deemed deposited into the DACA Account when the funds in respect of such deposit shall become collected funds.

   c. Any item deposited by or on behalf of Borrower in the DACA Account which is returned for insufficient or uncollected funds will be re-deposited by Bank one time.

8. **Balance Reports and Bank Statements.** Borrower agrees that it shall, at its sole cost and expense, make available to Lender information directly related to the DACA Account, including granting Lender online access to Borrower's treasury reporting with Bank (if any). Bank will, at the telephone or written request of Lender, provide Lender such information by a transmission method determined by Bank, in Bank's sole discretion, which may include granting Lender online access to Borrower's treasury reporting (if any), and Borrower consents to the provision of such information to Lender.

9. **Bank Fees.** Borrower agrees to pay all Bank's fees and charges for the maintenance and administration of the DACA Account and for the treasury management and other account services provided with respect to the DACA Account and any Lockboxes (collectively, the "Bank Fees"), including, but not limited to, the fees for (a) treasury reporting (including online access thereto) provided on the DACA Account, (b) funds transfer services received with respect to the DACA Account, (c) lockbox processing services, (d) funds advanced to cover overdrafts in the DACA Account (but without Bank being in any way obligated to make any such advances), (e) duplicate bank statements, (f) any treasury management service(s) that may be required to block the DACA Account as contemplated hereunder, and (g) the Acceptance Fee and other fees and expenses described in Exhibit A attached hereto, in each case, to the extent applicable. The Bank Fees will be paid by Bank debiting the DACA Account on the Business Day that the Bank Fees are due, without notice to Lender or Borrower. If there are not sufficient funds in the DACA Account to cover fully the Bank Fees on the Business Day Bank attempts to debit them from the DACA Account, such shortfall or the amount of such Bank Fees will be paid by Borrower to Bank, without setoff or counterclaim, within five (5) calendar days after demand from Bank.

10. **Account Documentation.** Except as specifically provided in this Agreement, Lender and Borrower agree that the DACA Account will be subject to, and Bank's operation of the DACA Account will be in accordance with, the terms of Bank's applicable deposit account agreement and other related service documentation governing the DACA Account (the "Account Documentation"). Borrower agrees, upon Bank's request, to promptly execute and deliver the Account Documentation to Bank. For the avoidance of doubt, the parties hereto acknowledge and agree that pursuant to the Account Documentation, the DACA Account may be subject to Bank's sweep product services. The parties agree that, in the event of

EXHIBIT B-1

a conflict between this Agreement and the Account Documentation with respect to the DACA Account, this Agreement shall control.

11. **Legal Compliance.**

    a. If Bank at any time receives notice of the commencement of a bankruptcy case or other insolvency or liquidation proceeding by or against Borrower, Bank will continue to comply with its obligations under this Agreement, except to the extent that any action required of Bank under this Agreement is prohibited under applicable bankruptcy laws or regulations or is stayed pursuant to the automatic stay imposed under the United States Bankruptcy Code or by order of any court or agency.

    b. Bank will comply with any legal process, legal notice or court order it receives in relation to the DACA Account if Bank determines in its sole discretion that the legal process, legal notice or court order is legally binding on it.

    c. If at any time Bank, in good faith, is in doubt as to the action it should take under this Agreement, Bank shall have the right (i) to commence an interpleader in the United States District Court for the Southern District of New York, and/or (ii) to take no further action, except, in each case, in accordance with joint instructions from Lender and Borrower or in accordance with the final order of the court in such action.

12. **Indemnification.** Borrower will indemnify, defend and hold harmless Bank and its officers, directors, employees, and agents (collectively, the "Indemnified Parties") from and against any and all claims, demands, losses, liabilities, damages, costs and expenses (including reasonable attorneys' fees) (collectively "Losses and Liabilities") Bank may suffer or incur as a result of or in connection with (a) Bank complying with any binding legal process, legal notice or court order referred to in the immediately preceding Section of this Agreement, (b) Bank following any instruction or request of Lender, including but not limited to any Disposition Instructions, or (c) Bank complying with its obligations under this Agreement, except, in each case, to the extent such Losses and Liabilities are directly caused by Bank's gross negligence or willful misconduct. For avoidance of doubt, Losses and Liabilities are not and will not be considered to be Bank Fees.

13. **Termination.** This Agreement may be terminated by Lender or Bank at any time by either of them giving thirty (30) calendar days prior written notice of such termination to the other parties to this Agreement at their contact addresses specified after their signatures to this Agreement; provided, however, that this Agreement may be terminated (i) immediately upon prior written notice from Bank to Borrower and Lender (x) should Borrower fail to make any payment when due to Bank from Borrower under the terms of this Agreement or (y) should Bank close the DACA Account pursuant to applicable law, regulation or policy, or (ii) immediately upon prior written notice from Lender to Bank on termination or release of Lender's security interest in the DACA Account; provided that any notice from Lender under clause (ii) of this sentence must contain Lender's acknowledgement of the termination or release of its security interest in the DACA Account. Borrower's payment obligations hereunder, as well as the indemnifications made, and the limitations on the liability of Bank accepted by Borrower and Lender under this Agreement will continue after the termination of this Agreement with respect to all the circumstances to which they are applicable, existing or occurring before such termination, and any liability of any party to this Agreement, as determined under the provisions of this Agreement, with respect to acts or omissions of such party prior to such termination will also survive such termination. Upon any termination of this Agreement, Bank will transfer all collected and available balances (less any deductions permitted under Section 6 hereof) in the DACA Account on the date of such termination in accordance with Lender's written instructions.

14. **Modifications, Amendments, and Waivers.** This Agreement may not be modified or amended, or any provision thereof waived, except in a writing signed by all the parties to this Agreement.

EXHIBIT B-1

15. **Notices.**  All notices from one party to another must be in writing, must be delivered to Borrower, Lender and/or Bank at their contact addresses specified after their signatures to this Agreement, or any other address of any party communicated to the other parties in writing, and will be effective on receipt. Any notice sent by a party to this Agreement to another party must also be sent to all other parties to this Agreement.  Bank is authorized by Borrower and Lender to act on any instructions or notices received by Bank if (a) such instructions or notices purport to be made in the name of Lender, (b) Bank reasonably believes in good faith that such instructions are genuine and have been signed or given by an authorized individual, and (c) they do not conflict with the terms of this Agreement as such terms may be amended from time to time, unless such conflicting instructions or notices are supported by a court order.

16. **Successors and Assigns.**  Borrower may not assign or transfer its rights or obligations under this Agreement to any person or entity without the prior written consent of Bank and Lender.  Lender may not assign or transfer its rights or obligations under this Agreement to any person or entity without the prior written consent of Bank, which consent will not be unreasonably withheld; provided, however, that no such consent will be required if Lender transfers its rights and obligations under this Agreement to (i) a transferee to which, by contract or operation of law, Lender transfers substantially all of its rights and duties under the financing or other arrangements between Lender and Borrower, or (ii) if Lender is acting as a representative in whose favor a security interest is created or provided for, a transferee that is a successor representative.  Bank may not assign or transfer its rights or obligations under this Agreement to any person or entity without the prior written consent of Lender, which consent will not be unreasonably withheld or delayed; provided, however, that no such consent will be required if such assignment or transfer takes place as part of a merger, acquisition or corporate reorganization affecting Bank.

17. **Governing Law.**  This Agreement will be governed by and be construed in accordance with the laws of the State of New York, without regard to conflict of laws principles.  This state will also be deemed to be Bank's jurisdiction for purposes of Article 9 of the Uniform Commercial Code as it applies to this Agreement.

18. **Severability.**  To the extent that the terms of this Agreement are inconsistent with, or prohibited or unenforceable under, any applicable law or regulation, they will be deemed ineffective only to the extent of such prohibition or unenforceability, and will be deemed modified and applied in a manner consistent with such law or regulation.  Any provision of this Agreement which is deemed unenforceable or invalid in any jurisdiction will not affect the enforceability or validity of the remaining provisions of this Agreement or the same provision in any other jurisdiction.

19. **Counterparts.**  This Agreement may be executed in any number of counterparts each of which will be an original with the same effect as if the signatures were on the same instrument.  Delivery of an executed counterpart of a signature page of this Agreement by telecopier or electronic image scan transmission (such as a "pdf" file) will be effective as delivery of a manually executed counterpart of the Agreement.

20. **Entire Agreement.**  This Agreement, together with the Account Documentation, contains the entire and only agreement among all the parties to this Agreement and between Bank and Borrower, on the one hand, and Bank and Lender, on the other hand, with respect to (a) the interest of Lender in the DACA Account and DACA Account Funds, and (b) Bank's obligations to Lender in connection with the DACA Account and DACA Account Funds.

21. **Waiver of Jury Trial.**   To the extent permitted by law, the parties hereto hereby waive all rights to a trial by jury in any action or proceeding relating to the DACA Account or this Agreement.

22. **Certain Matters Affecting Bank**.

    a.  Bank may rely and shall be protected in acting or refraining from acting upon any notice, request, consent, order, certificate, report, opinion or document (including, but not limited to,

EXHIBIT B-1

electronically confirmed facsimiles thereof) reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties. Bank shall have no obligation to review or confirm that actions taken pursuant to the foregoing in accordance with this Agreement comply with any other agreement or document to which it is not a party.

b.  The duties and obligations of Bank set forth in this Agreement shall be determined solely by the express provisions of this Agreement. Bank shall not be liable except for the performance for its duties and obligations as are specifically set forth herein. No implied covenants or obligations shall be read into this Agreement against Bank. Bank makes no express or implied representations or warranties with respect to its obligations under this Agreement, except for those expressly set forth herein.

c.  Bank will not be liable to Borrower, Lender or any other person for any Losses and Liabilities caused by (i) circumstances beyond Bank's reasonable control (including, without limitation, computer malfunctions, interruptions of communication facilities, labor difficulties, acts of God, wars, or terrorist attacks) or (ii) any other circumstances, except, in each case, to the extent that such Losses and Liabilities are directly caused by Bank's gross negligence or willful misconduct.

D.  **IN NO EVENT WILL BANK BE LIABLE FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, WHETHER OR NOT THE LIKELIHOOD OF SUCH DAMAGES WAS KNOWN TO BANK, AND REGARDLESS OF THE FORM OF THE CLAIM OR ACTION, OR THE LEGAL THEORY ON WHICH IT IS BASED.**

[SIGNATURE PAGES FOLLOW]

EXHIBIT B-1

This Agreement has been signed by the duly authorized officers or representatives of Borrower, Lender and Bank on the date first written above.

**[To-Be-Formed SM LLC], a Delaware limited liability company, as Borrower**

**TIN:  47-4112361**

By: _____

Name:  [_____] _____

Title:  [_____] _____

**Address for Notices:**

**[To-Be-Formed SM LLC]**
**[_____]**
**Attention:**

**With a copy to: Law Offices of Glenn R. Snyder**
**421 E. Airport Freeway, Suite 115**
**Irving, TX 75062**
**Attention: Glenn R. Snyder**

EXHIBIT B-1

**Pender Capital Asset Based Lending Fund I,
LP, a Delaware limited partnership**

By: _____

Name:  Zachary W. Murphy

Title:  Manager

**Address for Notices:**

**Pender Capital Asset Based Lending Fund I, LP
11766 Wilshire Blvd., Suite 460
Los Angeles, CA  90025
Attention:  Zachary W. Murphy**

**With a copy to:**

**Benesch, Friedlander, Copan & Aronoff LLP
222 Delaware Ave., Suite 801
Wilmington, DE  19801
Attention:  Michael J. Barrie, Esq.**

EXHIBIT B-1

**WELLS FARGO BANK, NATIONAL ASSOCIATION, as Bank**

By: _____

Name: _____

Title: _____

**Address for Notices:**

1901 Harrison Street, 2nd Floor
Oakland, CA 94612
_____

Attn:  CMS Cash Management
_____

Fax No.:  (866) 359-5954
_____

EXHIBIT B-1

**EXHIBIT A**
**FEES**

**Acceptance Fee** ............................................................................**$1,000**

The Acceptance Fee is a one-time fee payable upon execution of this Agreement and includes review of this Agreement and supporting documentation.

**DACA Maintenance Fee** ..............................................................**$275/month**

The monthly DACA Maintenance Fee will be assessed upon the opening of the DACA Account and will continue thereafter on a monthly basis for so long as the DACA Account remains open. The DACA Account Maintenance Fee is subject to change in Bank's discretion.

**Account/Treasury Management Services Fees** .........................**Amount varies**

These fees will vary based upon usage/volume and include all account and treasury management services fees incurred on a monthly basis in accordance with Bank's standard fees for such services then in effect, including, without limitation, the following: treasury account maintenance fee, funds transfer services fees, credit/disbursement fees, account analysis and statement fees, and treasury reporting and online access fees.

**Out-of-Pocket Expenses** ..............................................................**As incurred**

Out-of-pocket expenses, including without limitation expenses of foreign depositaries, stationery, overnight courier, and messenger costs, will be billed at Bank's cost when incurred.

EXHIBIT B-2

## CASH MANAGEMENT AGREEMENT

THIS CASH MANAGEMENT AGREEMENT (this "**Agreement**") is made as of July [__], 2018, by and among **Pender Capital Asset Based Lending Fund I, LP**, a Delaware limited partnership, having an address at 11766 Wilshire Blvd., Suite 460 Los Angeles, CA 90025 (together with its successors and assigns, "**Lender**"), **[TO-BE-FORMED SM LLC]**, a Delaware limited liability company, having an address at [_____] ("**Borrower**"), and **ARGUS PROFESSIONAL STORAGE MANAGEMENT, LLC**, a Colorado limited liability company, having its principal place of business at **[3434 E. Kleindale Road, Suite E, Tucson, Arizona 85716]** ("**Manager**").

Recitals

A.	Pursuant to that certain Business Loan Agreement (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**") of November 22, 2017 between Borrower and Lender, Lender has made a loan (the "**Loan**") to Borrower in the principal amount of Six Million Seven Hundred Thousand and No/100 Dollars ($6,700,000.00).

B.	The Loan is secured by, among other things, that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Security Agreement**") of even date with the Loan Agreement, which grants to Lender, among other things, a first lien on certain real property encumbered thereby (the "**Property**") and an assignment of all Rents arising with respect to the Property.

C.	Borrower and Manager have entered into that certain **[Management Agreement]** with respect to the Property, dated as of **[_____], 20[__]**, pursuant to which Manager has agreed to manage the Property.

D.	Pursuant to the terms of that certain Deposit Account Control Agreement (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**DACA**") of even date herewith made by and among Borrower, Lender and Bank (as defined below), Borrower has established with Bank the DACA Account (as defined in the DACA).

E.	In order to fulfill certain of Borrower's obligations under the Note, the Loan Agreement and the other Related Documents, and as required by that certain Confidential Full and Final Compromise Settlement Agreement effective June 18, 2018, by and between, among other parties, Borrower and Lender, Borrower and Manager have agreed that all Rents will be deposited directly into the DACA Account, and that such Rents will be disbursed from the DACA Account to Lender or its Servicer to be applied in accordance with the terms of this Agreement.

<u>Agreement</u>

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

1.    <u>Defined Terms</u>.

(a)    As used herein, the following capitalized terms shall have the respective meanings set forth below<u>:</u>

(i)    "**Accounts**" means, collectively, the Deposit Account, the Tax and Insurance Subaccount, the Debt Service Subaccount, the Cash Management Servicing Fees Subaccount, and the Excess Cash Subaccount.

(ii)    "**Available Funds**" has the meaning set forth in <u>Section 5(b)</u> hereof.

(iii)    "**Bank**" means Wells Fargo Bank, National Association, a national banking association, or any permitted successor to Bank under the terms of the DACA.

(iv)    "**Business Day**" means any day other than a Saturday, Sunday or any day on which commercial banks in the State of New York or in the state where the Accounts are located are authorized or required to close.

(v)    "**Cash Management Servicing Fees Subaccount**" has the meaning set forth in <u>Section 2(iv)</u>.

(vi)    "**Credit Card Payment Direction Letter**" shall have the meaning ascribed to such term in <u>Section 4(a)</u> hereof.

(vii)    "**DACA Account**" has the meaning set forth in the DACA.

(viii)    "**Debt Service Subaccount**" has the meaning set forth in <u>Section 2(iii)</u> hereof.

(ix)    "**Deposit Account**" has the meaning set forth in <u>Section 2</u> hereof.

(x)    "**Eligible Account**" means an identifiable account which is separate from all other accounts and funds held by the holding institution that is either (a) an account or accounts maintained with a federal or state chartered depository institution or trust company which complies with the definition of Eligible Institution or (b) a segregated trust account or accounts maintained with the corporate trust department of a federal or state chartered depository institution or trust company acting in its fiduciary capacity which, in the case of a federally chartered depository institution or trust company acting in its fiduciary capacity is subject to the regulations regarding fiduciary funds on deposit therein under 12 C.F.R. §9.10(b), and in the case of a state chartered depository institution or trust company, is subject to regulations substantially similar to 12 C.F.R. §9.10(b), having in either case a combined capital surplus of at least $50,000,000.00 and subject to supervision or examination by federal and state authority.

2

An Eligible Account shall not be evidenced by a certificate of deposit, passbook or other instrument.

          (xi)     "**Eligible Institution**" means (a) prior to a Securitization, Regions Bank, (b) a depository institution or trust company insured by the Federal Deposit Insurance Corporation (i) the short term unsecured debt obligations, commercial paper or other short term deposits of which are rated at least "A-1" by S&P, "P-1" by Moody's and "F-1" by Fitch and "R-1 (middle)" by DBRS, in the case of accounts in which funds are held for thirty (30) days or less, or (ii) the long term unsecured debt obligations of which are rated at least "AA" by S&P (or "A-" if the short term unsecured debt obligations are rated at least "A-1" by S&P), "Aa2" by Moody's, and "AA+" by Fitch (or "A-" if the short term unsecured debt obligations are rated at least "F-1" by Fitch) and "AA" by DBRS, in the case of accounts in which funds are held for more than thirty (30) days; provided that after a Securitization only the foregoing ratings requirements of each Rating Agency rating such Securitization shall apply, or (c) an institution for which a Rating Agency Confirmation has been obtained.

          (xii)     "**Event of Default**" has the meaning set forth in Section 9 hereof.

          (xiii) "**Excess Cash Flow**" has the meaning set forth in Section 5(b)(vii) hereof.

          (xiv) "**Excess Cash Subaccount**" has the meaning set forth in Section 2(v) hereof.

          (xv)     "**Monthly Operating Expense Amount**" means the monthly amount payable for operating expenses that are approved by Lender in its sole and absolute discretion and not otherwise paid or reserved for in the Accounts described in Sections 2(i), (iii) and (iv) below, together with other amounts incurred by Borrower in connection with the operation and maintenance of the Property and approved by Lender in writing.

          (xvi)     "**Servicer**" means any servicer selected by Lender in its sole and absolute discretion to service the Loan on Lender's behalf.

          (xvii)   "**Tax and Insurance Monthly Deposit**" means the monthly deposit required under that section of the Loan Agreement titled "Tax and Insurance Impounds." "**Tax and Insurance Subaccount**" has the meaning set forth in Section 2(i) hereof.

          (xviii)  "**Tenant Direction Letter**" has the meaning set forth in Section 4(a) hereof.

     All capitalized terms used but not otherwise defined in this Agreement shall have the same defined meanings set forth in the Loan Agreement or that certain Promissory Note in the original principal amount of $6,700,000 dated November 22, 2017 and made, executed, and delivered by Borrower to Lender (as amended and restated from time to time, the "**Note**").  To the extent that the Loan Agreement and the Note have conflicting definitions, the definitions set forth in the Note shall control.

2.    <u>Establishment of Accounts</u>.    Lender or Servicer, on behalf of Lender, has established an account (the "**Deposit Account**") into which all funds in the DACA Account shall be deposited on a periodic basis as more particularly set forth in the DACA.  Lender or Servicer, on behalf of Lender, shall maintain on a ledger entry basis the following subaccounts of the Deposit Account:

(i)    An account into which Borrower shall deposit, or cause to be deposited, the sums required to be deposited hereunder pursuant to <u>Section 5(a)</u> hereof for the payment of Taxes and Insurance Premiums (the "**Tax and Insurance Subaccount**");

(ii)    Reserved.

(iii)    An account into which Borrower shall deposit, or cause to be deposited, the sums required to be deposited hereunder pursuant to <u>Section 5(a)</u> hereof for the payment of interest accruing at the Default Rate and late payment charges, if any, and Debt Service (the "**Debt Service Subaccount**");

(iv)    An account into which Borrower shall deposit, or cause to be deposited, the sums required to cover the customary and reasonable cash management servicing fees associated with the administration of the Accounts (the "**Cash Management Servicing Fees Subaccount**"); and

(v)    An account into which amounts shall be deposited pursuant to <u>Section 5(b)(vii)</u> hereof to be held by Lender as additional collateral for the Loan (the "**Excess Cash Subaccount**").

3.    <u>Account Names and Characteristics</u>.

(a)    The Accounts shall each be in the name of Borrower for the benefit of Lender or, in the event Lender retains a Servicer to service the Loan, the Accounts shall, at Lender's option, be in the name of Borrower for the benefit of Servicer, as agent for Lender. Each Account shall be maintained as an Eligible Account.  The Accounts shall be assigned the federal tax identification number of Borrower, which number is [47-4112361].  The Accounts shall, at all times during the term of this Agreement, be under the sole dominion and control of Lender, who shall have the sole right to withdraw funds from the Accounts for application in accordance with this Agreement.  Borrower acknowledges and agrees that (i) neither Borrower nor any other party claiming on behalf of, or through, Borrower shall have any right, title or interest, whether express or implied, in the Accounts or to withdraw or make use of any amounts from the Accounts, and (ii) unless required by applicable law, Borrower shall not be entitled to any interest on amounts held in the Accounts.

(b)    The Deposit Account shall at all times have a minimum balance of $5,000 (the "**<u>Minimum Balance</u>**").  If at any time during the term of this Agreement, the balance in the Cash Management Account is less than the Minimum Balance, Borrower shall immediately deposit into the Deposit Account sufficient funds to satisfy the Minimum Balance requirement.

4.      <u>Deposits into DACA Account</u>.

(a)      From and after the date hereof, Borrower and Manager shall cause all Rents to be deposited directly into the DACA Account.  With respect to any tenant having an existing lease with Borrower, within five (5) days from the date hereof, Borrower shall deliver an original written notice to each such tenant in the form of <u>Exhibit A</u> attached hereto (a "**Tenant Direction Letter**"), each instructing such party (A) to remit all payments directly to the DACA Account, and (B) that such instruction may not be rescinded unless and until such party receives from Borrower or Lender a copy of Lender's written consent to such rescission.  With respect to any tenant entering into a lease with Borrower after the date hereof, Borrower shall issue a Tenant Direction Letter to such tenant upon execution of such lease.

(b)      Without limitation of the foregoing, from and after the date hereof, Borrower shall deliver an original written notice to each credit card company with which Borrower or Manager has entered into merchant's or other credit card agreements relating in any manner to the Property in the form of <u>Exhibit B</u> attached hereto (a "**Credit Card Payment Direction Letter**"), each instructing such parties (A) to remit all payments directly to the DACA Account, and (B) that such instruction may not be rescinded unless and until such party receives from Borrower or Lender a copy of Lender's written consent to such rescission.  Lender shall be entitled to redeliver such notices until such party complies therewith.

(c)      If Borrower fails to provide any of the notices set forth in this Section 4 (and without prejudice to Lender's rights with respect to such default), Lender shall have the right, and Borrower hereby grants to Lender a power of attorney (which power of attorney shall be coupled with an interest and irrevocable so long as any portion of the Indebtedness remains outstanding), to sign and deliver a Tenant Direction Letter or a Credit Card Payment Direction Letter.  Without the prior written consent of Lender, neither Borrower nor Manager shall (i) terminate, amend, revoke or modify any Tenant Direction Letter or Credit Card Payment Direction Letter in any manner whatsoever, or (ii) direct or cause any tenant or credit card company to pay any amount in any manner other than as provided in the related Tenant Direction Letter or Credit Card Payment Direction Letter, as applicable.

(d)      Within five (5) days from the date hereof, Borrower shall, and shall cause Manager to, instruct all persons that maintain open accounts with Borrower or Manager with respect to the Property or with whom Borrower or Manager does business on an "accounts receivable" basis with respect to the Property to deliver all payments due under such accounts directly to the DACA Account or a post office address maintained by Bank for processing deposits to the DACA Account, as applicable.  Neither Borrower nor Manager shall direct any such Person to make payments due under such accounts in any other manner.

(e)      If, notwithstanding the provisions of this <u>Section 4</u>, Borrower or Manager receives any Rents or other income from the Property, then such Rent or other income shall (i) be deemed additional security for payment of the Indebtedness and shall be held in trust for the benefit, and as the property, of Lender, (ii) not be commingled with any other funds or property of Borrower or Manager, and (iii) if received by Borrower or Manager notwithstanding the delivery of a Tenant Direction Letter or a Credit Card Payment Direction Letter, as applicable, be deposited in the DACA Account within one (1) Business Day of receipt;

(f) Upon Lender's request from time to time, Borrower shall provide a written statement to Lender itemizing any amounts deposited in the DACA Account by Borrower or Manager for the period covered by Lender's request and such supporting documentation as Lender may reasonably require.

(g) Borrower and Manager represent and warrant that, from and after the date hereof, there shall be no other accounts (other than the DACA Account) maintained by Borrower, Manager or any other Person into which revenues from the ownership and operation of the Property are initially deposited. So long as the Loan shall be outstanding, none of Borrower, Manager or any other Person shall open any other such account for the initial collection of Rent or revenues from the Property.

5. <u>Deposits; Disbursements</u>.

(a) <u>Deposits</u>. Borrower shall make or cause to be made such deposits into the Accounts as may be required by the Loan Agreement and this Agreement.

(b) <u>Disbursements</u>. Lender or Servicer, on behalf of Lender, shall, on each Payment Due Date, withdraw all funds, if any, on deposit in the Deposit Account and disburse such funds (the "**Available Funds**") in the following order of priority (subject in all respects to the terms and provisions of <u>Section 9(b)</u> hereof):

(i) First, the Tax and Insurance Monthly Deposit for the payment of taxes and insurance premiums shall be deposited in the Tax and Insurance Subaccount;

(ii) Second, funds sufficient to pay any interest accruing at the Default Rate and late payment charges, if any, shall be deposited in the Debt Service Subaccount;

(iii) Third, funds sufficient to pay the debt service on the Loan due on such monthly Payment Due Date shall be deposited in the Debt Service Subaccount;

(iv) Fourth, funds sufficient to pay any other amounts then due and payable to Lender shall be deposited in the Debt Service Subaccount;

(v) Fifth, funds sufficient to pay the customary and reasonable cash management servicing fees associated with the administration of the Accounts for the calendar month immediately preceding such Payment Due Date shall be deposited in the Cash Management Servicing Fees Subaccount;

(vi) Sixth, provided that no Event of Default has occurred, funds sufficient to pay the Monthly Operating Expense Amount for the calendar month in which such monthly Payment Due Date occurs shall be disbursed to Borrower pursuant to written instructions provided by Borrower;

(vii) Lastly, all funds remaining after the preceding disbursements (the "**Excess Cash Flow**") shall be deposited in the Excess Cash Subaccount to be held by Lender as additional collateral for the Loan.

6.      <u>Withdrawals</u>.

(a)      <u>Withdrawals From Tax and Insurance Subaccount, Debt Service Subaccount and Cash Management Servicing Fees Subaccount</u>.  Lender shall have the right to withdraw amounts on deposit in the Tax and Insurance Subaccount to pay Taxes and Insurance Premiums on the Property on or before the date such Taxes and/or Insurance Premiums are due and payable in accordance with that section of the Loan Agreement titled Tax and Insurance Impounds.  On each Payment Due Date, Lender shall have the right to withdraw amounts from the Debt Service Subaccount to pay default interest and late charges, if any, and to pay the monthly installment of interest only due under Section 3(d) of the Note.  Lender shall have the right to withdraw amounts from the Cash Management Servicing Fees Subaccount to pay customary and reasonable cash management servicing fees which are due and payable to Servicer in connection with the administration of the Accounts.

(b)      Reserved.

(c)      <u>Disbursement from Excess Cash Subaccount</u>.  All funds in the Excess Cash Subaccount shall be held as additional collateral for the Loan.

(d)      <u>Sole Dominion and Control</u>.  Borrower and Manager acknowledge and agree that the Accounts are subject to the sole dominion, control and discretion of Lender, its authorized agents or designees, including Bank, subject to the terms hereof and the Loan Agreement.  Neither Borrower nor Manager shall have any right of withdrawal with respect to any Account except with the prior written consent of Lender.  Lender shall have the right to control the disposition of funds in the Accounts, subject to the terms of this Agreement and the Loan Agreement, without the further consent of Borrower or Manager or any other Person.

(e)      <u>Deficiencies</u>.  Notwithstanding anything to the contrary herein, Borrower acknowledges that Borrower is responsible for monitoring the sufficiency of funds deposited in the Accounts and that Borrower is liable for any deficiency in available funds, irrespective of whether Borrower has received any account statement, notice or demand from Lender.  If on any monthly Payment Date, the amount of the Available Funds is insufficient to make all of the disbursements described in <u>subsections 5(b)(i)</u> through <u>(vii)</u>, inclusive, Borrower shall deposit into the Deposit Account on or prior to such monthly Payment Date, without the need for any notice or demand from Lender, the amount of such deficiency in immediately available funds.

7.      <u>Termination of Agreement</u>.  This Agreement shall terminate upon the indefeasible repayment in full or defeasance in full of the Loan.  Upon any such termination, the funds remaining in the Accounts shall be disbursed to Borrower after first deducting all amounts then currently due and owing to Lender under the Note, the Loan Agreement and the other Related Documents.

8.      <u>Funds in Accounts as Security for the Loan</u>.  As security for full payment of the Loan and timely performance of Borrower's obligations under this Agreement, the Loan Agreement, the Note, the Security Agreement and the other Related Documents, Borrower hereby pledges, transfers and assigns to Lender, and grants to Lender a continuing security interest in and to the Accounts and all profits and proceeds thereof, which security interest is

7

prior to all other liens.  Borrower agrees to execute, acknowledge, deliver, file or do, at its sole cost and expense, all other acts, assignments, notices, agreements or other instruments as Lender may reasonably require in order to perfect the foregoing security interest, pledge and assignment or otherwise to fully effectuate the rights granted to Lender by this Section.  Other than in connection with the Loan, Borrower has not sold or otherwise conveyed the Accounts.  The Accounts constitute "deposit accounts" within the meaning of the Uniform Commercial Code of the State of Texas.

9.    Default.

(a)    Borrower's and/or Manager's failure to timely and fully perform its obligations under this Agreement shall constitute a default under this Agreement ("**Event of Default**") and also shall constitute an automatic "**Event of Default**" under and as defined in the Note, the Loan Agreement and the other Related Documents, and the occurrence of an "**Event of Default**" under and as defined in the Note, the Loan Agreement or any of the other Related Documents shall constitute an automatic Event of Default under this Agreement.

(b)    Notwithstanding anything to the contrary contained herein, upon the occurrence of an Event of Default under this Agreement, Lender shall have the continuing exclusive control of, and right to withdraw and apply, the funds in the DACA Account and the Accounts to payment of any and all debts, liabilities and obligations of Borrower to Lender pursuant to or in connection with this Agreement, the Note, the Loan Agreement and the other Related Documents, in such order, proportion and priority as Lender may determine in its sole discretion.  Lender's right to withdraw and apply funds in the DACA Account and the Accounts shall be in addition to all other rights and remedies provided to Lender under this Agreement, the Note, the Loan Agreement and the other Related Documents and at law or in equity as a result of Borrower's default.  Lender's continuation of payments from the Accounts when and as contemplated by this Agreement shall not be deemed Lender's waiver or a cure of any default by Borrower.

(c)    Without in any way limiting any of Lender's other rights and remedies hereunder or under the Note, the Loan Agreement or the other Related Documents, upon the occurrence of an Event of Default under this Agreement, Borrower hereby acknowledges and agrees that Lender shall have the right, at its option, to deliver written notice to Bank directing Bank to disburse all available funds then and thereafter on deposit in the DACA Account to an account designated by Lender (which account may, in Lender's sole discretion, be the Deposit Account) in accordance with the terms of the DACA.

10.    Fees and Expenses.  Borrower acknowledges and agrees that it solely shall be, and shall at all times remain, liable to Lender for all fees, charges, costs and expenses in connection with the Accounts, this Agreement and the enforcement hereof, including, without limitation, the reasonable fees and expenses of legal counsel to Lender and Servicer as needed to enforce, protect or preserve the rights and remedies of Lender and/or Servicer under this Agreement.

11.    Miscellaneous.

(a)     Notices.  All notices and other communications under this Agreement will be made in writing and given in accordance with this Section.  Notices are to be addressed to each party as provided below and will be deemed to have been duly given (i) on being given by hand, if such party's receipt thereof is acknowledged in writing, (ii) one Business Day after having been timely deposited for overnight delivery, fee prepaid, with any reputable overnight courier service with a reliable tracking system, (iii) three Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by certified mail, postage prepaid, return receipt requested or (iv) on being sent by facsimile as of when confirmation of receipt is electronically recorded.  Notice provided in accordance with this section shall be deemed given regardless of whether such Notice was actually received; provided, however that each party may establish a new address from time to time by written notice to the other given in accordance with this Section but no change of address will be effective until written notice thereof actually is acknowledged in writing by the party to whom such change of address is sent.  Notice to outside counsel designated by a party entitled to receive notice is for convenience only and is not required for notice to a party to be effective in accordance with this Section.

| | |
|---|---|
| Address for Lender: | Pender Capital Asset Based Lending Fund I, LP<br>11766 Wilshire Blvd., Suite 460<br>Los Angeles, CA  90025<br>Attention:  Zachary W. Murphy |
| With a copy to: | Benesch, Friedlander, Copan & Aronoff LLP<br>222 Delaware Ave., Suite 801<br>Wilmington, DE  19801<br>Attention:  Michael J. Barrie, Esq. |
| Address for Borrower: | **[To-Be-Formed SM LLC]**<br>_____<br>Attention: _____ |
| With a copy to: | Law Offices of Glenn R. Snyder<br>421 E. Airport Freeway, Suite 115<br>Irving, TX 75062<br>Attention: Glenn R. Snyder |
| Address for Manager: | **[Argus Professional Storage Management, LLC**<br>**3434 E. Kleindale Road, Suite E**<br>**Tucson, Arizona 85716]**<br>Attention: Korey Hansen<br>Telephone No.: (520) 320-9135 |
| With a copy to: | [_____]<br>[_____]<br>[_____]<br>Attention:  [_____] |

9

(b)     Entire Agreement; Modification.  This Agreement sets forth the entire agreement between the parties hereto with respect to the subject matter hereof and supercedes all prior discussions, representations, communications and agreements (oral and written) by and among the parties hereto with respect thereto.  Neither this Agreement nor any terms hereof shall be waived, modified, supplemented or terminated in any manner whatsoever, except by a written instrument signed by all parties hereto and then only to the extent expressly set forth in such writing.

(c)     Binding Effect; Joint and Several Obligations.  The terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, legal representatives, successors, and permitted assigns, whether by voluntary action of the parties or by operation of law.  The foregoing shall not be construed, however, to permit assignments or transfers otherwise prohibited under the Note, the Loan Agreement or the other Related Documents.  If Borrower consists of more than one Person, each shall be jointly and severally liable to perform Borrower's obligations under this Agreement.

(d)     Duplicate Originals; Counterparts.  This Agreement may be executed in any number of duplicate originals, and each duplicate original shall be deemed to be an original.  This Agreement (and each duplicate original) also may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute a fully executed agreement even though all signatures do not appear on the same document.

(e)     Unenforceable Provisions. If any provision of this Agreement is found by competent judicial authority to be invalid or unenforceable, the other provisions of this Agreement that can be carried out without the invalid or unenforceable provision will not be affected, and such invalid or unenforceable provision will be ineffective only to the extent of such invalidity or unenforceability and otherwise construed to the greatest extent possible to accomplish fairly the purposes and intentions of the parties hereto.

(f)     Ambiguity; Headings and Construction of Certain Terms.  Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Lender by virtue of the fact that such document has originated with Lender as drafter.  The parties to this Agreement agree that this Agreement shall be construed and interpreted according to the ordinary meaning of the words used so as to accomplish fairly the purposes and intentions of the parties hereto.  Words used in this Agreement may be used interchangeably in singular or plural form, and any pronoun shall be deemed to cover all genders.  Section headings are for convenience only and shall not be used in interpretation of this Agreement.  "**Herein**," "**hereof**" and "**hereunder**" and other words of similar import refer to this Agreement as a whole and not to any particular section, paragraph or other subdivision; and "**section**" refers to the entire section and not to any particular subsection, paragraph or other subdivision.  Reference to days for performance shall mean calendar days unless Business Days are expressly indicated.  References to the "**Note**", the "**Loan Agreement**", the "**Security Agreement**" and the "**Related Documents**" shall mean such original documents and all renewals, modifications and supplements to the foregoing.

(g)     Governing Law.  This Agreement shall be governed by the laws of the state or commonwealth in which the Property is located (without giving effect to its conflicts of

law rules), except with regard to payment of checks and other items and other issues relating to the operations of the Accounts or any other account to which funds from the Accounts are transferred, which issues shall be governed by the laws of the state where the Accounts or such other account are located.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**BORROWER**:

**[TO-BE-FORMED SM LLC]**, a Delaware limited liability company

By: _____
Name: _____
Title: _____

**[SIGNATURES CONTINUED ON NEXT PAGE]**

**LENDER**:

**PENDER CAPITAL ASSET BASED LENDING FUND I, LP**, an Delaware limited partnership,

By: _____
Name: Zachary W. Murphy
Title: Manager

**[SIGNATURES CONTINUED ON NEXT PAGE]**

**MANAGER**:

**ARGUS PROFESSIONAL STORAGE
MANAGEMENT, LLC**,
a Colorado limited liability company


By: _____
Name: _____
Title: _____

**EXHIBIT A**

**<u>Form of Tenant Direction Letter</u>**

**[BORROWER LETTERHEAD]**

**_____ ___, 20__**

[TENANTS UNDER LEASES]

Re:     Payment Direction Letter for 305 Smith Street and 1945 FM 157,
          Mansfield, Texas 76063

Gentlemen:

   This letter shall constitute notice to you that the undersigned has granted a security interest in all rents, additional rent and all other monetary obligations to it (collectively, "**Rent**") in favor of Pender Capital Asset Based Lending Fund I, LP, an Delaware limited partnership, as lender ("**Lender**"), to secure certain of the undersigned's obligations to Lender. The undersigned hereby irrevocably instructs and authorizes you to disregard any and all previous notices sent to you in connection with Rent and hereafter to deliver all Rent to the following address:

**Wells Fargo Bank, National Association**

[_____]
[_____]

   The instructions set forth herein are irrevocable and are not subject to modification in any manner, except that Borrower may, upon sending you written evidence executed by Lender evidencing the termination of Lender's lien and security interest in the Rents, by written notice to you rescind the instructions contained herein.

        Sincerely,
        [BORROWER]

**EXHIBIT B**

**Form of Credit Card Payment Direction Letter**

**[BORROWER LETTERHEAD]**

**_____ ___, 20__**

[Credit Card Company]

Re:    Payment Direction Letter for 305 Smith Street and 1945 FM 157,
Mansfield, Texas 76063

Gentlemen:

      This letter shall constitute notice to you that the undersigned has granted a security interest in all rents, additional rent and all other monetary obligations to it (collectively, "**Rent**") in favor of Pender Capital Asset Based Lending Fund I, LP, an Delaware limited partnership, as lender ("**Lender**"), to secure certain of the undersigned's obligations to Lender. The undersigned hereby irrevocably instructs and authorizes you to disregard any and all previous notices sent to you in connection with Rent and hereafter to deliver all Rent to the following address:

**Wells Fargo Bank, National Association**

[_____]
[_____]

      The instructions set forth herein are irrevocable and are not subject to modification in any manner, except that Borrower may, upon sending you written evidence executed by Lender evidencing the termination of Lender's lien and security interest in the Rents, by written notice to you rescind the instructions contained herein.

Sincerely,
[BORROWER]

EXHIBIT C

**Special Warranty Deed**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

Effective Date: November 16, 2017

Grantor:  Janice Ruth Reynolds

Grantor's Mailing Address: P.O. Box 750, Valdez, AK 99686

Grantee: Mansfield Boat and RV Storage L.L.C.

Grantee's Mailing Address: 605 Rutgers Drive, Lancaster, TX 75134

Consideration:  Cash and other good and valuable consideration.

Property (including any improvements): The tracts of land described on Exhibit A, attached hereto and incorporated herein by reference.

Reservations from Conveyance: None

Exceptions to Conveyance and Warranty: All easements, restrictions, covenants, and other exceptions recorded in the Real Property Records of Tarrant County, Texas.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs, successors, and assigns to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through, or under Grantor, but not otherwise.

Grantor intends to convey to Grantee all land conveyed by that certain Quitclaim Deed from Larry Reynolds to Grantee dated May 2, 2017, recorded under Clerk's File No. D217100061, Real Property Records, Tarrant County, Texas, and by that Quitclaim Deed from Larry Reynolds to Grantee dated May 2, 2017, recorded under Clerk's File No. D217100062, Real Property Records, Tarrant County, Texas.  Grantor intends to convey to Grantee all land

Special Warranty Deed

EXHIBIT C

covered by the November 22, 2017 Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing given by Mansfield Boat and RV Storage L.L.C. for the benefit of Pender Capital Asset Based Lending Fund I, LP.

When the context requires, singular nouns and pronouns include the plural.

By: _____
     Janice Ruth Reynolds

STATE OF ALASKA

BEFORE ME, the undersigned, a Notary Public in and for the State of Alaska on this day personally appeared Janice Ruth Reynolds, known to me to be the person whose name is subscribed to the foregoing Special Warranty Deed, and acknowledged to me that she executed it for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of July, 2018.

_____
Notary Public, State of Alaska

Special Warranty Deed

EXHIBIT C

# EXHIBIT A

Tract 1:

BEING a tract of land situated in the SAMUEL WEST SURVEY, ABSTRACT NO. 1648, in the City of Mansfield, Tarrant County, Texas, and being all of Lot 1, Block 1, Reynolds Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 6684, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

COMMENCING at a 1/2-inch iron rod found for the northeast corner of Lot 2C, Block 1, Reynolds Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 6690, Official Public Records, Tarrant County, Texas, said iron rod also being situated in the westerly right-of-way of F.M. Highway 157, a 120-foot right-of-way (S. Cooper Street);

THENCE North 89 deg 56 min 34 sec West, departing the westerly right-of-way of said F.M. Highway 157 and along the north line of said Lot 2C, Block 1, a distance of 374.71 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for the POINT OF BEGINNING;

THENCE South 00 deg 02 min 24 sec West, a distance of 610.80 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 67 deg 43 min 34 sec East, a distance of 252.77 feet to a 1/2-inch iron rod with plastic cap found for corner, and being situated in the westerly right-of-way of said F.M. Highway 157, said iron rod also being the beginning of a non-tangent curve to the right having a radius of 4,860.93 feet, a central angle of 00 deg 01 min 45 sec, a chord bearing of South 14 deg 57 min 52 sec West, and a chord length of 2.48 feet;

THENCE along said westerly right-of-way and said curve to the right, an arc distance of 2.48 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 75 deg 18 min 50 sec West, continuing along said westerly right-of-way, a distance of 8.49 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 14 deg 36 min 38 sec West, along the westerly right-of-way of said F.M. Highway 157, a distance of 10.00 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 01 deg 38 min 26 sec West, continuing along said westerly right-of-way, a distance of 12.30 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 67 deg 43 min 34 sec West, departing the westerly right-of-way of said F.M. Highway 157, a distance of 826.02 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 00 deg 36 min 24 sec East, a distance of 416.29 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 89 deg 56 min 34 sec East, a distance of 538.22 feet to the POINT OF BEGINNING.

CONTAINING within these metes and bounds 6.681 acres or 291,038 square feet of land, more or less.

Tract 2:

3

Special Warranty Deed

EXHIBIT C

BEING a tract of land situated in the F.B. WADDELL SURVEY, ABSTRACT NO. 1658, in the City of Mansfield, Tarrant County, Texas, and being all of Lot 3, Block 1, Rountree Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 1635, Plat Records, Tarrant County, Texas, a portion of Lot 1, Block 1, Rountree Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 771, Official Public Records, Tarrant County, Texas, and a portion of Lot 2, Block 1, Rountree Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 1060, Official Public Records, Tarrant County, Texas, and also being Tracts I, II and III as described in deed to Larry Reynolds, recorded in County Clerk's Instrument No. D202115424, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

BEGINNING at a 3/8-inch iron rod found for corner at the intersection of the westerly right-of-way of Smith Street,
a 50-foot right-of-way, with the northerly right-of-way of Texas and Pacific Railroad, a variable width right-of-way, said point being the southeast corner of said Lot 3;

THENCE North 84 deg 26 min 38 sec West, departing said westerly right-of-way and along said northerly right-of-way, a distance of 177.88 feet to a 1/2-inch iron rod found for corner at the intersection of the northerly right-of-way of said Texas and Pacific Railroad with the easterly right-of-way of Business Highway 287, a variable width right-of-way;

THENCE departing the northerly right-of-way of said Texas and Pacific Railroad and along the easterly right-of-way of said Business Highway 287 the following:

North 05 deg 48 min 42 sec West, a distance of 76.49 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 04 deg 15 min 22 sec East, a distance of 24.30 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 14 deg 07 min 49 sec West, a distance of 201.04 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 14 deg 09 min 38 sec West, a distance of 230.04 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 60 deg 35 min 09 sec East, departing the easterly right-of-way of said Business Highway 287, a distance of 295.70 feet to a point for corner (falls in concrete rubble);

THENCE South 03 deg 51 min 53 sec West, a distance of 168.82 feet to a P.K. nail set for corner;

THENCE South 83 deg 50 min 41 sec East, a distance of 77.34 feet to a P.K. nail set for corner and being situated in the westerly right-of-way of said Smith Street;

THENCE South 03 deg 50 min 30 sec West, along said westerly right-of-way, a distance of 216.27 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner and being the northeast corner of said Lot 1, Block 1;

THENCE North 84 deg 30 min 41 sec West, departing the westerly right-of-way of said Smith Street and along the north line of said Lot 1, Block 1, a distance of 74.64 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

4

Special Warranty Deed

EXHIBIT C

THENCE South 05 deg 19 min 16 sec West, departing said north line and over and across said Lot 1, Block 1, a distance of 105.13 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 83 deg 32 min 00 sec East, continuing over and across said Lot 1, Block 1, a distance of 77.07 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner, and being situated in the westerly right-of-way of said Smith Street;

THENCE South 04 deg 01 min 22 sec West, continuing along the westerly right-of-way of said Smith Street, a distance of 182.49 feet to the POINT OF BEGINNING.

CONTAINING within these metes and bounds 3.124 acres or 136,082 square feet of land, more or less.

Tract 3:

BEING a tract of land situated in the F.B. WADDELL SURVEY, ABSTRACT NO. 1658, City of Mansfield, Tarrant
County, Texas and being all of Lot 1-R-1, Block 2, Rountree Addition, an addition to the City of Mansfield, Tarrant
County, Texas according to the plat thereof recorded in Cabinet A, Slide 6164, Plat Records, Tarrant County,
Texas, and also being all of Tract IV as described in deed to Larry
Reynolds, recorded in County Clerk's File No. D202115424, Official Public Records, Tarrant County, Texas, and
being more particularly described as follows:

BEGINNING at a 1/2-inch iron rod found for corner at the southwest corner of said Lot 1-R-1, Block 2, said iron
rod also being situated at the intersection of the easterly right-of-way of Smith Street (50-foot right-of-way)
and the northerly right-of-way of Texas and Pacific Railroad (variable width right-of-way);

THENCE North 04 deg 09 min 37 sec East, departing said northerly right-of-way and along said easterly right-of-way, a distance of 339.54 feet to a MAG nail set for corner;

THENCE North 04 deg 01 min 02 sec East, continuing along the easterly right-of-way of said Smith Street, a
distance of 164.70 feet to a point for corner from which a 1/2-inch iron rod found bears North 77 deg 57 min 42
sec West, a distance of 0.74 feet;

THENCE South 83 deg 45 min 40 sec East, departing the easterly right-of-way of said Smith Street, a distance of
332.60 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 84 deg 46 min 09 sec East, a distance of 294.05 feet to a point for corner from which a 1/2-inch
iron rod found bears North 17 deg 36 min 13 sec West, a distance of 1.05 feet;

THENCE South 02 deg 52 min 46 sec West, a distance of 83.46 feet to a 1/2-inch iron rod with red plastic cap
stamped "W.A.I." set for corner;

5

Special Warranty Deed

EXHIBIT C

THENCE South 08 deg 51 min 03 sec West, a distance of 419.12 feet to a 1/2-inch iron rod with red plastic cap
stamped "W.A.I." set for corner and being situated in the north right-of-way of said Texas and Pacific Railroad;

THENCE North 84 deg 26 min 37 sec West, along said northerly right-of-way, a distance of 593.73 feet to the
POINT OF BEGINNING.

CONTAINING within these metes and bounds 7.066 acres or 307,778 square feet of land, more or less.

APN: 07818130, 06498302, 06556590, 06676820, 07715293

Property Address: 1945 Farm Road 157 and 305 Smith Street, Mansfield, Texas 76063

Special Warranty Deed

**EXHIBIT D**

## CAUSE NO. 048-299273-18

| | | |
|---|---|---|
| **PENDER CAPITAL ASSET BASED** | § | **IN THE DISTRICT COURT OF** |
| **LENDING FUND I, LP,** | § | |
|     **Plaintiff,** | § | |
| **v.** | § | |
| **MANSFIELD BOAT AND RV** | § | |
| **STORAGE,** | § | |
| **L.L.C.** | § | |
|     **Defendants,** | § | **48TH JUDICIAL DISTRICT** |
| | § | |
| **JANICE RUTH REYNOLDS** | § | |
|     **Intervenor,** | § | |
| **v.** | § | |
| **ANNA M. VIRENE** | § | |
|     **Third Party Defendant.** | § | **TARRANT COUNTY, TEXAS** |

## JOINT MOTION TO DISMISS WITH PREJUDICE

Having entered into a settlement resolving all disputes between the parties to this suit, Plaintiff Pender Capital Asset Based Lending Fund I, LP, Defendant Mansfield Boat and RV Storage, L.L.C., and Intervenor Janice Ruth Reynolds jointly file this motion to dismiss with prejudice all claims and counterclaims asserted in the suit. The Parties jointly ask the Court to enter the Order of Dismissal filed with this motion.

Respectfully submitted,

Sᴍʏsᴇʀ Kᴀᴘʟᴀɴ & Vᴇsᴇʟᴋᴀ, L.L.P.

By: */s/ Land Murphy*
Garland "Land" Murphy
State Bar No. 24058010
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
lmurphy@skv.com

**ATTORNEYS FOR PLAINTIFF PENDER CAPITAL ASSET BASED LENDING FUND I, LP**

By: */s/ Glenn Snyder*
Glenn R. Snyder
Texas Bar No. 18814900
Email: snyderglenn@sbcglobal.net
627 Mercury Avenue
Duncanville, Texas 75137
Tel. (972) 594-1133
Fax. (972) 570-4498

**ATTORNEY FOR DEFENDANT MANSFIELD BOAT AND RV STORAGE, LLC AND INTERVENOR JANICE RUTH REYNOLDS**

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Defendant and Intervenor, who authorized the filing of this motion as a joint motion.

*/s/ Land Murphy*
Garland "Land" Murphy

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document has been served on the all counsel of record via the Court's electronic filing service on July 2, 2018.

*/s/ Land Murphy*
Garland "Land" Murphy

2

**CAUSE NO. 048-299273-18**

| | | |
|---|---|---|
| **PENDER CAPITAL ASSET BASED** | § | **IN THE DISTRICT COURT OF** |
| **LENDING FUND I, LP,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| **MANSFIELD BOAT AND RV STORAGE,** | § | |
| **L.L.C.** | § | |
| **Defendants,** | § | **48TH JUDICIAL DISTRICT** |
| | § | |
| **JANICE RUTH REYNOLDS** | § | |
| **Intervenor,** | § | |
| **v.** | § | |
| **ANNA M. VIRENE** | § | |
| **Third Party Defendant.** | § | **TARRANT COUNTY, TEXAS** |

## <u>ORDER OF DISMISSAL</u>

Before the Court is a Joint Motion to Dismiss All Claims with Prejudice filed jointly by Plaintiff Pender Capital Asset Based Lending Fund I, LP, Defendant Mansfield Boat and RV Storage, L.L.C., and Intervenor Janice Ruth Reynolds.  Having considered the motion, the Court finds that the motion should be GRANTED in full.  All claims and counterclaims asserted by all parties are hereby DISMISSED with prejudice.

This is a Final Judgment disposing of all claims.

Signed on_____, 2018

_____
HON. DAVID EVANS

# Exhibit D



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed February 4, 2019

_Honlin DeWayne Hale_

**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **MANSFIELD BOAT AND RV** | § | |
| **STORAGE, LLC** | § | **Case No. 18-33926** |
| | § | |
| Debtor. | § | |

**ORDER REGARDING PENDER CAPITAL ASSET BASED LENDING FUND I, LP'S**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
(Relates to Docket Nos. 18 and 42)

On December 10, 2018, Pender Capital Asset Based Lending Fund I, LP ("Pender") filed

its Motion for Relief from the Automatic Stay and on January 22, 2019, filed its Emergency

Supplemental Motion for Relief from the Automatic Stay (collectively, the "Motion"). On

January 28, 2019, the Court conducted an evidentiary on the Motion and heard arguments and

considered the evidence admitted into the record. On January 31, 2019, the Court issued an oral

ruling on the record regarding the Motion. The Court has jurisdiction over this matter pursuant

1

to 28 U.S.C. § 1334, this is a core proceeding pursuant to 28 U.S.C. 157(b)(2), and notice of the Motion was sufficient. Based on the arguments and evidence, and for the reasons set forth on the record on January 31, 2019, it is hereby ORDERED:

1. Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is hereby modified to allow Pender Capital to immediately take all actions necessary to post the Mansfield Real Property (as defined in the Motion) in March 2019 for the foreclosure sale to occur in April 2019, including satisfaction of any statutory or contractual requirements to serve, file or post notices.

2. If the Debtor is unable to refinance Pender Capital's debt and pay Pender's claim in full prior to the April 2019 foreclosure date, the stay shall be lifted without further order of the Court to permit Pender Capital to proceed with the foreclosure sale of the Mansfield Real Property.

3. Notwithstanding the foregoing, the automatic stay shall be lifted immediately if the Debtor does not file and serve on Pender Capital a term sheet from a reputable lender for the refinancing of the entire Pender Capital debt by 5:00 p.m. on Monday, February 4, 2019.

4. This Order shall take effect immediately upon its entry in accordance with Bankruptcy Rule 4001(a)(3).

# # # End of Order # # #

6962098v2

**PORTER HEDGES LLP**

Eric M. English
State Bar No. 24062714
Genevieve M. Graham
State Bar No. 24085340
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000

- and –

**SMYSER KAPLAN & VESELKA, L.L.P.**

Garland D. Murphy IV
State Bar No. 24058010
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 221-2300
(713) 221-2320
*ATTORNEYS FOR PENDER CAPITAL*
*ASSET BASED LENDING FUND I, LP*

6962098v2

# Exhibit E

February 7, 2019

**SENT VIA CERTIFIED MAIL NO.    7018 1830 0001 4302 2776**
**AND REGULAR MAIL**

MANSFIELD BOAT AND RV STORAGE L.L.C.
605 Rutgers Drive
Lancaster, Texas 75134
Attention: Larry J. Reynolds

**SENT VIA CERTIFIED MAIL NO.    7018 1830 0001 4302 2783**
**AND REGULAR MAIL**

B. NEAL AINSWORTH, TRUSTEE OF THE POYNER WILKINS GENERATIONAL TRUST
2521 E. Mountain Village Parkway, Suite 225
Wasilla, Alaska 99654
Attention: B. Neal Ainsworth

**SENT VIA CERTIFIED MAIL NO.    7018 1830 0001 4302 2790**
**AND REGULAR MAIL**

LARRY J. REYNOLDS
305 Smith Street
Mansfield, Texas 76063

**SENT VIA CERTIFIED MAIL NO.    7018 1830 0001 4302 2806**
**AND REGULAR MAIL**

LARRY J. REYNOLDS
6160 Deep Lake Drive
Valdez, Alaska 99686

**SENT VIA CERTIFIED MAIL NO.    7018 1830 0001 4302 2813**
**AND REGULAR MAIL**

MANSFIELD BOAT AND RV STORAGE L.L.C.
c/o The Law Offices of Glenn R. Snyder
627 Mercury Venue, Suite 103
Duncanville, Texas 75137
Attention:  Glenn R. Snyder

Re:   **NOTICE OF SUBSTITUTE TRUSTEE'S FORECLOSURE SALE** on Tuesday, March 5, 2019, by Neil Beldock, Substitute Trustee, of the real and personal property described on <u>Exhibit "A"</u> attached hereto (collectively, the "<u>Property</u>").

Dear Mansfield Boat and RV Storage L.L.C.:

Reference is made to that certain Business Loan Agreement dated as of November 22, 2017, executed by Mansfield Boat and RV Storage L.L.C., a Texas limited liability company ("<u>Borrower</u>"), and Pender Capital Asset Based Lending Fund I, LP, a Delaware limited partnership ("<u>Lender</u>") (the "<u>Loan Agreement</u>"), pursuant to which Lender extended a credit facility to Borrower. The indebtedness of Borrower to Lender under the Loan Agreement is evidenced by that certain promissory note in the original principal amount of $6,700,000.00 dated November 22, 2017, executed by Borrower and payable to the order of Lender, as modified by Promissory Note Modification Agreement dated as of June 18, 2018, executed by Borrower, Lender, and Guarantors (hereinafter defined) (as modified, the "<u>Note</u>"). We are counsel to Lender in connection with the Loan Agreement.

Borrower secured payment of the Note and its obligations thereunder and under the Loan Agreement by granting Lender a lien on and a security interest in, among other things, the Property pursuant to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of November 22, 2017 (the "<u>Deed of Trust</u>"), executed by Borrower to Paul Kellogg, Esq., as trustee, for the benefit of Lender.

Additionally, Larry J. Reynolds, an individual ("<u>Larry</u>"), and Larry J. Reynolds, Trustee of the Poyner Wilkins Generational Trust (the "<u>Trust</u>", and together with Larry, collectively, the "<u>Guarantors</u>"), guaranteed to Lender payment of the Indebtedness (as defined in the Deed of Trust) pursuant to that certain Guaranty (herein so called) dated as of November 22, 2017.

As you are aware, Borrower has been and continues to be in default of its payment obligations to Lender under the terms of the Note and the Loan Agreement. Specifically, on October 19, 2018, Lender notified Borrower and Guarantors that a certain Event of Default (as defined in the Deed of Trust) existed as a result of Borrower's failure to pay in full the monthly installment of interest due on the Note on October 1, 2018. In addition, such letter notified Borrower and Guarantors that, if Lender did not receive the scheduled payment in full, Lender intended to exercise its right to accelerate the Note and declare the entire unpaid principal balance of the Note, all accrued interest, and all other amounts owed or collectible under the Deed of Trust, the Note, and the Loan Agreement (including attorneys' fees and expenses) due and payable immediately. By letter dated November 5, 2018, Lender notified Borrower and Guarantors that as a result of the foregoing Event of Default, and another Event of Default that arose as a result of Borrower's failure to pay the November 1, 2018, scheduled interest payment due on the Note, the Note was accelerated and the full outstanding principal balance of the Note became immediately due and payable.

On December 3, 2018, Borrower filed a voluntary Chapter 11 bankruptcy case. On December 11, 2018, Lender filed a Motion for Relief from the Automatic Stay and, on January 22, 2019, filed an Emergency Supplemental Motion for Relief from the Automatic Stay. On February 4, 2019, the United States Bankruptcy Court of the Northern District of Texas ordered that "the automatic stay shall be lifted immediately if the [Borrower] does not file and serve on [Lender] a term sheet from a reputable lender for the refinancing of the entire [Lender] debt by 5:00 p.m. on Monday, February 4, 2019." Borrower did not file and serve on Lender the term sheet at the required time, and the automatic stay has been lifted.

As of the date of this letter, Lender has not received payment in full of the Note, and Events of Default continue to exist.

This letter is being delivered on behalf of Lender to Borrower and Guarantors to provide notice to the following matters:

By Appointment of Substitute Trustee dated November 6, 2018, Neil Beldock has been appointed the Substitute Trustee to conduct the foreclosure sale of the Property. Attached hereto as Exhibit "B" is a copy of the Notice of Substitute Trustee's Foreclosure Sale ("Notice of Sale") and attached hereto as Exhibit "C" is a copy of the Appointment of Substitute Trustee appointing Neil Beldock as the Substitute Trustee under the Deed of Trust.

The enclosed Notice of Sale constitutes notice to Borrower and Guarantors, in accordance with the Deed of Trust and Texas Property Code Ann. § 51.002, as amended, that the Property has been posted for foreclosure. You are hereby advised that the Property will be sold as provided in the Notice of Sale. **YOU ARE HEREBY INFORMED THAT THE PUBLIC FORECLOSURE AUCTION OF THE PROPERTY DESCRIBED IN THE NOTICE OF SALE IS SCHEDULED FOR TUESDAY, MARCH 5, 2019 (THE "FORECLOSURE SALE DATE"), TO BEGIN NO EARLIER THAN 10:00 A.M. (CENTRAL TIME) OR NO LATER THAN THREE (3) HOURS THEREAFTER AND WILL BE COMPLETED BY 4:00 P.M. (CENTRAL TIME). THE SALE WILL BE HELD AT THE LOCATION AT THE TARRANT COUNTY, TEXAS COURTHOUSE DESCRIBED IN THE NOTICE OF SALE.**

As of the date of this letter, Borrower owes Lender $7,693,772.68 (the "Delinquent Amount") (which Delinquent Amount is an amount equal to the sum of (a) $7,200,780.83, which is the outstanding principal balance of the Note, plus (b) $224,380.02, which is the accrued and unpaid interest on the Note, (c) $254,340.77, which is the amount of attorney's fees and expenses which Lender has incurred in its collection of the Note, which Borrower is obligated to pay pursuant to the terms of the Loan Agreement and the Note, plus (d) $14,271.05, which is the amount of fees (including late fees), costs, and expenses (excluding attorney's fees and expenses) which Lender has incurred in its collection of the Note, which Borrower is obligated to pay pursuant to the terms of the Loan Agreement and the Note). Interest will continue to accrue on the Note in the amount of $3,600.39 each day.

Borrower may contact Zachary Murphy at Pender Capital Asset Based Lending Fund I, LP, whose physical address is 11766 Wilshire Boulevard, Suite 460, Los Angeles, California, 90025, and whose telephone number is (310) 853-8001 to obtain a complete statement of the balance owed on the Indebtedness to Lender.

Borrower will be able to prevent this foreclosure by paying the Total Amount (hereinafter defined) to Lender before 5:00 p.m. (Central Time) on the day before the Foreclosure Sale Date (the "Final Cure Date"). Payment must be made in cash, by cashier's check or wire transfer received by Lender before 5:00 p.m. (Central Time) on the Final Cure Date. Partial payments will be applied to the Indebtedness but will not prevent the foreclosure sale. If Borrower mails a payment to Lender and the payment is received after 5:00 p.m. (Central Time) on the Final Cure Date, the payment will have been sent too late and this will not prevent the foreclosure sale. To the extent permitted under the terms of the Loan Agreement, the Note, the Deed of Trust and applicable law, Borrower, Guarantors and the other obligors will be liable for any deficiency remaining after application of the net foreclosure sale proceeds to the Indebtedness. The term "Total Amount" as used herein shall mean an amount equal to the sum of (a) the Delinquent Amount, plus (b) all interest accrued on the Note from the date of this letter until the date of payment in full of the Delinquent Amount, plus (c) all attorney's fees incurred by Lender in its collection of the Note from the date of this letter until the date of payment in full of the Delinquent Amount, plus (d) all costs and expenses (excluding attorney's fees) incurred by Lender in its collection of the Note from the date of this letter until the date of payment in full of the Delinquent Amount.

Lender hereby expressly reserves any and all of its rights, remedies and privileges under the Note, the Loan Agreement and all documents executed in connection therewith (including, without limitation, the Deed of Trust and the Guaranty), and at law and in equity. Neither Borrower nor any Guarantor is entitled to rely upon any oral statements made, if any, or purported to be made by or on behalf of Lender in connection with any alleged agreement by Lender to refrain from exercising any of its rights in connection with the Loan Agreement, the Note, the Deed of Trust, or any other loan documents related thereto. In the event any deficiency remains after the foreclosure sale, each of Borrower and each Guarantor will remain liable for such deficiency.

Sincerely,

Neil Beldock
Substitute Trustee
3232 McKinney Avenue, Suite 855
Dallas, Texas 75204

**ATTENTION TO ANY DEBTOR IN BANKRUPTCY OR WHO HAS RECEIVED A DISCHARGE IN BANKRUPTCY: Please be advised that this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with the applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.**

List of Exhibits

A:      Description of Property
B:      Notice of Substitute Trustee's Foreclosure Sale
C:      Appointment of Substitute Trustee

Exhibit "A"

Description of Property

All of Borrower's present and future right, title, and interest in and to all of the following (collectively, the "Mortgaged Property"):

(1) the real property described in Schedule I attached hereto (the "Land");

(2) the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions (the "Improvements");

(3) all property owned by Borrower which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment (the "Fixtures");

(4) all: (i) accounts (including deposit accounts); (ii) equipment and inventory owned by Borrower which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements, including furniture, furnishings, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software); (iii) other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements; (iv) any operating agreements relating to the Land or the Improvements; (v) any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements; (vi) all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land or the Improvements and including subsidy or similar payments received from any sources, including a governmental authority; and (vii) any rights of Borrower in or under letters of credit (the "Personalty");

(5) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of

land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

(6) all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirement;

(7) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

(8) all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

(9) all proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds;

(10) all rents, revenues and other income of the Land or the Improvements, including parking fees, laundry and vending machine income and fees and charges for other services provided at the Mortgaged Property, whether now due, past due, or to become due, and deposits forfeited by tenants (the "Rents") and all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals (the "Leases");

(11) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of Borrower's indebtedness owed to Lender;

(12) all funds on deposit pursuant to any separate agreement between Borrower and Lender (including, without limitation, all contingency reserve amounts estimated by Lender to be required for (i) property insurance premiums and premiums for other types of insurance required by the Deed of Trust, (ii) taxes, (iii) water and sewer charges (that could become a lien on the Mortgaged Property), and (iv) assessments or other charges (that could become a lien on the Mortgaged Property) (collectively, the "Impositions Deposits")) for the purpose of establishing replacement reserves for the Mortgaged Property, to fund any water and sewer charges, premiums for fire or other hazard insurance, rent loss insurance or other insurance required by Lender, taxes, assessments, vault rentals, or other charges or expenses required by Lender to protect the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the indebtedness if the occupancy of or

income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account;

(13) all refunds or rebates of the obligations of Borrower for which the Imposition Deposits are required (the "Impositions") by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the 2017 real property tax year);

(14) all tenant security deposits which have not been forfeited by any tenant under any lease and any bond or other security in lieu of such deposits; and

(15) all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

Schedule I

Real Property

## EXHIBIT "A"
### DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN TARRANT COUNTY, STATE OF TEXAS, AND IS DESCRIBED AS FOLLOWS:

Tract 1:

BEING a tract of land situated in the SAMUEL WEST SURVEY, ABSTRACT NO. 1648, in the City of Mansfield, Tarrant County, Texas, and being all of Lot 1, Block 1, Reynolds Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 6684, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

COMMENCING at a 1/2-inch iron rod found for the northeast corner of Lot 2C, Block 1, Reynolds Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 6690, Official Public Records, Tarrant County, Texas, said iron rod also being situated in the westerly right-of-way of F.M. Highway 157, a 120-foot right-of-way (S. Cooper Street);

THENCE North 89 deg 56 min 34 sec West, departing the westerly right-of-way of said F.M. Highway 157 and along the north line of said Lot 2C, Block 1, a distance of 374.71 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for the POINT OF BEGINNING;

THENCE South 00 deg 02 min 24 sec West, a distance of 610.80 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 67 deg 43 min 34 sec East, a distance of 252.77 feet to a 1/2-inch iron rod with plastic cap found for corner, and being situated in the westerly right-of-way of said F.M. Highway 157, said iron rod also being the beginning of a non-tangent curve to the right having a radius of 4,860.93 feet, a central angle of 00 deg 01 min 46 sec, a chord bearing of South 14 deg 57 min 52 sec West, and a chord length of 2.48 feet;

THENCE along said westerly right-of-way and said curve to the right, an arc distance of 2.48 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 75 deg 18 min 50 sec West, continuing along said westerly right-of-way, a distance of 8.49 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 14 deg 36 min 38 sec West, along the westerly right-of-way of said F.M. Highway 157, a distance of 10.00 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 01 deg 38 min 26 sec West, continuing along said westerly right-of-way, a distance of 12.30 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 67 deg 43 min 34 sec West, departing the westerly right-of-way of said F.M. Highway 157, a distance of 826.02 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

[Legal description continued on next pages.]

THENCE North 00 deg 36 min 24 sec East, a distance of 416.29 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 89 deg 56 min 34 sec East, a distance of 538.22 feet to the POINT OF BEGINNING. CONTAINING within these metes and bounds 6.681 acres or 291,038 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 28th day of May, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of South 11 deg 12 min 08 sec West (plat-South 11 deg 49 min 40 sec West), along the Northwesterly right-of-way of F.M. Highway 157 (Cooper Street), recorded in Cabinet A, Slide 6684, Official Public Records, Tarrant County, Texas.

Tract 2:

BEING a tract of land situated in the F.B. WADDELL SURVEY, ABSTRACT NO. 1659, in the City of Mansfield, Tarrant County, Texas, and being all of Lot 3, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 1635, Plat Records, Tarrant County, Texas, a portion of Lot 1, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 771, Official Public Records, Tarrant County, Texas, and a portion of Lot 2, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 1060, Official Public Records, Tarrant County, Texas, and also being Tracts I, II and III as described in deed to Larry Reynolds, recorded in County Clerk's Instrument No. D202115424, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

BEGINNING at a 3/8-inch iron rod found for corner at the intersection of the westerly right-of-way of Smith Street, a 60-foot right-of-way, with the northerly right-of-way of Texas and Pacific Railroad, a variable width right-of-way, said point being the southeast corner of said Lot 3;

THENCE North 84 deg 26 min 38 sec West, departing said westerly right-of-way and along said northerly right-of-way, a distance of 177.88 feet to a 1/2-inch iron rod found for corner at the intersection of the northerly right-of-way of said Texas and Pacific Railroad with the easterly right-of-way of Business Highway 287, a variable width right-of-way;

THENCE departing the northerly right-of-way of said Texas and Pacific Railroad and along the easterly right-of-way of said Business Highway 287 the following:

North 05 deg 48 min 42 sec West, a distance of 76.49 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 04 deg 15 min 22 sec East, a distance of 24.30 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 14 deg 07 min 49 sec West, a distance of 201.04 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 14 deg 09 min 38 sec West, a distance of 230.04 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

[Legal description continued on next pages.]

THENCE North 60 deg 35 min 09 sec East, departing the easterly right-of-way of said Business Highway 287, a distance of 295.70 feet to a point for corner (falls in concrete rubble);

THENCE South 03 deg 51 min 53 sec West, a distance of 168.82 feet to a P.K. nail set for corner;

THENCE South 83 deg 50 min 41 sec East, a distance of 77.34 feet to a P.K. nail set for corner and being situated in the westerly right-of-way of said Smith Street;

THENCE South 03 deg 50 min 30 sec West, along said westerly right-of-way, a distance of 216.27 feet to a 1/2- inch iron rod with red plastic cap stamped "W.A.I." set for corner and being the northeast corner of said Lot 1, Block 1;

THENCE North 84 deg 30 min 41 sec West, departing the westerly right-of-way of said Smith Street and along the north line of said Lot 1, Block 1, a distance of 74.64 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 05 deg 19 min 16 sec West, departing said north line and over and across said Lot 1, Block 1, a distance of 105.13 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 83 deg 32 min 00 sec East, continuing over and across said Lot 1, Block 1, a distance of 77.07 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner, and being situated in the westerly right-of-way of said Smith Street;

THENCE South 04 deg 01 min 22 sec West, continuing along the westerly right-of-way of said Smith Street, a distance of 182.49 feet to the POINT OF BEGINNING.

CONTAINING within these metes and bounds 3.124 acres or 136,082 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 2nd day of June, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of North 84 deg 26 min 38 sec West (plat-North 84 deg 28 min 00 sec West), along the northerly line of Lot 3, Block 1, Rountree Addition, recorded in Cabinet a, Slide 1635, Official Public Records, Tarrant County, Texas.

Tract 3:

BEING a tract of land situated in the F.B. WADDELL SURVEY, ABSTRACT NO. 1658, City of Mansfield, Tarrant County, Texas and being all of Lot 1-R-1, Block 2, Rountree Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 6164, Plat Records, Tarrant County, Texas, and also being all of Tract IV as described in deed to Larry Reynolds, recorded in County Clerk's File No. D202115424, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

BEGINNING at a 1/2-inch iron rod found for corner at the southwest corner of said Lot 1-R-1, Block 2, said iron rod also being situated at the intersection of the easterly right-of-way of Smith Street (50-foot right-of-way) and the northerly right-of-way of Texas and Pacific Railroad (variable width right-of-way);

THENCE North 04 deg 09 min 37 sec East, departing said northerly right-of-way and along said easterly right-of- way, a distance of 339.54 feet to a MAG nail set for corner;

[Legal description continued on next page.]

THENCE North 04 deg 01 min 02 sec East, continuing along the easterly right-of-way of said Smith Street, a distance of 164.70 feet to a point for corner from which a 1/2-inch iron rod found bears North 77 deg 57 min 42 sec West, a distance of 0.74 feet;

THENCE South 83 deg 45 min 40 sec East, departing the easterly right-of-way of said Smith Street, a distance of 332.60 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 84 deg 46 min 09 sec East, a distance of 294.05 feet to a point for corner from which a 1/2-inch iron rod found bears North 17 deg 36 min 13 sec West, a distance of 1.05 feet;

THENCE South 02 deg 52 min 46 sec West, a distance of 83.46 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 08 deg 51 min 03 sec West, a distance of 419.12 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner and being situated in the north right-of-way of said Texas and Pacific Railroad;

THENCE North 84 deg 26 min 37 sec West, along said northerly right-of-way, a distance of 593.73 feet to the POINT OF BEGINNING.

CONTAINING within these metes and bounds 7.066 acres or 307,778 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 2nd day of June, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of North 84 deg 26 min 38 sec West (plat-North 84 deg 28 min 00 sec West), along the northerly line of Lot 3, Block 1, Rountree Addition, recorded in Cabinet a, Slide 1635, Official Public Records, Tarrant County, Texas.

APN: 07818130, 06498302, 06556590, 06676820, 07715293

PROPERTY ADDRESS: 1945 FARM ROAD 157 AND 305 SMITH ST., MANSFIELD, TX 76063



Texas Deed of Trust
Exhibit "A" – Legal Description

Page A-4

EXHIBIT A
LEGAL DESCRIPTION

**TRACT I:**

Lot 1, in Block 1, of REYNOLDS ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 6684, Plat Records, Tarrant County, Texas.

**TRACT II:**

Lot 1, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 771, Plat Records Tarrant County, Texas.

SAVE AND EXCEPT: Being a portion of Lot 1, Block 1, of ROUNTREE ADDITION, an Addition to the City of Mansfield, Tarrant County, Texas, according to the Plat thereof recorded in Cabinet A, Slide 77 1, of the Plat Records of Tarrant County, Texas, also being a portion of "Tract I" conveyed to Larry Reynolds by deed recorded in Volume 15634, Page 84, Deed Records, Tarrant County, Texas, and being more particularly described by metes and-bounds as follows:

BEGINNING at a ½ iron rod found in the west right-of-way line of Smith Street and the north right-of- way line of Texas & Pacific Railroad for the southeast corner of said Lot 1 and the southeast corner of said Tract I;

THENCE N 84° 32' 08" W, with the north right-of-way line of said Texas & Pacific Railroad and the south line of said Lot 1 and said Tract 1 190.77 feet to a concrete monument found in the east right-of- way line of Spur 496 for the southwest corner of said Lot I and said Tract I;

THENCE N 03° 53' 20" E, with the east right-of-way line of said Spur 496 and the west line of said Lot I and said Tract I, 24.71 feet to a ½" iron rod found,

THENCE N 14° 05' 01" W, continuing with the east right-of-way line of said Spur 496 and the west line of said Lot I and said Tract I, 201.11 feet to railroad spike found for the northwest corner of said Lot 1 and said Tract I, and the southwest corner of Lot 2, Block 1, Rountree Addition recorded in Cabinet A, Slide 1060, PRTCT;

THENCE S 84° 26' 29" E, with the north line of said Lot I and said Tract I and the south line of said Lot 2, 178.92 feet to a metal fence post for corner;

THENCE S 05° 23' 28" W, 105.13 feet to a metal fence post for corner;

THENCE S 83° 27' 46" E, 77.10 feet to a metal fence post in the west right-of-way line of said Smith Street and the east line of said Lot I and said Tract I;

THENCE S 04° 04' 35" W, with the west right-of-way line of said Smith Street and the east line of said Lot I and said Tract I, 107.38 feet, to the POINT OF BEGINNING and containing 0.8895 acres of land more or less

**TRACT III:**

Lot 1-R-1, in Block 2, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 6164, Plat Records Tarrant County, Texas.

**TRACT IV:**
Lot 2, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 1060, Plat Records, Tarrant County, Texas.

SAVE & EXCEPT that portion conveyed to Communities Foundation of Texas, Inc., by Warranty Deed dated 8/16/1993, recorded in Volume 11381, Page 401, Real Property Records, Tarrant County, Texas.

**TRACT V:**

Lot 3, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 1635, Plat Records, Tarrant County, Texas.

Exhibit "B"

Notice of Sale

| | | |
|---|---|---|
| STATE OF TEXAS | § | KNOW ALL MEN |
| | § | |
| COUNTY OF TARRANT | § | BY THESE PRESENTS |

## NOTICE OF SUBSTITUTE TRUSTEE'S FORECLOSURE SALE

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

1.    Property.

The property to be sold is described as follows (collectively, the "Property"): certain real property (and interests therein) located in Tarrant County, Texas, and all other Mortgaged Property, all as more specifically described in Exhibit "A" attached hereto and incorporated herein for all purposes.

2.    Deed of Trust.

The instrument to be foreclosed is that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, executed by Mansfield Boat and RV Storage L.L.C., a Texas limited liability company ("Borrower"), dated as of November 22, 2017, to Paul Kellogg, Esq., Trustee, for the benefit of Pender Capital Asset Based Lending Fund I, LP, a Delaware limited partnership ("Lender"), and recorded under County Clerk's File No. D217277234 of the Real Property Records of Tarrant County, Texas (the "Deed of Trust"), which Deed of Trust secures certain indebtedness described therein, including, but not limited to, that certain Promissory Note in the original principal amount of $6,700,000.00, executed by Borrower and payable to Lender, as modified by Promissory Note Modification Agreement dated as of June 18, 2018, executed by Borrower, Lender, and guarantors (as modified, the "Note").

3.    Foreclosure Sale.

The Property will be sold at a foreclosure sale as permitted by the Deed of Trust, the Texas Property Code, and the Texas Business and Commerce Code to the highest bidder for cash. The sale is scheduled to be held at the following date, time, and place:

Date:    Tuesday, March 5, 2019

Time:    The sale will begin no earlier than 10:00 a.m. or no later than three (3) hours thereafter. The sale will be completed by no later than 4:00 p.m.

Place:   Tarrant County Courthouse, 100 West Weatherford Street, Fort Worth, Texas 76196, at the following location: the base of the courthouse steps on the east side of the building or, if the preceding area is no longer the designated area, at the area most recently designated by the Tarrant County Commissioner's Court, pursuant to Section 51.002 of the Texas Property Code.

4.   Trustee and Substitute Trustee.

Paul Kellogg, Esq. is named as the original Trustee under the Deed of Trust. By Appointment of Substitute Trustee dated May 8, 2018, Lender appointed Anna M. Virene as a Substitute Trustee. By Appointment of Substitute Trustee dated November 6, 2018, Lender has appointed the undersigned, Neil Beldock, as the Substitute Trustee under the Deed of Trust, said appointment being in a manner authorized by the Deed of Trust. Notice is given that before the sale Lender may appoint another person substitute trustee to conduct the sale.

5.   Events of Default.

A number of Events of Default (as defined in the Deed of Trust) have occurred. The Note has been accelerated and the full outstanding principal balance of the Note is due and payable. As of the date of this Notice of Substitute Trustee's Foreclosure Sale, Lender has not received payment in full of the Note, and the Events of Default continue. Therefore, Lender has requested that the Substitute Trustee sell the Property to satisfy the Note and the other Indebtedness (as defined in the Deed of Trust).

6.   Terms of Sale.

The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the Deed of Trust, Lender has the right to direct the Substitute Trustee to sell the Property in one or more parcels and/or to sell all or only part of the Property. Pursuant to Section 51.009 of the Texas Property Code, the Property will be sold in AS IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the Deed of Trust. The conveyance of the Property shall be made subject to any and all liens, restrictions, covenants, conditions, encumbrances, and easements, if any, affecting the Property, but only to the extent that the same are still in force and effect, shown of record in the Real Property Records of Tarrant County, Texas, and the conveyance shall be made further subject to any and all unpaid ad valorem taxes and assessments on the Property.

Questions concerning the sale may be directed to the undersigned Substitute Trustee at the contact information listed below.

Notification Date: February 7, 2019

Neil Beldock
Substitute Trustee
3232 McKinney Avenue, Suite 855
Dallas, Texas 75204

Exhibit "A"

Property

All of Borrower's present and future right, title, and interest in and to all of the following (collectively, the "Mortgaged Property"):

(1) the real property described in Exhibit "B" attached hereto (the "Land");

(2) the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions (the "Improvements");

(3) all property owned by Borrower which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment (the "Fixtures");

(4) all: (i) accounts (including deposit accounts); (ii) equipment and inventory owned by Borrower which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements, including furniture, furnishings, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software); (iii) other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements; (iv) any operating agreements relating to the Land or the Improvements; (v) any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements; (vi) all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land or the Improvements and including subsidy or similar payments received from any sources, including a governmental authority; and (vii) any rights of Borrower in or under letters of credit (the "Personalty");

(5) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

(6) all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirement;

(7) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

(8) all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

(9) all proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds;

(10) all rents, revenues and other income of the Land or the Improvements, including parking fees, laundry and vending machine income and fees and charges for other services provided at the Mortgaged Property, whether now due, past due, or to become due, and deposits forfeited by tenants (the "Rents") and all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals (the "Leases");

(11) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of Borrower's indebtedness owed to Lender;

(12) all funds on deposit pursuant to any separate agreement between Borrower and Lender (including, without limitation, all contingency reserve amounts estimated by Lender to be required for (i) property insurance premiums and premiums for other types of insurance required by the Deed of Trust, (ii) taxes, (iii) water and sewer charges (that could become a lien on the Mortgaged Property), and (iv) assessments or other charges (that could become a lien on the Mortgaged Property) (collectively, the "Impositions Deposits")) for the purpose of establishing replacement reserves for the Mortgaged Property, to fund any water and sewer charges, premiums for fire or other hazard insurance, rent loss insurance or other insurance required by Lender, taxes, assessments, vault rentals, or other charges or expenses required by Lender to protect the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account;

(13) all refunds or rebates of the obligations of Borrower for which the Imposition Deposits are required (the "Impositions") by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the 2017 real property tax year);

(14) all tenant security deposits which have not been forfeited by any tenant under any lease and any bond or other security in lieu of such deposits; and

(15) all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

Exhibit "B"

<u>Real Property</u>

**EXHIBIT "A"**
DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN TARRANT COUNTY, STATE OF TEXAS, AND IS DESCRIBED AS FOLLOWS:

Tract 1:

BEING a tract of land situated in the SAMUEL WEST SURVEY, ABSTRACT NO. 1648, in the City of Mansfield, Tarrant County, Texas, and being all of Lot 1, Block 1, Reynolds Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 6684, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

COMMENCING at a 1/2-inch iron rod found for the northeast corner of Lot 2C, Block 1, Reynolds Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 6690, Official Public Records, Tarrant County, Texas, said iron rod also being situated in the westerly right-of-way of F.M. Highway 157, a 120-foot right-of-way (S. Cooper Street);

THENCE North 89 deg 56 min 34 sec West, departing the westerly right-of-way of said F.M. Highway 157 and along the north line of said Lot 2C, Block 1, a distance of 374.71 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for the POINT OF BEGINNING;

THENCE South 00 deg 02 min 24 sec West, a distance of 610.80 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 67 deg 43 min 34 sec East, a distance of 252.77 feet to a 1/2-inch iron rod with plastic cap found for corner, and being situated in the westerly right-of-way of said F.M. Highway 157, said iron rod also being the beginning of a non-tangent curve to the right having a radius of 4,860.93 feet, a central angle of 00 deg 01 min 45 sec, a chord bearing of South 14 deg 57 min 52 sec West, and a chord length of 2.48 feet;

THENCE along said westerly right-of-way and said curve to the right, an arc distance of 2.48 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 75 deg 18 min 50 sec West, continuing along said westerly right-of-way, a distance of 8.49 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 14 deg 36 min 38 sec West, along the westerly right-of-way of said F.M. Highway 157, a distance of 10.00 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 01 deg 38 min 26 sec West, continuing along said westerly right-of-way, a distance of 12.30 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 67 deg 43 min 34 sec West, departing the westerly right-of-way of said F.M. Highway 157, a distance of 826.02 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

[Legal description continued on next pages.]

THENCE North 00 deg 36 min 24 sec East, a distance of 416.29 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 89 deg 56 min 34 sec East, a distance of 538.22 feet to the POINT OF BEGINNING. CONTAINING within these metes and bounds 6.681 acres or 291,038 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 28th day of May, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of South 11 deg 12 min 08 sec West (plat-South 11 deg 49 min 40 sec West), along the Northwesterly right-of-way of F.M. Highway 157 (Cooper Street), recorded in Cabinet A, Slide 6884, Official Public Records, Tarrant County, Texas.

Tract 2:

BEING a tract of land situated in the F.B. WADDELL SURVEY, ABSTRACT NO. 1656, in the City of Mansfield, Tarrant County, Texas, and being all of Lot 3, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 1635, Plat Records, Tarrant County, Texas, a portion of Lot 1, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 771, Official Public Records, Tarrant County, Texas, and a portion of Lot 2, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 1060, Official Public Records, Tarrant County, Texas, and also being Tracts I, II and III as described in deed to Larry Reynolds, recorded in County Clerk's Instrument No. D202115424, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

BEGINNING at a 3/8-inch iron rod found for corner at the intersection of the westerly right-of-way of Smith Street, a 60-foot right-of-way, with the northerly right-of-way of Texas and Pacific Railroad, a variable width right-of-way, said point being the southeast corner of said Lot 3;

THENCE North 84 deg 26 min 38 sec West, departing said westerly right-of-way and along said northerly right-of-way, a distance of 177.88 feet to a 1/2-inch iron rod found for corner at the intersection of the northerly right-of-way of said Texas and Pacific Railroad with the easterly right-of-way of Business Highway 287, a variable width right-of-way;

THENCE departing the northerly right-of-way of said Texas and Pacific Railroad and along the easterly right-of-way of said Business Highway 287 the following:

North 05 deg 48 min 42 sec West, a distance of 76.49 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 04 deg 15 min 22 sec East, a distance of 24.30 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 14 deg 07 min 49 sec West, a distance of 201.04 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 14 deg 09 min 38 sec West, a distance of 230.04 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

[Legal description continued on next pages.]

THENCE North 60 deg 35 min 09 sec East, departing the easterly right-of-way of said Business Highway 287, a distance of 285.70 feet to a point for corner (falls in concrete rubble);

THENCE South 03 deg 51 min 53 sec West, a distance of 168.82 feet to a P.K. nail set for corner;

THENCE South 83 deg 50 min 41 sec East, a distance of 77.34 feet to a P.K. nail set for corner and being situated in the westerly right-of-way of said Smith Street;

THENCE South 03 deg 50 min 30 sec West, along said westerly right-of-way, a distance of 216.27 feet to a 1/2- inch iron rod with red plastic cap stamped "W.A.I." set for corner and being the northeast corner of said Lot 1, Block 1;

THENCE North 84 deg 30 min 41 sec West, departing the westerly right-of-way of said Smith Street and along the north line of said Lot 1, Block 1, a distance of 74.64 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 05 deg 19 min 16 sec West, departing said north line and over and across said Lot 1, Block 1, a distance of 105.13 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 83 deg 32 min 00 sec East, continuing over and across said Lot 1, Block 1, a distance of 77.07 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner, and being situated in the westerly right-of-way of said Smith Street;

THENCE South 04 deg 01 min 22 sec West, continuing along the westerly right-of-way of said Smith Street, a distance of 182.49 feet to the POINT OF BEGINNING.

CONTAINING within these metes and bounds 3.124 acres or 136,082 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 2nd day of June, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of North 84 deg 26 min 38 sec West (plat-North 84 deg 28 min 00 sec West), along the northerly line of Lot 3, Block 1, Rountree Addition, recorded in Cabinet a, Slide 1635, Official Public Records, Tarrant County, Texas.

Tract 3:

BEING a tract of land situated in the F.B. WADDELL SURVEY, ABSTRACT NO. 1658, City of Mansfield, Tarrant County, Texas and being all of Lot 1-R-1, Block 2, Rountree Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 6164, Plat Records, Tarrant County, Texas, and also being all of Tract IV as described in deed to Larry Reynolds, recorded in County Clerk's File No. D202115424, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

BEGINNING at a 1/2-inch iron rod found for corner at the southwest corner of said Lot 1-R-1, Block 2, said iron rod also being situated at the intersection of the easterly right-of-way of Smith Street (50-foot right-of-way) and the northerly right-of-way of Texas and Pacific Railroad (variable width right-of-way);

THENCE North 04 deg 08 min 37 sec East, departing said northerly right-of-way and along said easterly right-of- way, a distance of 339.54 feet to a MAG nail set for corner;

[Legal description continued on next page.]

THENCE North 04 deg 01 min 02 sec East, continuing along the easterly right-of-way of said Smith Street, a distance of 164.70 feet to a point for corner from which a 1/2-inch iron rod found bears North 77 deg 57 min 42 sec West, a distance of 0.74 feet;

THENCE South 83 deg 45 min 40 sec East, departing the easterly right-of-way of said Smith Street, a distance of 332.60 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 84 deg 46 min 09 sec East, a distance of 294.05 feet to a point for corner from which a 1/2-inch iron rod found bears North 17 deg 36 min 13 sec West, a distance of 1.05 feet;

THENCE South 02 deg 52 min 46 sec West, a distance of 83.48 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 08 deg 51 min 03 sec West, a distance of 419.12 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner and being situated in the north right-of-way of said Texas and Pacific Railroad;

THENCE North 84 deg 26 min 37 sec West, along said northerly right-of-way, a distance of 593.73 feet to the POINT OF BEGINNING.

CONTAINING within these metes and bounds 7.066 acres or 307,778 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 2nd day of June, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of North 84 deg 26 min 38 sec West (plat-North 84 deg 28 min 00 sec West), along the northerly line of Lot 3, Block 1, Rountree Addition, recorded in Cabinet a, Slide 1635, Official Public Records, Tarrant County, Texas.

APN: 07818130, 06498302, 06556590, 06676820, 07715293

PROPERTY ADDRESS: 1945 FARM ROAD 157 AND 305 SMITH ST., MANSFIELD, TX 76063

**EXHIBIT A**
**LEGAL DESCRIPTION**

**TRACT I:**

Lot 1, in Block 1, of REYNOLDS ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 6684, Plat Records, Tarrant County, Texas.

**TRACT II:**

Lot 1, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 771, Plat Records Tarrant County, Texas.

SAVE AND EXCEPT: Being a portion of Lot 1, Block 1, of ROUNTREE ADDITION, an Addition to the City of Mansfield, Tarrant County, Texas, according to the Plat thereof recorded in Cabinet A, Slide 77 1, of the Plat Records of Tarrant County, Texas, also being a portion of "Tract I" conveyed to Larry Reynolds by deed recorded in Volume 15634, Page 84, Deed Records, Tarrant County, Texas, and being more particularly described by metes and-bounds as follows:

BEGINNING at a ½ iron rod found in the west right-of-way line of Smith Street and the north right-of- way line of Texas & Pacific Railroad for the southeast corner of said Lot 1 and the southeast corner of said Tract I;

THENCE N 84° 32' 08" W, with the north right-of-way line of said Texas & Pacific Railroad and the south line of said Lot 1 and said Tract 1 190.77 feet to a concrete monument found in the east right-of- way line of Spur 496 for the southwest corner of said Lot 1 and said Tract I;

THENCE N 03° 53' 20" E, with the east right-of-way line of said Spur 496 and the west line of said Lot 1 and said Tract I, 24.71 feet to a ½" iron rod found,

THENCE N 14° 05' 01" W, continuing with the east right-of-way line of said Spur 496 and the west line of said Lot 1 and said Tract 1, 201.11 feet to railroad spike found for the northwest corner of said Lot 1 and said Tract 1, and the southwest corner of Lot 2, Block 1, Rountree Addition recorded in Cabinet A, Slide 1060, PRTCT;

THENCE S 84° 26' 29" E, with the north line of said Lot 1 and said Tract I and the south line of said Lot 2, 178.92 feet to a metal fence post for corner;

THENCE S 05° 23' 28" W, 105.13 feet to a metal fence post for corner;

THENCE S 83° 27' 48" E, 77.10 feet to a metal fence post in the west right-of-way line of said Smith Street and the east line of said Lot 1 and said Tract I;

THENCE S 04° 04' 35" W, with the west right-of-way line of said Smith Street and the east line of said Lot 1 and said Tract I, 107.38 feet, to the POINT OF BEGINNING and containing 0.8895 acres of land more or less

**TRACT III:**

Lot 1-R-1, in Block 2, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 6164, Plat Records, Tarrant County, Texas.

**TRACT IV:**
Lot 2, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 1060, Plat Records, Tarrant County, Texas.

SAVE & EXCEPT that portion conveyed to Communities Foundation of Texas, Inc., by Warranty Deed dated 8/16/1993, recorded in Volume 11381, Page 401, Real Property Records, Tarrant County, Texas.

**TRACT V:**

Lot 3, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 1635, Plat Records, Tarrant County, Texas.

Exhibit "C"

Appointment of Substitute Trustee

D218247297 11/6/2018 1:43 PM    PGS 3    Fee: $24.00    Submitter: CSC ERECORDING SOLUTIONS
Electronically Recorded by Tarrant County Clerk in Official Public Records    Mary Louise Garcia  Mary Louise Garcia

Upon Recordation, Return To:
Nathan Sommers Jacobs, a Professional Corporation
2800 Post Oak Blvd., 61st Floor
Houston, Texas 77056
Attention: Anna M. Virene

## APPOINTMENT OF SUBSTITUTE TRUSTEE

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS |
| COUNTY OF TARRANT | § | |

Date:                    November 6, 2018

Deed of Trust:           Deed of Trust, Assignment of Rents, Security Agreement and
                         Fixture Filing (the "Deed of Trust")

    Date:                November 22, 2017

    Grantor/Borrower:    Mansfield Boat and RV Storage L.L.C., a Texas limited liability
                         company

    Trustee:             Anna M. Virene

    Beneficiary/Lender:  Pender Capital Asset Based Lending Fund I, LP, a Delaware
                         limited partnership

    Recording
    information:          Recorded under County Clerk's File No. D217277234 of the
                         Official Public Records of Tarrant County, Texas.

    Property:            Certain real property (and interests therein) located in Tarrant
                         County, Texas, and all other Mortgaged Property (as defined in
                         the Deed of Trust), all as more specifically described in the
                         Deed of Trust.

Mailing Address of
Beneficiary/Lender:      11766 Wilshire Boulevard
                         Suite 460
                         Los Angeles, California 90025
                         Attention: Zachary W. Murphy

Substitute Trustee:      Neil Beldock

1

Mailing Address:    Pender Capital Asset Based Lending Fund I, LP
3232 McKinney Avenue, Suite 855
Dallas, Texas 75204

The Deed of Trust provides that Beneficiary/Lender may remove the Trustee and select and appoint a substitute trustee.

Beneficiary/Lender hereby removes the Trustee as trustee under the Deed of Trust and appoints Neil Beldock as Substitute Trustee under the Deed of Trust to act under and by virtue of the Deed of Trust.

2

EXECUTED effective as of the date set forth hereinabove.

PENDER CAPITAL ASSET BASED LENDING FUND I, LP

By:   Pender Capital Management, LLC, its managing director

By: _____
Zachary W. Murphy
Manager

STATE OF ~~TEXAS~~ California §
§
COUNTY OF _Orange_ §

SUBSCRIBED AND SWORN TO before me on the __5th__ day of November, 2018, by Zachary W. Murphy, on his behalf.

YOUNG WAN CHOI
COMM. #2186304
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Expires April 8, 2021

Notary Public, State of ~~Texas~~ California
Young Wan Choi, Notary Public
Printed Name: _____
My commission expires: _04/08/2021_

3

# Exhibit F

## NOTIFICATION OF DISPOSITION OF COLLATERAL

### NOTIFICATION DATE: FEBRUARY 7, 2019

TO:

SENT VIA CERTIFIED MAIL NO.    7018 1830 0001 4302 2776
AND REGULAR MAIL

MANSFIELD BOAT AND RV STORAGE L.L.C.
605 Rutgers Drive
Lancaster, Texas 75134
Attention: Larry J. Reynolds

SENT VIA CERTIFIED MAIL NO.    7018 1830 0001 4302 2783
AND REGULAR MAIL

B. NEAL AINSWORTH, TRUSTEE OF THE POYNER WILKINS GENERATIONAL TRUST
2521 E. Mountain Village Parkway, Suite 225
Wasilla, Alaska 99654
Attention: B. Neal Ainsworth

SENT VIA CERTIFIED MAIL NO.    7018 1830 0001 4302 2790
AND REGULAR MAIL

LARRY J. REYNOLDS
305 Smith Street
Mansfield, Texas 76063

SENT VIA CERTIFIED MAIL NO.    7018 1830 0001 4302 2806
AND REGULAR MAIL

LARRY J. REYNOLDS
6160 Deep Lake Drive
Valdez, Alaska 99686

SENT VIA CERTIFIED MAIL NO.    7018 1830 0001 4302 2813
AND REGULAR MAIL

MANSFIELD BOAT AND RV STORAGE L.L.C.
c/o The Law Offices of Glenn R. Snyder
627 Mercury Venue, Suite 103
Duncanville, Texas 75137
Attention:  Glenn R. Snyder

FROM SECURED PARTY:   **PENDER CAPITAL ASSET BASED LENDING FUND I, LP**
11766 Wilshire Boulevard
Suite 460
Los Angeles, California 90025
Email: Zach@pendercapital.com
Attention: Zachary W. Murphy

NAME OF DEBTOR:   **MANSFIELD BOAT AND RV STORAGE L.L.C.**
605 Rutgers Drive
Lancaster, Texas 75134
Attention: Larry J. Reynolds

The real and personal property described as the "Property" in the attached Notice of Substitute Trustee's Foreclosure Sale (the "Notice of Sale" (such Notice of Sale is attached hereto as Exhibit "A")) will be sold at the request of the Secured Party by Neil Beldock, as Substitute Trustee, to the highest qualified bidder at a public sale, as more specifically described in the Notice of Sale.

The sale is scheduled to be held at the following date, time, and place:

Day and Date:   Tuesday, March 5, 2019.

Time:   The sale will begin no earlier than 10:00 a.m. or no later than three (3) hours thereafter. The sale will be completed by no later than 4:00 p.m.

Place:   Tarrant County Courthouse, 100 West Weatherford Street, Fort Worth, Texas 76196, at the following location: the base of the courthouse steps on the east side of the building or, if the preceding area is no longer the designated area, at the area most recently designated by the Tarrant County Commissioner's Court, pursuant to Section 51.002 of the Texas Property Code.

The Debtor is entitled to an accounting of the unpaid indebtedness secured by the Property and may request an accounting by submitting a written request to the Secured Party by email per the information appearing above.

PENDER CAPITAL ASSET BASED LENDING FUND I, LP

By:    Pender    Capital    Management,    LLC,    its
managing director

By: _____

Zachary W. Murphy
Manager

Exhibit "A"

<u>Notice of Sale</u>

STATE OF TEXAS                          §            KNOW ALL MEN
                                        §
COUNTY OF TARRANT                       §            BY THESE PRESENTS

## NOTICE OF SUBSTITUTE TRUSTEE'S FORECLOSURE SALE

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

1.    Property.

The property to be sold is described as follows (collectively, the "Property"): certain real property (and interests therein) located in Tarrant County, Texas, and all other Mortgaged Property, all as more specifically described in Exhibit "A" attached hereto and incorporated herein for all purposes.

2.    Deed of Trust.

The instrument to be foreclosed is that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, executed by Mansfield Boat and RV Storage L.L.C., a Texas limited liability company ("Borrower"), dated as of November 22, 2017, to Paul Kellogg, Esq., Trustee, for the benefit of Pender Capital Asset Based Lending Fund I, LP, a Delaware limited partnership ("Lender"), and recorded under County Clerk's File No. D217277234 of the Real Property Records of Tarrant County, Texas (the "Deed of Trust"), which Deed of Trust secures certain indebtedness described therein, including, but not limited to, that certain Promissory Note in the original principal amount of $6,700,000.00, executed by Borrower and payable to Lender, as modified by Promissory Note Modification Agreement dated as of June 18, 2018, executed by Borrower, Lender, and guarantors (as modified, the "Note").

3.    Foreclosure Sale.

The Property will be sold at a foreclosure sale as permitted by the Deed of Trust, the Texas Property Code, and the Texas Business and Commerce Code to the highest bidder for cash. The sale is scheduled to be held at the following date, time, and place:

        Date:       Tuesday, March 5, 2019

        Time:       The sale will begin no earlier than 10:00 a.m. or no later than three (3) hours thereafter. The sale will be completed by no later than 4:00 p.m.

Place:      Tarrant County Courthouse, 100 West Weatherford Street, Fort Worth, Texas 76196, at the following location: the base of the courthouse steps on the east side of the building or, if the preceding area is no longer the designated area, at the area most recently designated by the Tarrant County Commissioner's Court, pursuant to Section 51.002 of the Texas Property Code.

4.    Trustee and Substitute Trustee.

Paul Kellogg, Esq. is named as the original Trustee under the Deed of Trust. By Appointment of Substitute Trustee dated May 8, 2018, Lender appointed Anna M. Virene as a Substitute Trustee. By Appointment of Substitute Trustee dated November 6, 2018, Lender has appointed the undersigned, Neil Beldock, as the Substitute Trustee under the Deed of Trust, said appointment being in a manner authorized by the Deed of Trust. Notice is given that before the sale Lender may appoint another person substitute trustee to conduct the sale.

5.    Events of Default.

A number of Events of Default (as defined in the Deed of Trust) have occurred. The Note has been accelerated and the full outstanding principal balance of the Note is due and payable. As of the date of this Notice of Substitute Trustee's Foreclosure Sale, Lender has not received payment in full of the Note, and the Events of Default continue. Therefore, Lender has requested that the Substitute Trustee sell the Property to satisfy the Note and the other Indebtedness (as defined in the Deed of Trust).

6.    Terms of Sale.

The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the Deed of Trust, Lender has the right to direct the Substitute Trustee to sell the Property in one or more parcels and/or to sell all or only part of the Property. Pursuant to Section 51.009 of the Texas Property Code, the Property will be sold in AS IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the Deed of Trust. The conveyance of the Property shall be made subject to any and all liens, restrictions, covenants, conditions, encumbrances, and easements, if any, affecting the Property, but only to the extent that the same are still in force and effect, shown of record in the Real Property Records of Tarrant County, Texas, and the conveyance shall be made further subject to any and all unpaid ad valorem taxes and assessments on the Property.

Questions concerning the sale may be directed to the undersigned Substitute Trustee at the contact information listed below.

Notification Date: February 7, 2019

Neil Beldock
Substitute Trustee
3232 McKinney Avenue, Suite 855
Dallas, Texas 75204

Exhibit "A"

Property

All of Borrower's present and future right, title, and interest in and to all of the following (collectively, the "Mortgaged Property"):

(1) the real property described in Exhibit "B" attached hereto (the "Land");

(2) the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions (the "Improvements");

(3) all property owned by Borrower which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment (the "Fixtures");

(4) all: (i) accounts (including deposit accounts); (ii) equipment and inventory owned by Borrower which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements, including furniture, furnishings, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software); (iii) other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements; (iv) any operating agreements relating to the Land or the Improvements; (v) any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements; (vi) all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land or the Improvements and including subsidy or similar payments received from any sources, including a governmental authority; and (vii) any rights of Borrower in or under letters of credit (the "Personalty");

(5) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

(6) all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirement;

(7) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

(8) all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

(9) all proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds;

(10) all rents, revenues and other income of the Land or the Improvements, including parking fees, laundry and vending machine income and fees and charges for other services provided at the Mortgaged Property, whether now due, past due, or to become due, and deposits forfeited by tenants (the "Rents") and all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals (the "Leases");

(11) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of Borrower's indebtedness owed to Lender;

(12) all funds on deposit pursuant to any separate agreement between Borrower and Lender (including, without limitation, all contingency reserve amounts estimated by Lender to be required for (i) property insurance premiums and premiums for other types of insurance required by the Deed of Trust, (ii) taxes, (iii) water and sewer charges (that could become a lien on the Mortgaged Property), and (iv) assessments or other charges (that could become a lien on the Mortgaged Property) (collectively, the "Impositions Deposits")) for the purpose of establishing replacement reserves for the Mortgaged Property, to fund any water and sewer charges, premiums for fire or other hazard insurance, rent loss insurance or other insurance required by Lender, taxes, assessments, vault rentals, or other charges or expenses required by Lender to protect the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account;

(13) all refunds or rebates of the obligations of Borrower for which the Imposition Deposits are required (the "Impositions") by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the 2017 real property tax year);

(14) all tenant security deposits which have not been forfeited by any tenant under any lease and any bond or other security in lieu of such deposits; and

(15) all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

Exhibit "B"

<u>Real Property</u>

**EXHIBIT "A"**

**DESCRIPTION OF THE LAND**

THE LAND REFERRED TO HEREIN IS SITUATED IN TARRANT COUNTY, STATE OF TEXAS, AND IS DESCRIBED AS FOLLOWS:

Tract 1:

BEING a tract of land situated in the SAMUEL WEST SURVEY, ABSTRACT NO. 1648, in the City of Mansfield, Tarrant County, Texas, and being all of Lot 1, Block 1, Reynolds Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 6684, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

COMMENCING at a 1/2-inch iron rod found for the northeast corner of Lot 2C, Block 1, Reynolds Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 6690, Official Public Records, Tarrant County, Texas, said iron rod also being situated in the westerly right-of-way of F.M. Highway 157, a 120-foot right-of-way (S. Cooper Street);

THENCE North 89 deg 56 min 34 sec West, departing the westerly right-of-way of said F.M. Highway 157 and along the north line of said Lot 2C, Block 1, a distance of 374.71 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for the POINT OF BEGINNING;

THENCE South 00 deg 02 min 24 sec West, a distance of 610.80 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 67 deg 43 min 34 sec East, a distance of 252.77 feet to a 1/2-inch iron rod with plastic cap found for corner, and being situated in the westerly right-of-way of said F.M. Highway 157, said iron rod also being the beginning of a non-tangent curve to the right having a radius of 4,860.93 feet, a central angle of 00 deg 01 min 45 sec, a chord bearing of South 14 deg 57 min 52 sec West, and a chord length of 2.48 feet;

THENCE along said westerly right-of-way and said curve to the right, an arc distance of 2.48 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 75 deg 18 min 50 sec West, continuing along said westerly right-of-way, a distance of 8.49 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 14 deg 36 min 38 sec West, along the westerly right-of-way of said F.M. Highway 157, a distance of 10.00 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 01 deg 38 min 26 sec West, continuing along said westerly right-of-way, a distance of 12.30 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE North 67 deg 43 min 34 sec West, departing the westerly right-of-way of said F.M. Highway 157, a distance of 826.02 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

[Legal description continued on next pages.]

THENCE North 00 deg 36 min 24 sec East, a distance of 416.29 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 89 deg 56 min 34 sec East, a distance of 538.22 feet to the POINT OF BEGINNING. CONTAINING within these metes and bounds 6.681 acres or 291,038 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 28th day of May, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of South 11 deg 12 min 08 sec West (plat-South 11 deg 49 min 40 sec West), along the Northwesterly right-of-way of F.M. Highway 157 (Cooper Street), recorded in Cabinet A, Slide 6684, Official Public Records, Tarrant County, Texas.

Tract 2:

BEING a tract of land situated in the F.B. WADDELL SURVEY, ABSTRACT NO. 1658, in the City of Mansfield, Tarrant County, Texas, and being all of Lot 3, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 1635, Plat Records, Tarrant County, Texas, a portion of Lot 1, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 771, Official Public Records, Tarrant County, Texas, and a portion of Lot 2, Block 1, Roundtree Addition, an addition to the City of Mansfield, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 1060, Official Public Records, Tarrant County, Texas, and also being Tracts I, II and III as described in deed to Larry Reynolds, recorded in County Clerk's Instrument No. D202115424, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

BEGINNING at a 3/8-inch iron rod found for corner at the intersection of the westerly right-of-way of Smith Street, a 50-foot right-of-way, with the northerly right-of-way of Texas and Pacific Railroad, a variable width right-of-way, said point being the southeast corner of said Lot 3;

THENCE North 84 deg 26 min 38 sec West, departing said westerly right-of-way and along said northerly right-of-way, a distance of 177.88 feet to a 1/2-inch iron rod found for corner at the intersection of the northerly right-of-way of said Texas and Pacific Railroad with the easterly right-of-way of Business Highway 287, a variable width right-of-way;

THENCE departing the northerly right-of-way of said Texas and Pacific Railroad and along the easterly right-of-way of said Business Highway 287 the following:

North 05 deg 48 min 42 sec West, a distance of 76.49 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 04 deg 15 min 22 sec East, a distance of 24.30 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 14 deg 07 min 49 sec West, a distance of 201.04 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

North 14 deg 09 min 38 sec West, a distance of 230.04 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

[Legal description continued on next pages.]

Texas Deed of Trust
Exhibit "A" -- Legal Description

Page A-2

THENCE North 60 deg 35 min 09 sec East, departing the easterly right-of-way of said Business Highway 287, a distance of 295.70 feet to a point for corner (falls in concrete rubble);

THENCE South 03 deg 51 min 53 sec West, a distance of 168.82 feet to a P.K. nail set for corner;

THENCE South 83 deg 50 min 41 sec East, a distance of 77.34 feet to a P.K. nail set for corner and being situated in the westerly right-of-way of said Smith Street;

THENCE South 03 deg 50 min 30 sec West, along said westerly right-of-way, a distance of 216.27 feet to a 1/2- inch iron rod with red plastic cap stamped "W.A.I." set for corner and being the northeast corner of said Lot 1, Block 1;

THENCE North 84 deg 30 min 41 sec West, departing the westerly right-of-way of said Smith Street and along the north line of said Lot 1, Block 1, a distance of 74.64 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 05 deg 19 min 16 sec West, departing said north line and over and across said Lot 1, Block 1, a distance of 105.13 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 83 deg 32 min 00 sec East, continuing over and across said Lot 1, Block 1, a distance of 77.07 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner, and being situated in the westerly right-of-way of said Smith Street;

THENCE South 04 deg 01 min 22 sec West, continuing along the westerly right-of-way of said Smith Street, a distance of 182.49 feet to the POINT OF BEGINNING.

CONTAINING within these metes and bounds 3.124 acres or 136,082 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 2nd day of June, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of North 84 deg 26 min 39 sec West (plat-North 84 deg 28 min 00 sec West), along the northerly line of Lot 3, Block 1, Rountree Addition, recorded in Cabinet a, Slide 1635, Official Public Records, Tarrant County, Texas.

Tract 3:

BEING a tract of land situated in the F.B. WADDELL SURVEY, ABSTRACT NO. 1658, City of Mansfield, Tarrant County, Texas and being all of Lot 1-R-1, Block 2, Rountree Addition, an addition to the City of Mansfield, Tarrant County, Texas according to the plat thereof recorded in Cabinet A, Slide 6164, Plat Records, Tarrant County, Texas, and also being all of Tract IV as described in deed to Larry Reynolds, recorded in County Clerk's File No. D202115424, Official Public Records, Tarrant County, Texas, and being more particularly described as follows:

BEGINNING at a 1/2-inch iron rod found for corner at the southwest corner of said Lot 1-R-1, Block 2, said iron rod also being situated at the intersection of the easterly right-of-way of Smith Street (50-foot right-of-way) and the northerly right-of-way of Texas and Pacific Railroad (variable width right-of-way);

THENCE North 04 deg 09 min 37 sec East, departing said northerly right-of-way and along said easterly right-of- way, a distance of 339.54 feet to a MAG nail set for corner;

[Legal description continued on next page.]

Texas Deed of Trust
Exhibit "A" – Legal Description

Page A-3

THENCE North 04 deg 01 min 02 sec East, continuing along the easterly right-of-way of said Smith Street, a distance of 164.70 feet to a point for corner from which a 1/2-inch iron rod found bears North 77 deg 57 min 42 sec West, a distance of 0.74 feet;

THENCE South 83 deg 45 min 40 sec East, departing the easterly right-of-way of said Smith Street, a distance of 332.60 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 84 deg 46 min 09 sec East, a distance of 294.05 feet to a point for corner from which a 1/2-inch iron rod found bears North 17 deg 36 min 13 sec West, a distance of 1.05 feet;

THENCE South 02 deg 52 min 46 sec West, a distance of 83.46 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner;

THENCE South 08 deg 51 min 03 sec West, a distance of 419.12 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I." set for corner and being situated in the north right-of-way of said Texas and Pacific Railroad;

THENCE North 84 deg 26 min 37 sec West, along said northerly right-of-way, a distance of 593.73 feet to the POINT OF BEGINNING.

CONTAINING within these metes and bounds 7.066 acres or 307,778 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 2nd day of June, 2015, utilizing a G.P.S. measurement (NAD 83) from the GeoShack VRS network of North 84 deg 26 min 38 sec West (plat-North 84 deg 28 min 00 sec West), along the northerly line of Lot 3, Block 1, Rountree Addition, recorded in Cabinet a, Slide 1635, Official Public Records, Tarrant County, Texas.

APN: 07818130, 06498302, 06556590, 06676820, 07715293

PROPERTY ADDRESS: 1945 FARM ROAD 157 AND 305 SMITH ST., MANSFIELD, TX 76063

EXHIBIT A
LEGAL DESCRIPTION

**TRACT I:**

Lot 1, in Block 1, of REYNOLDS ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 6684, Plat Records, Tarrant County, Texas.

**TRACT II:**

Lot 1, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 771, Plat Records Tarrant County, Texas.

SAVE AND EXCEPT: Being a portion of Lot 1, Block 1, of ROUNTREE ADDITION, an Addition to the City of Mansfield, Tarrant County, Texas, according to the Plat thereof recorded in Cabinet A, Slide 771, of the Plat Records of Tarrant County, Texas, also being a portion of "Tract I" conveyed to Larry Reynolds by deed recorded in Volume 15634, Page 84, Deed Records, Tarrant County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at a ½ iron rod found in the west right-of-way line of Smith Street and the north right-of- way line of Texas & Pacific Railroad for the southeast corner of said Lot 1 and the southeast corner of said Tract I;

THENCE N 84° 32' 08" W, with the north right-of-way line of said Texas & Pacific Railroad and the south line of said Lot 1 and said Tract 1 190.77 feet to a concrete monument found in the east right-of- way line of Spur 496 for the southwest corner of said Lot I and said Tract I;

THENCE N 03° 53' 20" E, with the east right-of-way line of said Spur 496 and the west line of said Lot I and said Tract I, 24.71 feet to a ½" iron rod found,

THENCE N 14° 05' 01" W, continuing with the east right-of-way line of said Spur 496 and the west line of said Lot I and said Tract I, 201.11 feet to railroad spike found for the northwest corner of said Lot 1 and said Tract I, and the southwest corner of Lot 2, Block 1, Rountree Addition recorded in Cabinet A, Slide 1060, PRTCT;

THENCE S 84° 26' 29" E, with the north line of said Lot I and said Tract I and the south line of said Lot 2, 178.92 feet to a metal fence post for corner;

THENCE S 05° 23' 28" W, 105.13 feet to a metal fence post for corner;

THENCE S 83° 27' 48" E, 77.10 feet to a metal fence post in the west right-of-way line of said Smith Street and the east line of said Lot I and said Tract I;

THENCE S 04° 04' 35" W, with the west right-of-way line of said Smith Street and the east line of said Lot I and said Tract I, 107.38 feet, to the POINT OF BEGINNING and containing 0.8895 acres of land more or less

**TRACT III:**

Lot 1-R-1, in Block 2, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 6164, Plat Records Tarrant County, Texas.

**TRACT IV:**
Lot 2, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 1060, Plat Records, Tarrant County, Texas.

SAVE & EXCEPT that portion conveyed to Communities Foundation of Texas, Inc., by Warranty Deed dated 8/16/1993, recorded in Volume 11381, Page 401, Real Property Records, Tarrant County, Texas.

**TRACT V:**

Lot 3, in Block 1, of ROUNTREE ADDITION, an addition to the City of Mansfield, Tarrant County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Slide 1635, Plat Records, Tarrant County, Texas.

# Exhibit G



## Thomas USAF Group

February 7, 2019

Mr. Beeman Ainsworth
Mansfield Boat and RV Storage, L.L.C.
Rutger Drive
Lancaster, TX 75143.4

Dear Mr. Ainsworth,

Thomas USAF Group is pleased to provide this **Term Sheet** for the loan subject to the following terms, provisions, and conditions. Please understand that this is **not a commitment or approval**, but rather, a suggested credit facility structure that we believe is consistent with the SBA and the Lender's current policy guidelines.

**This loan is further subject to approval by the U.S. Small Business Administration under its SBA 504 loan program. The borrower(s) and Guarantor(s) agree to provide any additional information as required pursuant to the program and have full knowledge that the loan cannot close without SBA approval.**

| | |
|---|---|
| **Borrower:** | Poyner Wilkins Generational Trust |
| **Guarantors:** | Unconditional, Joint and several personal guarantee of anyone who has an ownership of 20% or more. |
| **Purpose:** | To provide funds for refinancing debt and building improvements. |

**Sources of Funds:**

| | | |
|---|---|---|
| TUSAF 1st Mortgage Loan | $ 3,923,500 | 39.1% |
| SBA 504 2nd Mortgage | $ 3,923,500 | 39.1% |
| Borrower's Equity* | $ 2,200,000 | 21.9% |
| **Total** | **$ 10,047,000** | **100.0%** |

*Equity comes from appraised value of real estate less proposed debt

CAUSE NO. 048-305488-19

| | |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP<br>Plaintiff | IN THE DISTRICT COURT |
| vs | 48 JUDICIAL DISTRICT |
| LARRY REYNOLDS and B. NEAL AINSWORTH, as Trustee of the Poyner Wilkins Generational Trust | TARRANT COUNTY, TEXAS |

### B NEAL AINSWORTH'S UNSWORN DECLARATION
### PURSUANT TEX. CIV. PROC & REM. CODE §132.001

My names is B. Neal Answorth. I am also known as Beeman Ainsworth. In my capacity as the Trustee of the Poyner Wilkins Generational Trust, I am one of the Defendants in the above styled and numbered cause of action.

1.    On November 2, 2018, I became Trustee of the Poyner Wilkins Generational Trust.  In that capacity I am the custodian of the records for both the Poyner Wilkins Generational Trust and Mansfield Boat and RV Storage, LLC. The exhibits attached to this declaration as Exhibits. These records are the original or exact duplicates of the original records of the Mansfield Boat and RV Storage, LLC. It is the regular practice of Mansfield Boat and RV Storage, LLC to make this type of record at or near the time of each act, event, condition, condition, opinion, or diagnosis set forth in the record. It is the regular practice of Mansfield Boat and RV Storage, LLC for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them. It is the regular practice of my Mansfield Boat and RV Storage, LLC to keep this type of record in the course of regularly conducted business activity. It is the regular practice of the Mansfield Boat and RV Storage, LLC activity to make the records.  The business records are attached to the Unsworn Declaration of Larry Reynolds as Exhibits "A - F".  I have reviewed the exhibits and they are true and correct copies.   References to exhibits in this declaration are references to the exhibits attached to the Declaration of Larry Reynolds.

2.    The Poyner Wilkins Generational Trust is the sole owner and member of the entity know as Mansfield Boat and RV Storage, LLC.  Mansfield Boat and RV Storage, LLC is the maker of the Note which is the subject the Guaranty Agreements which are the subject of Pender Capital Asset Based Lending Fund

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001      Page 1**

I, LP's claims against Larry Reynolds and me, in my capacity as the Trustee for the Poyner Wilkins Generational Trust.

3. Mansfield Boat and RV Storage, LLC and Pender Capital Asset Based Lending Fund I, LP entered into a loan agreement and note secured a deed of trust in the real property described in the Deed of Trust attached to the Declaration of Larry Reynolds as Exhibit "A." The Note attached to the Declaration of Larry Reynolds as Exhibit "B" attached to this declaration.

4. A dispute arose under the loan, note and deed of trust, including a request for a judicial foreclosure in an action filed by Pender Capital Asset Based Lending Fund I, LP filed Mansfield Boat and RV Storage, LLC in the 48th District Court of Tarrant County, Texas in Cause Number 048-299273-18, styled Pender Capital Assets Based Lending Fund I, LP v. Mansfield Boat and RV Storage LLC, v Janice Ruth Reynolds, Intervenor v. Anna M Virene, Judge David L. Evans presiding, referred to herein as the Original Action.

5. Mansfield Boat and RV Storage, LLC, entered into a Confidential Full and Final Compromise Settlement Agreement on or about July 13, 2018, (Settlement Agreement), with Pender Capital Asset Based Lending Fund I, LP. The terms of the Settlement Agreement included:

   (a) Provisions requiring Mansfield Boat and RV Storage, LLC to make payment of funds to Pender Capital Asset Based Lending Fund I, LP to be held in escrow for payment of taxes and insurance on the subject property.

   (b) A modification of the original note, entitled "Promissory Note Modification Agreement, which provided new and additional terms to the original note.

   (c) The requirement for a Deposit Account Control Agreement.

   (d) A Cash Management Agreement.

   A true and correct copy of the Settlement Agreement is attached to the Declaration of Larry Reynolds as Exhibit "C."

6. Pursuant to the terms of the Settlement Agreement the Original Action was dismissed by order of the 48th District Court on July 13, 2018.

7. At closing of the original loan, the following sums made part of the loan cost and fees and included in total loan amount.

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001    Page 2**
C:\Work\Independent Cases\Y2019-0001 Pender Capital v Larry Reynolds et al\Forms and Doc Prep\Affidavits\UnSworn Declaration of Neal Answorth, Trustee.wpd

    (a)   $15,000.00 was included as a fee to Pender Capital Asset Based Lending Fund I, LP which Pender Capital Asset Based Lending Fund I, LP claimed was a "due diligence fee" which was included in the total amount of the loan made by Mansfield Boat and RV Storage, LLC.

        (1)   However, Mansfield Boat and RV Storage, LLC had previously paid the $15,000.00 due diligence fee to Pender Capital Asset Based Lending Fund I, LP.

        (2)   Mansfield Boat and RV Storage, LLC has never received the return of the $15,000.00 double payment against the sum due and owing by Mansfield Boat and RV Storage, LLC, nor has the sum credited against the amounts claimed by Pender Capital Asset Based Lending Fund I, LP to be due and owing.

    (b)   $7,500.00 as a fee for a lockbox.

        (1)   However, the lockbox was never set up or established.

        (2)   Pender Capital Asset Based Lending Fund I, LP has received credit for the fees paid for the lockbox, although the lockbox was never set up or established. It still have not been established.

8.    Mansfield Boat and RV Storage, LLC made its monthly payments as required on the modified note through and including the payments for September 2018. The amounts of the payments did not include interest adjustments for the sum of $255,000.00 added to the principal balance of the modified note.

9.    Although Pender Capital Asset Based Lending Fund I, LP had received escrow funds for payment of certain charges under the Original Loan, as modified, Pender Capital Asset Based Lending Fund I, LP failed to make certain payments, which Mansfield Boat and RV Storage, LLC was required to make, as follows:

    (a)   $15,463.00 for property insurance on the two properties securing the loan.

    (b)   $4,775.40 for liability insurance on the two properties securing the loan.

    (c)   $10,229.75 for shortages in property tax payments on the properties.

10.    A failure of the Mansfield Boat and RV Storage, LLC to pay taxes or to maintain insurance would constitute a breach under the agreements of the parties. However, Defendant had a duty to use the funds paid into escrow to make such

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001    Page 3**

payments, and failed to do make such payments, instead keeping all or part of the funds paid to Defendant for such payments.

11. Further, Pender Capital Asset Based Lending Fund I, LP invoiced the Mansfield Boat and RV Storage, LLC for amounts in excess of what was due in owing in the amount of $2,688.23 for the August 2018 payment and $2,688.23 for the September 2018. Payment. However, Mansfield Boat and RV Storage, LLC paid such overcharges.

12. Pender Capital Asset Based Lending Fund I, LP was notified of such failures, but Pender Capital Asset Based Lending Fund I, LP failed to cure the failures or to correct properly credit Mansfield Boat and RV Storage, LLC's debts and obligations, despite such funds being held in trust for those purposes.

13. For payments made after the September 2018 Payment:

    (a) For the note due for October 2017, Mansfield Boat and RV Storage, LLC made offsets for the part of the funds not credited by Pender Capital Asset Based Lending Fund I, LP and made payment in the amount of $33,155.39, which is the amount of payment prior to interest adjustment, less part of the sums paid by Mansfield Boat and RV Storage, LLC for funds held in escrow by Pender Capital Asset Based Lending Fund I, LP, but not used to pay the charges for which the escrow funds were to be used.

    (b) For the note payment due in November 2018, Mansfield Boat and RV Storage, LLC made a payment of $46,500.00, which is the amount of payment prior to interest adjustment, less part of the sums paid by Mansfield Boat and RV Storage, LLC for funds held in escrow by Pender Capital Asset Based Lending Fund I, LP, but not used to pay the charges for which the escrow funds were to be used

14. Following the entry into the Settlement Agreement through the date of the filing of this pleading, Mansfield Boat and RV Storage, LLC has attempted to obtain loans from other lenders in an attempt to pay off the interim loan represented by the Loan Agreement, Note and Modified Note.

15. In order to obtain the new loans, Mansfield Boat and RV Storage, LLC required Pender Capital Asset Based Lending Fund I, LP to provide accurate payoff amounts from Pender Capital Asset Based Lending Fund I, LP. Despite requests and demand from the Mansfield Boat and RV Storage, LLC, Pender Capital Asset Based Lending Fund I, LP either failed to timely provide payoff amounts, to provide payoff amounts which accurately reflected the balance due on the

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001      Page 4**
C:\Work\Independent Cases\Y2019-0001 Pender Capital v Larry Reynolds et al\Forms and Doc Prep\Affidavits\UnSworn Declaration of Neal Answorth, Trustee.wpd

loan. Because of such conduct, Mansfield Boat and RV Storage, LLC has been unable to obtain and close the loan or loans necessary to pay the balance of the sums due to Defendant.

16.   As a direct result of Pender Capital Asset Based Lending Fund I, LP's failure to properly apply escrow funds and to provide a true and accurate payoff, Mansfield Boat and RV Storage, LLC has been unable to secure the loans needed as it requires a statement of the payoff of the outstanding balances due and owing to Pender Capital Asset Based Lending Fund I, LP under the terms of the Settlement Agreement and related documents. The information is required for lenders.

17.   Pender Capital Asset Based Lending Fund I, LP has also declared the Promissory Note that is the subject of the Settlement Agreement in default, despite having received greater funds than entitled under the settlement agreement.

18.   On or about November 5, 2018 Pender Capital Asset Based Lending Fund I, LP sent notice of acceleration of the Promissory Note that is subject to the Settlement Agreement demanding full payment of the putative outstanding balance on the loan, in the amount of $7,348,775.75, without giving credit for the sums paid by Mansfield Boat and RV Storage, LLC or which Pender Capital Asset Based Lending Fund I, LP had previously received, wrongfully declaring a default.

19.   On or about November 7, 2018, Neil Beldock, acting in the capacity of Substitute Trustee under the Deed of Trust securing the loan, mailed a Notice Trustee's Foreclosure Sale on the real property securing the loan to occur on December 4, 2018. The Trustee's sale set out an incorrect balance due on the loan, and failed to give the required credits for funds, (as previously set forth), improperly held by Pender Capital Asset Based Lending Fund I, LP.

20.   On or about November 7, 2018, Pender Capital Asset Based Lending Fund I, LP mailed a Notice of Disposition of Collateral to Mansfield Boat and RV Storage, LLC, stating Mansfield Boat and RV Storage, LLC's intent to sell or transfer certain personal property described therein on December 4, 2018 at the Tarrant County Courthouse.

21.   Mansfield Boat and RV Storage, LLC. filed for protection under the United States Bankruptcy Code in Case No. 18-33926, pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Pender Capital Asset Based Lending Fund I, LP's filed a Motion to Lift Stay so as to be able to foreclose on the property which is the collateral under the Deed of Trust

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001      Page 5**
C:\Work\Independent Cases\Y2019-0001 Pender Capital v Larry Reynolds et al\Forms and Doc Prep\Affidavits\UnSworn Declaration of Neal Ainsworth, Trustee.wpd

and for personal property under a Notice of Disposition of Collateral.

22.     On February 4, 2019, the Bankruptcy Court issued an order modifying the stay which provided that the Automatic Stay under 11 U.S.C. §362(a) which provided that (1) Pender Capital Asset Based Lending Fund I, LP's could post the property for foreclosure in March of 2019 for foreclosure in April of 2019, provided that if Mansfield Boat and RV Storage, LLC did not file and serve a "term sheet" from a reputable lender for refinancing the debt by 5:00 p.m. Monday, February 4, 2019, then the stay would be immediately lifted.

23.     The order provided that it would take effect upon its entry, pursuant to Bankruptcy Rule 4001 (a) (3).   The Bankruptcy order was entered one day later on February 5, 2019 at 4:28 p.m.  A true and correct copy of the order, as entered on February 5, 2019 is attached as Exhibit "D."

24.     In order to obtain a "term sheet," it was necessary for the prospective lender to receive a payout amount from Pender Capital Asset Based Lending Fund I, LP.

25.     Despite periodic requests Pender Capital Asset Based Lending Fund I, LP. failed to provide the necessary payoff information to Patrick Williams so that an accurate term sheet could be prepared.  A term sheet was prepared on February 7, 2019 was prepared based on an assumption by Mansfield as to the payoff amount.  The term sheet is attached as Exhibit "G"

26.     Pender Capital Asset Based Lending Fund I, LP. Has never provided a payoff figure to the broker, Patrick Williams to present to the prospective lender, Thomas USAF Group.

27.     Such action by Pender made it impossible for me, Neal Ainsworth or Mansfield Boat and RV Storage, LLC. to timely comply with the Bankruptcy Court's order entered February 5, 2019, which required compliance the day before the order was entered.

28.     On February 7, 2019, Neil Beldock, as substitute Trustee, served a Notice of Substitute Trustee's Foreclosure sale and a Notice of Disposition of Collateral on each of Mansfield Boat and RV Storage, LLC; B. Neal Ainsworth, Trustee of the Poyner Wilkins Generational Trust; me, Larry Reynolds; and Mansfield Boat and RV Storage, LLC, c/o Glenn R. Snyder, as evidenced by the Notices attached hereto as Exhibits "E" and "F," respectively.  Such actions are set to take place on March 5, 2019, at 10:00 a.m. or within three hours thereafter.

29.     Because of the above described acts and omissions of Pender Capital Asset Based Lending Fund I, LP's, neither I, Neal Ainsworth, nor Mansfield Boat and

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001     Page 6**

RV Storage, LLC. were able to comply with the Order of the Court entered on February 5, 2019. As a result, of such wrongful action, Larry Renolds, the Poyner Family Generational Trust, as represented by me, and Mansfield Boat and RV Storage, LLC, will be irreparably harmed through the loss of the property which is the subject of the foreclosure of the real property and the sale of the personal property.

My name is B. Neal Ainsworth  My date of birth is January 25, 1955.  My address is 2521 Mtn Village Dr. B223, Wasilla Alaska 99654.  I am a resident of the State of Alaska.  I declare under penalty of perjury that the forgoing statements are true and correct and within my personal knowledge.

Executed in _Wasilla Alaska_ on the

_3RD_ day of _MARCH_, 20 _19_.

_[signature]_
Declarant (Signature)

**B NEAL AINSWORTH'S UNSWORN DECLARATION**
**PURSUANT TEX. CIV. PROC & REM. CODE §132.001        Page 7**
C:\Work\Independent Cases\Y2019-0001  Pender Capital v Larry Reynolds et al\Forms and Doc Prep\Affidavits\UnSworn Declaration of Neal Answorth, Trustee.wpd

<u>CAUSE NO. 048-305488-19</u>

| | |
|---|---|
| **PENDER CAPITAL ASSET BASED LENDING FUND I, LP,** Plaintiff | IN THE DISTRICT COURT |
| **vs.** | 48 JUDICIAL DISTRICT |
| **LARRY REYNOLDS and B. NEAL AINSWORTH, AS TRUSTEE OF THE POYNER WILKINS GENERATIONAL TRUST,** Defendants | TARRANT COUNTY, TEXAS |

### UNSWORN DECLARATION PURSUANT TO
### TEX. CIV. PROC & REM. CODE §132.001

1.  My name is Patrick Williams.  My date of birth is _April 15, 1993_.
    My address is _5631 Silverado Way Anchorage_. I am a resident of the State of _United States_. I am a citizen of the United States.  I declare under penalty of perjury that the statements made in the foregoing are within my personal knowledge and are true and correct.

2.  I am a loan broker who works with lenders throughout the country. I am employed by _61 Degrees holdings_. I have received a preliminary term sheet from Thomas Financial Group. The plan is to close the proposed loan in 45 days.  Based on the information available to me at this time and my experience as a loan broker I believe the lan can and should close.

3.  I have repeatedly requested a payoff figure on the existing financing from PENDER CAPITAL ASSET BASED LENDING FUND I, LP for at leat the last 45 days.  I am yet to receive any payoff figure from PENDER CAPITAL ASSET BASED LENDING FUND I, LP. It is impossible for me to have proceeded with funding in the past or to fund in the future without the payoff information from PENDER CAPITAL ASSET BASED LENDING FUND I, LP.

Patrick Williams